# 14-2854-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

JAMES CASTELLUCCIO,

*Plaintiff-Appellee,*

—against—

INTERNATIONAL BUSINESS MACHINES CORPORATION (IBM),

*Defendant-Appellant.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## PAGE PROOF REPLY BRIEF FOR DEFENDANT-APPELLANT IBM

ZACHARY D. FASMAN, ESQ.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3440

TRACI L. LOVITT, ESQ.
JONES DAY
100 High Street
Boston, Massachusetts 02110
(617) 960-3939

WILLIS J. GOLDSMITH, ESQ.
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

*Attorneys for Defendant-Appellant IBM*

# TABLE OF CONTENTS

**PAGE**

I.    CASTELLUCCIO CANNOT PROVE WILLFULNESS ............................1

    A.    The Open Door Evidence Disproves Willfulness ................................1

        1.    Mandel had reinstatement authority ........................2

        2.    The jury lacked critical Open Door evidence ...........................4

        3.    The Open Door evidence's exclusion was legal error ..............8

        4.    The Mandel Report is relevant....................................9

        5.    IBM's other safeguards disprove willfulness .........................11

    B.    The Collins-Smee Evidence Is Insufficient.......................................12

II.    CASTELLUCCIO FAILED TO PROVE CAUSATION ...........................13

    A.    Castelluccio Misstates IBM's Causation Argument ..........................13

    B.    Castelluccio Misstates The Applicable Causation Standard..............15

    C.    Castelluccio's "Inconsistent Rationale" Arguments Cannot Substitute For Cause....................................................................16

    D.    IBM Validly Terminated Castelluccio From The Bench..................18

III.    THE EMOTIONAL DISTRESS AWARD WAS IMPROPER ..................21

    A.    The District Court Employed An Improper Legal Standard..............21

    B.    Castelluccio Failed To Prove An Actual Injury................................24

        1.    Castelluccio cannot rely on the purported discrimination or jury speculation and sympathy ............................................24

        2.    Castelluccio's self-serving, uncorroborated testimony will not suffice ........................................................................25

IV.    CASTELLUCCIO'S ATTORNEY'S FEE AWARD WAS EXCESSIVE................................................................................................26

V.    CONCLUSION..........................................................................................31

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Abel v. Town Sports Int'l, LLC*,
   No. 09 CV 10388 (DF), 2012 U.S. Dist. LEXIS 183444 (S.D.N.Y.
   Dec. 18, 2012) ...........................................................................................29

*Annis v. Cnty. of Westchester*,
   136 F.3d 239 (2d Cir. 1998) ....................................................................25

*Beech Aircraft Corp. v. Rainey*,
   488 U.S. 153 (1988) .................................................................................10

*Benjamin v. United Merchants & Mfrs., Inc.*,
   873 F.2d 41 (2d Cir. 1989) ......................................................................11

*Boyce v. Soundview Tech. Grp., Inc.*,
   464 F.3d 376 (2d Cir. 2006) ...................................................................3, 8

*Brady v. Wal-Mart Stores, Inc.*
   455 F. Supp. 2d 157 (E.D.N.Y. 2006) .....................................................28

*Byrnie v. Town of Cromwell Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001) .................................................................14, 15

*Carlton v. Mystic Transp., Inc.*,
   202 F.3d 129 (2d Cir. 2000) ...............................................................16, 17

*Cullen v. Nassau Cnty. Civil Serv. Comm'n*,
   425 N.E.2d 855 (N.Y. 1981).....................................................................23

*Delaney v. Bank of Am. Corp.*,
   766 F.3d 163 (2d Cir. 2014) .....................................................................19

*DiFilippo v. Morizio*,
   759 F.2d 231 (2d Cir. 1985) .....................................................................29

-ii-

# TABLE OF AUTHORITIES
(continued)

PAGE(S)

*Dittmann v. Ireco, Inc.*,
903 F. Supp. 347 (N.D.N.Y. 1995) ................................................................12

*Do Yea Kim v. 167 Nail Plaza*,
No. 05 CV 8560 (GBD), 2008 U.S. Dist. LEXIS 52004 (S.D.N.Y.
July 7, 2008) ..................................................................................................23

*Dominic v. Consol. Edison Co. of N.Y., Inc.*,
822 F.2d 1249 (2d Cir. 1987) ........................................................................18

*EEOC v. Ethan Allen, Inc.*,
44 F.3d 116 (2d Cir. 1994) .......................................................................16, 17

*EEOC v. Wal-Mart Stores, Inc.*,
35 Fed. App'x 543 (9th Cir. 2002) ..................................................................8

*EEOC v. Yellow Freight Sys.*,
No. 98 Civ. 2270 (THK), 2002 U.S. Dist. LEXIS 16826 (S.D.N.Y.
Sept. 9, 2002) ....................................................................................23, 24, 25

*Ford v. Bernard Fineson Dev. Ctr.*,
81 F.3d 304 (2d Cir. 1996) ............................................................................21

*Gasperini v. Ctr. for Humanities*,
149 F.3d 137 (2d Cir. 1998) ..........................................................................22

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010) ............................................................................21

*Hagelthorn v. Kennecott Corp.*,
710 F.2d 76 (2d Cir. 1983) ............................................................................12

*Hazen Paper Co. v. Biggins*,
507 U.S. 604 (1993) .........................................................................................1

# TABLE OF AUTHORITIES
(continued)

PAGE(S)

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)....................................................................27, 29

*Kane v. Martin Paint Stores, Inc.*,
   439 F. Supp. 1054 (S.D.N.Y. 1977),
   *aff'd*, 578 F.2d 1368 (2d Cir. 1978) ..............................................26

*Khan v. HIP Centralized Lab. Servs.*,
   No. CV-03-2411 (DGT), 2008 U.S. Dist. LEXIS 76721 (E.D.N.Y.
   Sept. 17, 2008) ...........................................................................25

*Leibowitz v. Cornell Univ.*,
   584 F.3d 487 (2d Cir. 2009) .........................................................17

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997) ....................................................29, 31

*Lunday v. City of Albany*,
   42 F.3d 131 (2d Cir. 1994) ...........................................................29

*Malek v. Fed. Ins. Co.*,
   994 F.2d 49 (2d Cir. 1993) .............................................................5

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) .........................................................28

*McIntosh v. Irving Trust Co.*,
   887 F. Supp. 662 (S.D.N.Y. 1995) ..........................................25, 26

*Meacham v. Knolls Atomic Power Lab.*,
   185 F. Supp. 2d 193 (N.D.N.Y 2002),
   *aff'd*, 381 F.3d 56 (2d Cir. 2004).........................................22, 23, 27

*Medeiros v. Pratt & Whitney Power Sys., Inc.*,
   272 Fed. App'x 78 (2d Cir. 2008) .................................................15

# TABLE OF AUTHORITIES
### (continued)

PAGE(S)

*Millea v. Metro-North R.R.*,
    658 F.3d 154 (2d Cir. 2011) ............................................................31

*Norville v. Staten Island Univ. Hosp.*,
    No. CV 96-5222 (RJD), 2003 U.S. Dist. LEXIS 28399 (E.D.N.Y.
    Oct. 20, 2003) .................................................................................28

*N.Y.C. Transit Auth. v. State Div. of Human Rights*,
    577 N.E.2d 40 (N.Y. 1991) .........................................................24, 26

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983) .................................................26, 30, 31

*Ozemebhoya v. Edison Parking Corp.*,
    No. 02-CV-10057 (BSJ), 2007 U.S. Dist. LEXIS 66552 (S.D.N.Y.
    Sept. 7, 2007) ...................................................................................11

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006) .............................................................23

*Peterson v. Ins. Co. of N. Am.*,
    40 F.3d 26 (2d Cir. 1994) ............................................................11, 12

*Phx. Assocs. III v. Stone*,
    60 F.3d 95 (2d Cir. 1995) ...................................................................4

*Roge v. NYP Holdings, Inc.*,
    257 F.3d 164 (2d Cir. 2001) ...........................................................2, 17

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*,
    605 F.2d 1228 (2d Cir. 1979) ...........................................................10

*Ross v. Saltmarsh*,
    521 F. Supp. 753 (S.D.N.Y. 1981),
    *aff'd*, 688 F.2d 816 (2d Cir. 1982) ....................................................26

# TABLE OF AUTHORITIES
(continued)

PAGE(S)

*Schanzer v. United Techs. Corp.*,
120 F. Supp. 2d 200 (D. Conn. 2000)................................................25

*Shea v. Icelandair*,
925 F. Supp. 1014 (S.D.N.Y. 1996) ...............................................22

*Tidwell v. Carter Prods.*,
135 F.3d 1422 (11th Cir. 1998) ......................................................17

*Trans World Airlines, Inc. v. Thurston*,
469 U.S. 111 (1985)..............................................................2, 7, 11, 12

*Turley v. ISG Lackawanna, Inc.*,
774 F.3d 140 (2d Cir. 2014) ...........................................................23

*United States v. Certified Envtl. Servs., Inc.*,
753 F.3d 72 (2d Cir. 2014) ...............................................................6

*Valley Hous. Ltd. P'ship v. City of Derby*,
No. 06 CV 1319 (TLM), 2012 U.S. Dist. LEXIS 45246
(D. Conn. 2012) ..............................................................................27

*Welch v. UPS*,
871 F. Supp. 2d 164 (E.D.N.Y. 2012) ............................................23

*Wilder v. Bernstein*,
725 F. Supp. 1324 (S.D.N.Y. 1989), *rev'd on other grounds*,
944 F.2d 1028 (2d Cir. 1991) ........................................................30

*Zakre v. Norddeutsche Landesbank Girozentrale*,
541 F. Supp. 2d 555 (S.D.N.Y. 2008) ............................................23

*Zann Kwan v. Andalex Group LLC*,
737 F.3d 834 (2d Cir. 2013) ...........................................................15

I.    **CASTELLUCCIO CANNOT PROVE WILLFULNESS**.

    A.    **The Open Door Evidence Disproves Willfulness**.

Willfulness requires a showing that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 614 (1993). In upholding the jury's willfulness verdict, the district court wrongly treated Collins-Smee, Castelluccio's former manager, as IBM. But, a senior HR professional, Mandel, investigated Castelluccio's claims and detailed his findings and conclusions in the "Open Door Report." Thus, IBM's knowledge and beliefs are defined by Mandel and the Open Door Report, not Collins-Smee. *See* Docket No. 236 at 24 (report is "the findings and conclusions of IBM"); Appellee Br. 24. A reasonably conducted investigation, moreover, can disprove willfulness, even if it fails to ferret out discrimination. *See* IBM Br. 25-26. At trial, however, the Open Door Report—IBM's key evidence of its knowledge—was improperly excluded in violation of law and policy.

Seeking to avoid this conclusion, Castelluccio argues that: (i) Mandel lacked reinstatement authority and thus cannot inform whether IBM recklessly terminated Castelluccio (Appellee Br. 24); (ii) the Open Door evidence was effectively admitted (*id.* 27-31); (iii) the Open Door evidence was properly excluded (*id.* 25-26); (iv) Mandel did not investigate discrimination (*id.* 31-33);

-1-

and, (v) IBM's general safeguards cannot demonstrate non-willfulness (*id.* 33-34).

Each argument fails.[1]

### 1.    Mandel had reinstatement authority.

Castelluccio's claim that Mandel lacked reinstatement authority proves error.

Castelluccio concedes that "the relevancy of [IBM's] investigation hinges upon

Mandel's authority to countermand Collins-Smee's termination of Castelluccio."

Appellee Br. 24, 27.  The district court affirmatively precluded IBM from asking

Mandel, the only competent witness on the issue, about his reinstatement authority.

Tr. 1460:9-21.  By Castelluccio's own admission, the jury was improperly

precluded from hearing the key fact explaining the investigation's relevance.  This

---

[1] As the seventh point in a list regarding IBM's "reckless indifference," Castelluccio asserts that recklessness is shown by "IBM's inconsistent justifications for Castelluccio's termination."  Appellee Br. 23.  While there is no inconsistency, *see infra* pp. 16-18, Castelluccio fails to explain why any inconsistent rationale would prove reckless indifference to the ADEA and cites no supporting authority.  Appellee Br. 23.  Inconsistent termination explanations give rise, at most, to an inference of intentional discrimination.  *See, e.g.*, *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169-70 (2d Cir. 2001).  Willfulness is not discriminatory intent but concerns one's knowledge of the law.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985); *Hazen Paper Co.*, 507 U.S. at 616 ("It is not true that an employer who knowingly relies on age in reaching its decision invariably commits a knowing or reckless violation of the ADEA.").  Post-hoc changes in a termination rationale do not naturally prove a contemporaneous, knowing violation of the law.  Accordingly, the district court did not rely on any purported inconsistent rationales in analyzing willfulness, *see* Docket No. 236 at 18-23, and the jury was instructed on "inconsistent explanations" only in connection with discriminatory intent.  Tr. 1727:18-1728:13.

-2-

is reversible error. *See Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006).

Castelluccio's argument also shows how the jury was likely misled. Castelluccio testified about his personal belief that Mandel lacked reinstatement authority. Tr. 573:25-574:8. But, Castelluccio was not competent to testify about Mandel's authority and his belief was wrong. *Id.* 1458:3-4. Castelluccio's own evidence substantiated Mandel's authority, Appellee Br. 33 (citing Docket No. 156-7), and the district court recognized it, Tr. 1464:9-10 (statement by the Court that "the jury was not going to be told that this gentleman [Mr. Mandel] had the power to bring him [Mr. Castelluccio] back"); Docket No. 236 at 27 n.8 (calling Mandel's reinstatement authority "self-evident").

When IBM tried to correct the record for the jury, the district court refused to allow the testimony. Rather, when Mandel began discussing his authority, the district court halted the testimony, cleared the courtroom, and entertained Castelluccio's mistrial motion, which was denied only on the ground that the jury did not hear Mandel. *See* Tr. 1461:16-18. Laboring under a false impression, the jury would have (as Castelluccio suggests) viewed IBM's investigation as after the

fact and irrelevant, harming IBM's substantial rights. *See Phx. Assocs. III v. Stone*, 60 F.3d 95, 105-06 (2d Cir. 1995).[2]

### 2. The jury lacked critical Open Door evidence.

The jury did not have before it Mandel's findings, his analysis, the investigation's conclusions, or the Open Door Report. While Castelluccio tries to create doubt, a cursory review of the trial transcript proves the exclusions. *See* Tr. 485:18-491:4, 1292:16-1297:25; Docket No. 236 at 24-25 (allowing Mandel's testimony for the "limited purpose" of showing an investigation occurred). Mandel's findings were essential to evaluating his conclusions' reasonableness, and his conclusions—in particular that Collins-Smee did not engage in discrimination and appropriately assisted Castelluccio—were central to disproving willfulness. *See* IBM Br. 21-27.

Despite having fought for the exclusions, Castelluccio now claims that "Mandel's findings and conclusions were *explicitly* presented to the jury in PX 204

---

[2] Castelluccio asserts that he relied on Collins-Smee's sole termination authority in dismissing his retaliation claim. Appellee Br. 27 n.4. But Castelluccio inconsistently admits elsewhere, Appellee Br. 14; Docket No. 70 at 1 n.1, that he dismissed his retaliation claim, because he could not prove Collins-Smee's knowledge of the discrimination claim prior to termination. In addition, Collins-Smee did ***not*** testify that she was the sole decision-maker; she says that she and "[her] boss" were the decision-makers and that she was "sure" HR was involved. Docket No. 47-5 at 49. More importantly, whether Collins-Smee had *termination* authority does not inform whether Mandel had *reinstatement* authority. Collins-Smee never testified that a termination decision could not be reviewed or reversed.

-4-

at 6, which states, 'the Open Door Investigation resulted in a determination that [Castelluccio] was treated "fairly" with respect to his termination.'"  Appellee Br. 18 (emphasis added); *see also id.* 28-30.  This claim is remarkable given the record, and if true would give rise to separate reversible error.

PX 204 is a 2009 Report of the Parties' Rule 26(f) Planning Conference.  At trial, the court allowed its introduction solely to show IBM's purportedly shifting termination rationales.  During deliberations, the jury asked for "the document that shows the reason IBM terminated Castelluccio," and was directed to "Plaintiff's exhibit 92 and 204 at 7 through 8."  Tr. 1737:21-25; 1739:19-20.

The jury was *not* directed to the statement Castelluccio quotes, PX 204 page 6, and was never "explicitly presented" with PX 204's "fairly" treated statement. Rather, the district court precluded any party from using this aspect of the report. Tr. 576:20-579:17.  It repeatedly affirmatively precluded IBM from using PX 204 to prove the investigation's results.  *See* Tr. 493:15-21; 576:20-579:17; 1341:2-22. In light of PX 204's narrow purpose, and IBM's inability to explain the investigation's result, the jury's use of excluded evidence, lacking all context, to find any facts would constitute reversible error.  *See Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993).

In all events, PX 204's "fairly" treated statement is not competent evidence of the investigation, but is a joint party court filing.  And, it does not reveal

-5-

Mandel's *non-discrimination* conclusion or his findings and analysis. The former is what proves IBM's non-willfulness. The latter explains and corroborates Mandel's conclusions and proves IBM's non-recklessness in relying on Mandel's report. *See United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 96-97 (2d Cir. 2014) ("[W]ith the aid of such corroboration [a] jury would be more inclined to give weight and consideration to statements and conversations upon which a conclusion was based." (internal citation and quotation marks omitted)).

Castelluccio also quotes the district court to suggest that Mandel's conclusions were self evident. *See* Appellee Br. 31 (citing Tr. 1457:23-1460:8 ("He's not back at IBM; ergo, this gentleman found that it was a non-meritorious claim….")). But, this exchange was held outside the jury's presence, and the court says that the jury ***cannot*** learn of Mandel's reinstatement authority; otherwise, it would impermissibly infer the investigation's outcome. The court ended by saying: "It's not going to be brought to the jury's attention." Tr. 1460:7-8.

None of Castelluccio's other evidence fills the gap. Generalized evidence about the Open Door process, Appellee Br. 27 (citing DX 109), says nothing about IBM's findings with respect to Castelluccio. Mandel's testimony that Open Door investigators, in general, can "rectify those situations" where employees "were treated unfairly," Appellee Br. 29-30 (citing Tr. 1447:17-24), does not prove that Mandel specifically had reinstatement authority. Mandel's description of the Open

-6-

Door process and the contours of his investigation, Appellee Br. 27 (citing Tr. 1450:21-1453:4); Appellee Br. 28 (citing Tr. 1468:12-17), as well as Castelluccio's having been informed of its results, Appellee Br. 28 (citing Tr. 579:19-24), do not prove Mandel's findings, analysis or conclusions.

Castelluccio's repeated claim, Appellee Br. 27-29, that the jury heard testimony from witnesses Mandel interviewed about Castelluccio's performance and heard Collins-Smee's testimony about assisting Castelluccio on the bench misses the point. Live testimony from *every* witness Mandel interviewed could not substitute for the Open Door Report, because those witnesses could not testify as to what Mandel found or to IBM's understanding of the facts and conclusions—the key willfulness inquiry. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 129-30 (1985).

Evidence that Mandel reprimanded Collins-Smee is not evidence that Mandel found no discrimination and is not proof of Mandel's analysis or findings. Even if the jury inferred something from the reprimand, it had no way to evaluate whether IBM's conclusions were reasonable or reckless absent Mandel's underlying findings and analysis.

In all events, even if the jury considered all of the aforementioned evidence, IBM still suffered harm to its substantial rights. A single sentence in a party-prepared court document, general information about the Castelluccio investigation

-7-

and the Open Door process, and inferences are not comparable to the Open Door Report.  Castelluccio's cited evidence is more of the same:  a woefully incomplete picture of IBM's findings and conclusions.

### 3. The Open Door evidence's exclusion was legal error.

Presumably realizing that crucial evidence was excluded, Castelluccio argues that the Open Door evidence "lacked probative value because it was intended to exonerate IBM."  Appellee Br. 26.  But, as IBM has explained, the district court held IBM's investigation to an improper legal standard and resolved a jury issue—the Open Door Report's weight and credibility.  *See* IBM Br. 32-35.  Castelluccio has ***no*** answer to these arguments.

In addition, the district court later acknowledged that the Open Door evidence was probative of IBM's beliefs.  Docket No. 163 at 4-5; Appellee Br. 26.  Having expressly recognized the Open Door investigation's relevance, the court erred in admitting only evidence about the fact of the investigation that failed to prove IBM's beliefs, while excluding the evidence of its beliefs and Mandel's reinstatement authority.  The result was a hodgepodge about the Open Door investigation that did not address willfulness, created misimpressions about the investigation, and substantially harmed IBM's rights.  *See supra* pp. 4-8; *EEOC v. Wal-Mart Stores, Inc.*, 35 Fed. App'x 543, 545-46 (9th Cir. 2002); *Boyce*, 464 F.3d at 385.

-8-

### 4. **The Mandel Report is relevant**.

The Mandel Report, itself, proves that Mandel investigated Castelluccio's discrimination claim. The investigation was compelled by Castelluccio's complaint that "he was being 'constructively discharged' by his management as a result of age discrimination, including his manager['s] failing to aggressively find him another executive position" and "comment[s] that his manager made stating that he is old enough to retire." Docket No. 156-3 at 1. The Report states that Mandel credited Collins-Smee's claim that she did not make "any age or retirement comments to Mr. Castelluccio, with the exception of one conversation," involving his "executive separation package." Docket No. 156-3 at 4.

While Castelluccio attempts to make much of the fact that Mandel combined his discrimination analysis and findings, Appellee Br. 32, Mandel's editing does not alter the fact that he investigated Castelluccio's discrimination claim. Docket No. 156-3 at 4. Castelluccio also seeks to fault Mandel for failing to "uncover whether Collins-Smee knowingly and recklessly treated Castelluccio differently than younger employees." Appellee Br. 32. But, Castelluccio's complaint then involved only Collins-Smee's purported comments about retirement and her alleged failure to advocate for Castelluccio. Docket No. 156-3 at 1. Mandel investigated both of those claims and found them baseless. *Id.* at 4.

Finally, Castelluccio faults Mandel for lacking "commitment," citing a statement about stopping the investigation if Castelluccio signed a release. Appellee Br. 32-33 (citing Docket No. 156-7). This kind of argument, as well as all the prior arguments and Castelluccio's footnote 5 argument regarding Collins-Smee's deposition testimony, Appellee Br. 33 n.5, go to the weight and credibility of the Report, not its admissibility. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1250-51 (2d Cir. 1979); *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988). These points should have been, but were not, argued to and determined by the jury.

The arguments are also wrong. Mandel's statement responded to IBM's HR Director's request for guidance due to the ongoing nature of the investigation on Castelluccio's scheduled termination day. Mandel answered that the termination should go forward. Docket No. 156-7. He explained that: (i) if Castelluccio accepted the severance package during his exit interview, the investigation would terminate; if not, the investigation would continue and Mandel would either (ii) "find in his favor and bring him back," or (iii) "not find in his favor" and give him another opportunity at the release and package. *Id.*

With respect to Collins-Smee's deposition testimony, when asked if Mandel discussed age discrimination with her, Collins-Smee stated "I don't remember." Docket No. 47-5 at 41. She did not deny being asked. To the extent Collins-

-10-

Smee's recollection at trial improved, that does not render the Report irrelevant for willfulness. "An employer may sustain its employment decision without showing that the information on which it relied in its investigation was correct, but only that it reasonably relied on such information." *Ozemebhoya v. Edison Parking Corp.*, No. 02-CV-10057 (BSJ), 2007 U.S. Dist. LEXIS 66552, at *21-22 (S.D.N.Y. Sept. 7, 2007). When the Report was issued, which was before the deposition or trial, IBM had no reason to disbelieve Mandel's factual summary.

### 5. IBM's other safeguards disprove willfulness.

Castelluccio wrongly argues that IBM's many anti-discrimination safeguards are irrelevant, because the Supreme Court recognizes only two instances of "good faith and nonrecklessness": (i) bona fide occupational qualifications (BFOQs), and (ii) mistaken beliefs about the ADEA's applicability. Appellee Br. 33-34. But, in *Thurston*, the Supreme Court based its non-willfulness finding on TWA's concern about illegality and its seeking legal advice. *Thurston*, 469 U.S. at 130.

This Court, too, has recognized that the Supreme Court "rejected the imposition of liquidated damages in *Thurston*," because TWA made "a good faith *inquiry*." *Peterson v. Ins. Co. of N. Am.*, 40 F.3d 26, 31-32 (2d Cir. 1994) (emphasis added); *see Benjamin v. United Merchants & Mfrs., Inc.*, 873 F.2d 41, 44 (2d Cir. 1989) ("'[W]illfulness' is most easily understood when the term is analyzed along a continuum. Using that concept, at one extreme there is no

-11-

liability for liquidated damages when a plaintiff proves only that the employer acted negligently, inadvertently, innocently, or even, if the employer was aware of the applicability of the ADEA, and acted reasonably and in good faith.").

Mandel's finding and conclusions demonstrate IBM's belief that Castelluccio was not subject to discrimination and was terminated for valid reasons. Its numerous safeguards, robust investigation system, and the thoroughness of its investigation prove that it was non-reckless in arriving at this conclusion. Castelluccio's purportedly contrary authority, *Dittmann v. Ireco, Inc.*, 903 F. Supp. 347, 349 (N.D.N.Y. 1995), is inapposite. It relies on an older Second Circuit decision (*Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 84 (2d Cir. 1983)) that pre-dates *Thurston*, and does not involve a circumstance, as here, where the safeguards prove the non-reckless nature of a defendant's investigation.

### B. The Collins-Smee Evidence Is Insufficient.

IBM has explained why Collins-Smee's mere knowledge of the ADEA is insufficient to prove willfulness. *See* IBM Br. 30-31. The remaining evidence Castelluccio cites, Appellee Br. 22-23, purports to show that Collins-Smee intentionally discriminated against Castelluccio. But, the Supreme Court and this Court have made clear that discriminatory intent, without more, cannot substitute for willfulness. *See Thurston*, 469 U.S. at 129-30; *Peterson*, 40 F.3d at 31-32.

-12-

## II.    CASTELLUCCIO FAILED TO PROVE CAUSATION.

### A.    Castelluccio Misstates IBM's Causation Argument.

As IBM has explained, Castelluccio's age discrimination claim must arise from his ultimate termination, because all other claims are time barred.  IBM Br. 37; *see also* Tr. 1726:16-21 (instruction limiting time-barred conduct to background only); Docket No. 108 at 10-11; Docket No. 236 at 11 n.6.  Moreover, there is *no* evidence that Castelluccio was treated differently than any other executive on the bench; rather, he was given more time to secure employment.  *See* Tr. 951:21-952:2.  Accordingly, to avoid a legitimate termination, Castelluccio had to find another internal position.  While Castelluccio attempted to show that discrimination hindered his job search, he affirmatively refused to make the critical "but for" cause showing—that absent discrimination, he would have secured another position.  Castelluccio has no real response to this argument because he deliberately decided *not* to make this showing.

Castelluccio, instead, resorts to sleight of hand, focusing on time-barred conduct and subtly altering IBM's position.  In his brief, Castelluccio identifies largely time-barred conduct as the discrimination.  Appellee Br. 35-36.  Only his last five bullets, which relate to Collins-Smee's asserted failure to assist Castelluccio, concern potentially actionable conduct.  *See id.*

-13-

But even if Collins-Smee hindered his search due to discriminatory animus, *no* evidence shows that Castelluccio would have obtained another internal position but for her conduct; Castelluccio declined to introduce this evidence for tactical reasons. *See* Tr. 215:25-216:11, 340:20-341:3. Absent Castelluccio's superior qualification for an open position, no amount of notice or advocacy by Collins-Smee would have removed him from the bench and prevented his termination.

Castelluccio does little in the way of responding to IBM's actual causation argument, defending his qualifications in a single footnote. *See* Appellee Br. 45 n.6. But, Castelluccio disclaimed the argument that he deserved those positions. Tr. 215:25-216:11. And, the jury was specifically instructed *not* to consider this evidence or even whether Castelluccio should have received the positions. Tr. 340:20-341:3. As a result, there was no fact finding on the issue. More importantly, IBM had no opportunity to make a contrary evidentiary showing. Tr. 215:25-216:17. Having affirmatively precluded evidence and fact finding on whether he was qualified for these positions, Castelluccio cannot now declare the evidentiary record sufficient.

In all events, the cited evidence is insufficient. Castelluccio must show that his qualifications were "so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [him] for the job in question." *Byrnie v. Town*

-14-

*of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Contrary to Castelluccio's claim, *see* Appellee Br. 45 n.6, the standard applies to all claims involving non-selection for a position. *See Byrnie*, 243 F.3d at 10; *Medeiros v. Pratt & Whitney Power Sys., Inc.*, 272 Fed. App'x 78, 80-82 (2d Cir. 2008).

Castelluccio testified briefly about the open positions, the names and ages of the successful candidates, his opinion as to his qualifications, and whether Collins-Smee notified him of the position. Tr. 449:12-466:14. When asked on cross-examination whether he thought he was more qualified than the hired individuals that filled those positions, Castelluccio replied that he was only "equally qualified." Tr. 650:12-15. Castelluccio also admitted that he did not know all the candidates, or their work histories and PBCs. Tr. 649:13-650:11. This testimony was legally insufficient to prove a superior qualification. *See Byrnie*, 243 F.3d at 102-03.

### B. Castelluccio Misstates The Applicable Causation Standard.

In addition to misstating IBM's argument, Castelluccio seeks to import a lesser standard for cause. Quoting *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 846 (2d Cir. 2013), Castelluccio claims that "but for" cause is shown by "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate . . . reasons for its actions." Appellee Br. 38. *Zann Kwan*, however, is a Title VII retaliation case. 737 F.3d at 845. In the retaliation context, inconsistent explanations and temporal proximity between the assertion of

-15-

discrimination and a discharge can, in some instances, suffice for a prima facie showing of causation. Castelluccio does not assert a retaliation claim, but a rehire claim, which requires different proof for "but for" cause. *See supra* pp. 13-15.

### C. Castelluccio's "Inconsistent Rationale" Arguments Cannot Substitute For Cause.

In light of IBM's actual causation argument, Castelluccio's inconsistent rationales claim is of little moment. Any inconsistency would bear, at most, on discriminatory intent, not "but for" cause—a point Castelluccio inadvertently makes by repeatedly labeling the issue as concerning discriminatory intent. *See* Appellee Br. 39, 40; *see also* Tr. 1727:23-1728:13 (so instructing the jury). Castelluccio's authority is in accord. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134, 137 (2d Cir. 2000); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994). Castelluccio provides no analysis of how a finding of discriminatory intent can prove "but for" cause in the context of this case.

In addition, there are no "inconsistent justifications" from which one could infer "IBM's reckless indifference to the law." Appellee Br. 23. IBM has consistently maintained that poor performance caused Castelluccio's removal from the two internal positions—neither of which is actionable here—and those internal terminations resulted in his placement on the bench. After remaining on the bench for longer than any other executive, Castelluccio was terminated due to his failure

-16-

to secure another internal position.  This is *exactly* what IBM says in Castelluccio's cited documents.  *See* PXs 92, 99, 204.  These explanations are not inconsistent, but two sides of the same coin.  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 503 n.6 (2d Cir. 2009); *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169-70 (2d Cir. 2001); *see also Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) (reversing jury verdict in plaintiff's favor and holding that the purportedly inconsistent termination justifications were not inconsistent as a matter of law).

The two cases Castelluccio cites prove the difference.  Appellee Br. 38-39. In *Carlton*, the employer had affirmatively disclaimed its rationale in an EEOC filings, stating:  the employee "was let go for economic reasons.  202 F.3d at 137. The issue of performance wasn't addressed nor was age the reason for the separation."  *Id.* at 137.  Here, IBM has consistently maintained, including in its EEOC filings, *see* PX 99, that Castelluccio was removed from two positions within IBM for poor performance, and was terminated after failing to secure other internal, IBM employment.  IBM has never disclaimed either rationale.  Similarly, in *Ethan Allen*, the employer initially claimed that "the sole reason for Pierce's discharge was a decrease in the duties of his . . . position."  44 F.3d at 120.  After the state investigator found evidence that those duties were assigned to a younger employee, the employer "then cited [the employee's] performance problems . . . even though [it] originally discounted performance as a determinative factor."  *Id.*

-17-

By trial, the employer claimed that "it had carefully weighed the two [competing] employees in the context of" its written layoff policy, despite an earlier admission that this policy had been ignored. *Id.* IBM's rationale has not changed.

Finally, Castelluccio's arguments regarding the performance evidence, Appellee Br. 40-41, are irrelevant. Whether IBM's "poor performance" rationale was pretext for his internal removals is not at issue here, because those removals are not actionable. Docket No. 108 at 10-11; *id.* 236 at 11 n.6. The issue here is Castelluccio's ultimate termination, and Castelluccio correctly recognizes that he was terminated "due to his failure to find a job." Appellee Br. 40. In all events, Castelluccio cannot, and does not, deny that there were contemporaneous complaints about his work and calls for his removals. *See* IBM Br. 9-11, 37-38. Those provided a legitimate non-discriminatory reason for his time-barred removals. *See id.* 38.

### D. IBM Validly Terminated Castelluccio From The Bench.

In connection with Castelluccio's ultimate termination, Castelluccio wrongly analogizes this case to *Dominic v. Consolidated Edison Co. of New York, Inc.*, in which this Court held that "evidence of [an employer's] *prior* dissatisfaction" with an employee who *later* claims discrimination cannot legally "preclude[] the jury from finding retaliation." 822 F.2d 1249, 1255 (2d Cir. 1987) (emphasis added). IBM is not claiming that age discrimination claims are precluded "whenever an

-18-

employer identifies any potentially legitimate justification for terminating an employee." Appellee Br. 42. It argues that Castelluccio's particular claim fails because he declined to put on evidence showing "but for" cause in the face of a legitimate termination. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014). Castelluccio could have done so, but made a strategic decision against it. *See supra* pp. 41-46.

Castelluccio's remaining arguments can be summarily refuted.

- Castelluccio's half-hearted claim that he was *not* terminated for being on the bench, Appellee Br. 42-43, is contra-factual. At trial, Castelluccio disputed his performance-based removals (the time-barred claims), *see* Tr. 254:20-255:1, 260:1-16, 379:9-14, and argued that he should have been given greater assistance while on the bench, *see* Tr. 636:13-21, 637:16-25. The fact that he had to be terminated for having no work was not at issue, and there is ample, undisputed evidence supporting the reason for Castelluccio's ultimate termination. *See* Tr. 962:19-24, 963:14-20; 639:10-19; 951:22-952:2; PX 99 at 1. IBM had no duty to keep Castelluccio on its payroll indefinitely when he had no job within the company.

- IBM's claim that Mandel's lengthy investigation "made little sense" in light of the straightforward reason for Castelluccio's termination, Appellee Br. 43, ignores context. Castelluccio was then-asserting claims relating to his

-19-

termination *and* his removal from two internal positions; all were in his initial complaint.  Tr. 1452:4-12; Docket No. 156-3 at 1.  At that point, no claim was time barred, and Mandel investigated all.  Had he failed to do so, and Castelluccio filed a timely claim, Castelluccio would be calling the investigation deficient.

- With respect to who was responsible for finding Castelluccio a position, Appellee Br. 43-44, Castelluccio conceded at trial that he had the obligation to find another position for himself, Tr. 624:1-4.  The fact that Collins-Smee undertook some responsibility to help him does not change that fundamental obligation.  Mandel investigated Collins-Smee's efforts only because Castelluccio made it part of his discrimination claim.  *See* Docket No. 156-3 at 1.  In all events, Collins-Smee's efforts do not bear on causation, given the lack of "superior qualification" evidence.

- Castelluccio's claim that Collins-Smee prevented him from obtaining a new position through her purported failure to advise him of open positions and place him on drills, Appellee Br. 44-45, is similarly off the mark.  Absent proof that he would have obtained one of those positions, her conduct was not his termination's but for cause.  Castelluccio's reference to "106" open positions, *see id.* 37, 44, is a red herring.  All but 16 were filled by someone other than Collins-Smee, Tr. 340:6-341:3, 1726:24-1727:22, and Castelluccio admitted

that no one at IBM other than Collins-Smee engaged in age discrimination. Tr. 548:24-549:3. Thus, only the 16 positions are relevant.

- Finally, IBM is not newly arguing about Collins-Smee's then-boss, Tim Shaughnessy's, undisputed role in Castelluccio's termination. Tr. 965:1-7. This is simply a permissible gloss on an issue that was extensively briefed below, and one to which Castelluccio has no substantive response. *See Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996).

- Finally Castelluccio's recital of the purported discriminatory intent evidence, Appellee Br. 35-37, 44, is not relevant to causation. "But for" cause assumes the existence of discrimination and requires proof of a causal link between it and Castelluccio's termination. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). In all events, the vast majority of the cited evidence involves time-barred conduct.

## III. THE EMOTIONAL DISTRESS AWARD WAS IMPROPER.

### A. The District Court Employed An Improper Legal Standard.

Castelluccio concedes that the "proper standard of review [for his emotional distress claim] is whether the award deviates materially from what would be reasonable compensation," the New York standard. Appellee Br. 46. The district court, however, expressly applied the incorrect, federal "shock[s] the conscience" standard. Docket No. 236 at 30.

-21-

Attempting to sidestep the error, Castelluccio claims that "the court's reasoning and citations to specific evidence" show it conducted the appropriate analysis.  Appellee Br. 51.  The district court recognized Castelluccio's claim as "garden variety" and observed that garden variety claims involve awards between $30,000-$125,000.  Docket No. 236 at 28-29.  But, the district court applied the wrong standard when evaluating the *impact* of the deviation between the jury's award and those other awards.  The federal and state standards on this issue are so different that the "choice [between the two standards] is significant."  *Shea v. Icelandair*, 925 F. Supp. 1014, 1020 (S.D.N.Y. 1996).

Under New York law, the jury's award is entitled to little deference, and remittitur is appropriate if the jury's award materially differs from the norm.  *Gasperini v. Ctr. for Humanities*, 149 F.3d 137, 140 (2d Cir. 1998).  As IBM has shown, New York courts applying the less deferential "materially deviates" standard routinely reverse emotional distress damages for garden variety emotional distress or reduce them to $30,000.  IBM Br. 45-48.  Here, the jury awarded Castelluccio $500,000 for uncorroborated, garden variety distress.  This high of an award is literally unprecedented in New York.  Regardless of whether the award shocked the district court, it materially deviated from the New York norm.

The cases Castelluccio cites, Appellee Br. 52-53, are inapposite.  The highest comparable award Castelluccio identifies is $125,000.  *See Meacham v.*

-22-

*Knolls Atomic Power Lab.*, 185 F. Supp. 2d 193 (N.D.N.Y 2002), *aff'd*, 381 F.3d

56 (2d Cir. 2004). But, in *Meacham*, the district court held that emotional distress

damages must be *capped* at $125,000 absent clear proof of physical manifestations

or medical treatment. *Id.* at 221. On appeal, the defendant argued for a $30,000

cap. *Meacham*, 381 F.3d at 77. This Court recognized that "[m]any [New York

courts] do reduce awards to $30,000 or below," but upheld the $125,000 cap. *Id.*

at 78. Under *Meacham*, Castelluccio would have been required to remit his award

to $125,000 or face a new trial on damages. His award would not have been

upheld.

Castelluccio's other cases prove the material deviation. *Do Yea Kim v. 167

Nail Plaza*, No. 05 CV 8560 (GBD), 2008 U.S. Dist. LEXIS 52004, at *17

(S.D.N.Y. July 7, 2008) ($34,000 jury award); *Patterson v. Balsamico*, 440 F.3d

104, 120 (2d Cir. 2006) ($100,000 jury award); *EEOC v. Yellow Freight Sys.*, No.

98 Civ. 2270 (THK), 2002 U.S. Dist. LEXIS 16826, at *114 (S.D.N.Y. Sept. 9,

2002) (no award); *Cullen v. Nassau Cnty. Civil Serv. Comm'n*, 425 N.E.2d 855,

861 (N.Y. 1981) (no award). The few cases involving $100,000+ awards were not

garden variety claims. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 163 (2d

Cir. 2014) (an "exceptional and egregious" case involving "years of grotesque

psychological abuse"); *Welch v. UPS*, 871 F. Supp. 2d 164, 194 (E.D.N.Y. 2012)

($200,000 for greater than mere garden variety); *Zakre v. Norddeutsche*

-23-

*Landesbank Girozentrale*, 541 F. Supp. 2d 555, 567-68 (S.D.N.Y. 2008) ($100,000 for conduct so egregious it warranted punitive damages under Title VII); *N.Y.C. Transit Auth. v. State Div. of Human Rights*, 577 N.E.2d 40, 41 (N.Y. 1991) ($450,000 for "the most shocking instance of abuse of an employee by an employer"). Accordingly, these cases are not appropriate benchmarks, and if anything, show that the jury's $500,000 award was excessive.

### B. Castelluccio Failed To Prove An Actual Injury.

#### 1. Castelluccio cannot rely on the purported discrimination or jury speculation and sympathy.

Castelluccio has yet to identify sufficient evidence of an emotional injury. Rather, he falls back on Collins-Smee's purported discrimination as proof of his distress. Appellee Br. 50-51. But, under New York law, "[c]ompensatory damages for emotional distress may not be presumed simply because a plaintiff suffered discrimination." *Yellow Freight Sys.*, 2002 U.S. Dist. LEXIS 16826, at *116.

In addition, Castelluccio cites the jury's having correctly "perceived [the] anguish suffered by Castelluccio as his 40 year identity as an 'IBMer' was shattered by Collins-Smee." Appellee Br. 50-51. According to Castelluccio, the jury could "reasonably have concluded" that Castelluccio testified about "*only a fraction* of [his] emotional distress." *Id.* at 49 (emphasis added). The district court

-24-

likewise relied on Castelluccio's appearance as a "devastated" man to go *beyond* the record.  Docket No. 236 at 29-30.

The district court's analysis, and Castelluccio's argument, reflect a fundamental error.  A jury "may not abandon analysis for sympathy for a suffering plaintiff."  *Khan v. HIP Centralized Lab. Servs.*, No. CV-03-2411 (DGT), 2008 U.S. Dist. LEXIS 76721, at *18 (E.D.N.Y. Sept. 17, 2008) (internal citation and quotations omitted); *Schanzer v. United Techs. Corp.*, 120 F. Supp. 2d 200, 219 (D. Conn. 2000).  Otherwise, impermissible jury speculation will substitute for evidence.  *See McIntosh v. Irving Trust Co.*, 887 F. Supp. 662, 665 (S.D.N.Y. 1995).  Impermissible jury speculation based on sympathy for Castelluccio is exactly what happened here, as the district court, Docket No. 236 at 29-30, and Castelluccio, Appellee Br. 49, effectively recognized.

### 2. Castelluccio's self-serving, uncorroborated testimony will not suffice.

Castelluccio's sole evidence of an emotional distress injury is his own testimony about "mood swings, sleepless nights, weight loss, and hair loss." Appellee Br. 49.  This testimony is too vague to support any award.  *See, e.g.*, *Yellow Freight Sys.*, 2002 U.S. Dist. LEXIS 16826, at *116 (no award); *cf. Annis v. Cnty. of Westchester*, 136 F.3d 239, 249 (2d Cir. 1998) (same).  In all events, Castelluccio's vague testimony further proves jury speculation:  Vague testimony

-25-

of emotional distress forces "precisely [the] kind of speculation that is insufficient to support a jury award . . . ." *See McIntosh*, 887 F. Supp. at 668.

Finally, Castelluccio's cited cases reinforce IBM's argument. Citing *New York City Transit Authority*, Castelluccio argues that New York does not require corroborating evidence. Appellee Br. 48. But in *New York City Transit Authority*, the court stated that "[b]eyond the fact of mental anguish caused by discriminatory conduct, *there must be some evidence of the magnitude of the injury*, to assure that the . . . award is neither punitive nor arbitrary." 577 N.E.2d 40, at 41 (emphasis added). The requisite evidence was the plaintiff's doctor's testimony and the defendant's own medical findings. *Id.*

## IV. CASTELLUCCIO'S ATTORNEY'S FEE AWARD WAS EXCESSIVE.

Regardless of the Court's view of the merits, Castelluccio's fee award should be reduced. Castelluccio's counsel's hours were facially excessive relative to those in similar cases, but his block billing makes identifying the excess impossible. Accordingly, IBM seeks an across the board reduction and specific reductions for major tasks. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983); *Ross v. Saltmarsh*, 521 F. Supp. 753, 761-62 (S.D.N.Y. 1981), *aff'd*, 688 F.2d 816 (2d Cir. 1982); *Kane v. Martin Paint Stores, Inc.*, 439 F. Supp. 1054, 1056 (S.D.N.Y. 1977), *aff'd*, 578 F.2d 1368 (2d Cir. 1978).

-26-

In response, Castelluccio makes four incorrect arguments. ***First***, Castelluccio argues, Appellee Br. 54, 58-59, that his fees cannot be reduced because he prevailed, citing *Valley Housing Limited Partnership v. City of Derby*. In *Valley Housing*, the court recognized that the *first* step in any fee analysis is determining the reasonable award (the lodestar), and the *second* step is evaluating any adjustment to it for the "degree of success"— partial success or a nominal victory. No. 06 CV 1319 (TLM), 2012 U.S. Dist. LEXIS 45246 , at *6, 31 (D. Conn. 2012); *see also Hensley v. Eckerhart*, 461 U.S. 424, 438-40 (1983). Castelluccio relies only on the second step of the court's analysis. *See* Appellee Br. 54, 59 (citing *Valley Housing*, 2012 U.S. Dist. LEXIS 45246, at *11; *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). But, IBM is not claiming that Castelluccio's lodestar should be reduced because he was partially successful. The hours used in his lodestar calculation should be reduced as excessive. Like IBM, the *Valley Housing* court recognized that "the Second Circuit has approved a percentage reduction method as a practical means of trimming fat" from unreasonable hours. 2012 U.S. Dist. LEXIS 45246, at *24.

***Second***, Castelluccio purports to distinguish IBM's cases involving smaller awards for similar work, Appellee Br. 55-57, but he says nothing about the three most analogous cases—*Meacham*, *Brady*, and *Norville*. *See* IBM Br. 54-56. *Meacham*, discussed at length in IBM's opening brief, involved a reduction by

-27-

$100,000 from $979,348.71 to $873,868.09 for excessiveness. 185 F. Supp. 2d at 240-42; *see* IBM Br. 55. In *Brady v. Wal-Mart Stores, Inc.*, a single-plaintiff discrimination case, counsel's fees were reduced from $956,386 to $601,355, as excessive. 455 F. Supp. 2d 157, 213-14, 216 (E.D.N.Y. 2006). The court noted: "I have not come across, a comparable case in which a court compensated a prevailing plaintiff for as many hours as counsel here request"—which was just under 2,600 hours, significantly less than Castelluccio's 3,319.3 hours. *Id.* at 209-10; *see also id.* at 212 (finding 257 hours spent on fee litigation to be "surprisingly high"). In *Norville v. Staten Island University Hospital*, counsel's award was reduced to $287,064.50, less than one-third of Castelluccio's award, a case of comparable duration that involved two liability trials and two damages trials. No. CV 96-5222 (RJD), 2003 U.S. Dist. LEXIS 28399, at *2-3, 5 (E.D.N.Y. Oct. 20, 2003).

These cases demonstrate the facial unreasonableness of Castelluccio's claimed hours and award. They are only a handful of the numerous, analogous cases IBM cited, and Castelluccio failed to address. *See* IBM Br. at 59 n.6. Tellingly, Castelluccio fails to cite a *single* case involving a comparable claim and fee award. There is none. Where, as here, the district court authorizes a facially unreasonable award, it abuses its discretion. *See McDaniel v. Cnty. of*

-28-

*Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010); *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985).

Castelluccio attempts to distinguish IBM's authority on the ground that he had to defend multiple versions of the same argument. Appellee Br. 56 n.8. He fails to explain how repetition justifies greater billings on an already-briefed issue. In addition, Castelluccio attempts to distinguish *Abel v. Town Sports Int'l, LLC*, No. 09 CV 10388 (DF), 2012 U.S. Dist. LEXIS 183444, at *111 (S.D.N.Y. Dec. 18, 2012), as involving unsuccessful claims. Appellee Br. 56. But that was only *one* ground for a single reduction. The court also applied a 30% overall reduction to counsel's hours due to "block billing" and "amorphous descriptions." 2012 U.S. Dist. LEXIS 183444, at *101-04.

**Third**, Castelluccio characterizes IBM's estimate of his counsel's trial and summary judgment preparation time as "overly broad," "incorrect," "exaggerated and inaccurate," and arbitrary. Appellee Br. 57, 58, 59. Castelluccio, however, bears the burden of "documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Otherwise, the court cannot evaluate whether those hours were "usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994); *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).

-29-

Despite this burden, Castelluccio has not separately identified the hours he spent preparing for trial or summary judgment, leaving IBM's estimates as the only benchmark. To the extent there are inaccuracies in IBM's calculations, they are attributable to Castelluccio's counsel's vague time entries and block billing. For example, IBM could not accurately exclude counsel's hours on the Motion to Preclude[3] from the summary judgment calculation, because those hours were block billed. Far from undercutting IBM's estimates, these practices justify an across the board hours deduction. *Carey*, 711 F.2d at 1142, 1146; *see also Wilder v. Bernstein*, 725 F. Supp. 1324, 1337 (S.D.N.Y. 1989), *rev'd on other grounds*, 944 F.2d 1028 (2d Cir. 1991).

**Finally**, Castelluccio asserts that his hours were facially reasonable. Appellee Br. 58, 59, 60. But he cites no cases authorizing an award as high as his in an analogous context; he does not attempt to explain the excessive time IBM identifies, *see* IBM Br. 59-62; and he does not address IBM's numerous analogous cases. *See supra* pp. 27-29. Castelluccio's attempt to cast this case as complex litigation, Appellee Br. 58, is wrong. At its core, this was a run-of-the-mill single-

---

[3] IBM correctly included counsel's hours working on the Motion to Seal in its summary judgment calculation. It concerned exhibits to IBM's summary judgment motion. *See* Docket No. 53.

-30-

plaintiff employment discrimination trial that lasted eight-and-a-half days and involved eleven live witnesses.  *See* Docket No. 188; Docket No. 189.

Castelluccio attributes the high hours on his fee application to time spent sifting through the bills.  Appellee Br. 60.  But IBM is not responsible for the additional time required due to counsel's imprecise billing.  *See Carey*, 711 F.2d at 1148 ("The inordinate amount of time plaintiffs' attorneys spent on the fee application was a direct result of their failure to keep better records.").

Having no other support, Castelluccio repeatedly invokes the "[s]trong presumption that the lodestar figure represents a reasonable fee."  Appellee Br. 56 (internal citations omitted).  But, that presumption depends upon the accuracy of the lodestar's inputs.  Where, as here, the underlying hours are unreasonable, the lodestar is unreasonable.  *Luciano*, 109 F.3d at 115 (2d Cir. 1997); *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011).

## V.    CONCLUSION

For these reasons, judgment against IBM should be vacated and judgment entered in its favor.  Alternatively, the Court should order a new trial, or reduce the damage and fee award.

Dated:      March 6, 2015

/ s / Traci L. Lovitt
Traci L. Lovitt, Esq.
Jones Day
100 High Street
Boston, Massachusetts 02110
(617) 960-3939

Willis J. Goldsmith, Esq.
Jones Day
222 East 41st Street
New York, New York 10017
(212) 326-3939

Zachary D. Fasman, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
(212) 969-3440

*Attorney for Defendant-
Appellant IBM*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B).  It contains 6,942 words, exclusive of the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  It has been prepared in a proportionally spaced typeface using Mircosoft Office Word 2007 in 14-point font size Times New Roman.

Dated:      March 6, 2015

                                    / s / Traci L. Lovitt
                                    Traci L. Lovitt, Esq.

                                    *Attorney for Defendant-*
                                    *Appellant IBM*

# CERTIFICATE OF SERVICE

I, TRACI L. LOVITT, hereby certify that on March 6, 2015, I filed an

electronic copy of the foregoing REPLY BRIEF FOR DEFENDANT-

APPELLANT on the Court's CM/ECF system, which caused it to be served on all

counsel of record.


Dated:        March 6, 2015

/ s / Traci L. Lovitt
Traci L. Lovitt, Esq.
Jones Day
100 High Street
Boston, Massachusetts 02110
(617) 960-3939
*Attorney for Defendant-
Appellant IBM*