# 14-2854-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

JAMES CASTELLUCCIO,

*Plaintiff-Appellee,*

—against—

INTERNATIONAL BUSINESS MACHINES CORPORATION (IBM),

*Defendant-Appellant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

**JOINT APPENDIX
VOLUME VI OF VI
(Pages A-1272 to A-1474)**

---

ZACHARY D. FASMAN, ESQ.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3440

TRACI L. LOVITT, ESQ.
JONES DAY
100 High Street
Boston, Massachusetts 02110
(617) 960-3939

WILLIS J. GOLDSMITH, ESQ.
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

*Attorneys for Defendant-Appellant IBM*

(*Counsel continued on inside cover*)

MARK RAYMOND CARTA, ESQ.
MARGARET ANN TRIOLO, ESQ.
CARTA, MCALISTER
   & MOORE, LLC
1120 Boston Post Road
Darien, Connecticut 06820
(203) 202-3103

*Attorneys for Plaintiff-Appellee*
   *James Castelluccio*

# TABLE OF CONTENTS

PAGE

## Volume I of VI

*Castelluccio v. International Business Machines Corp.*,
Case No. 09-cv-1145 (TPS) (D. Conn.) Docket Sheet . . . . . . . . . . . . . . . . A-1

Complaint, dated July 20, 2009 (Docket No. 1) . . . . . . . . . . . . . . . . . . . . . . . .  A-33

Affirmation of Zachary D. Fasman in Support of IBM's Motion for
Summary Judgment, dated September 20, 2010
(Docket No. 47-1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-53

Exhibit 4 to the Affirmation of Zachary D. Fasman —
Excerpts from the Deposition of Joanne Collins-Smee
(Docket No. 47-5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-56

IBM's Memorandum of Law in Support of its Motion for Summary
Judgment, dated September 20, 2010 (Docket No. 49) . . . . . . . . . . . .  A-107

IBM's Memorandum of Law in Support of Motion to File
Confidential Documents Under Seal, dated September 20, 2010
(Docket No. 53) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-154

Plaintiff's Memorandum of Law in Support of Opposition to
Defendant's Motion for Summary Judgment,
dated November 15, 2010 (Docket No. 70) . . . . . . . . . . . . . . . . . . . . . . . .  A-160

Memorandum of Decision and Order denying Defendant's Motion for
Summary Judgment, dated August 21, 2012 (Docket. No. 108) . . . . .  A-213

Parties' Joint Trial Memorandum, dated September 13, 2013
(Docket No. 133) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-229

Exhibit C to Affirmation of Mark R. Carta in Support of
Castelluccio's Motion to Preclude, dated November 22, 2013 —
Open Door Report (Docket No. 156-3) . . . . . . . . . . . . . . . . . . . . . . . . . . .  A-250

ii

PAGE

Exhibit G to Affirmation of Mark R. Carta in Support of
    Castelluccio's Motion to Preclude, dated November 22, 2013 —
    Email from R. Mandel to K. Holmes dated June 20, 2008
    (Docket No. 156-7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-255

Ruling on Plaintiff's Motion to Preclude Evidence,
    dated December 23, 2013 (Docket No. 163) . . . . . . . . . . . . . . . . . . . . . . . A-258

Defendant's Memorandum of Law in Support of its Motion for
    Judgment as a Matter of Law, dated January 17, 2014, with
    Exhibit (Docket No. 179) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-265

**Volume II of VI**

Transcript of Trial, dated January 13, 2014 (Docket No. 175) . . . . . . . . . . A-277

Transcript of Trial, dated January 14, 2014 (Docket No. 176) . . . . . . . . . . A-330

Transcript of Trial, dated January 15, 2014 (Docket No. 177) . . . . . . . . . . A-388

Transcript of Trial, dated January 16, 2014 (Docket No. 178) . . . . . . . . . . A-444

Transcript of Trial, dated January 17, 2014 (Docket No. 182) . . . . . . . . . . A-507

**Volume III of VI**

Transcript of Trial, dated January 21, 2014 (Docket No. 183) . . . . . . . . . . A-560

Transcript of Trial, dated January 22, 2014 (Docket No. 184) . . . . . . . . . . A-603

Transcript of Trial, dated January 23, 2014 (Docket No. 185) . . . . . . . . . . A-658

Transcript of Trial, dated January 24, 2014 (Docket No. 186) . . . . . . . . . . A-710

Plaintiff's Trial Exhibit 1—
    The IBM Personal Business Commitments Program,
    dated February 17, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-720

iii

PAGE

Plaintiff's Trial Exhibit 4—
    Castelluccio's Personal Business Commitment, Assessment
    Period: 1/1/2007 to 12/31/2007 .................................... A-733

Plaintiff's Trial Exhibit 14—
    Castelluccio's Personal Business Commitment, Assessment
    Period: 1/1/2006 to 12/19/2006 .................................... A-734

Plaintiff's Trial Exhibit 16—
    WellPoint Contract Overview, Bob Zapfel Review,
    dated June 2, 2006 ............................................... A-739

Plaintiff's Trial Exhibit 17—
    WellPoint Red Team Review, dated June 21, 2006................. A-789

Plaintiff's Trial Exhibit 29—
    Email dated February 28, 2007 from J. Collins-Smee to K.
    Holmes Re: Need to Replace J. Castelluccio...................... A-834

Plaintiff's Trial Exhibit 31—
    P. Kerine Five Minute Drill Summary............................ A-835

Plaintiff's Trial Exhibit 53—
    Email dated April 27, 2007 from D. Liederbach to
    J. Collins-Smee Re: Miguel ...................................... A-844

Plaintiff's Trial Exhibit 56—
    J. Collins-Smee Five Minute Drill Summary ..................... A-846

Plaintiff's Trial Exhibit 60—
    Email dated August 9, 2007 from M. Boxer to R. Zapfel,
    M. Lautenbach and S. Mills Re: Production Issue................. A-852

Plaintiff's Trial Exhibit 62—
    Email dated August 22, 2007 from K. McDonald to M. Boxer ...... A-853

iv

PAGE

Plaintiff's Trial Exhibit 64—
    Email dated September 8, 2007 from K. McDonald to M. Boxer
    Re: DPE ...................................................... A-854

**Volume IV of VI**

Plaintiff's Trial Exhibit 66—
    R. Zapfel's Five Minute Drill Summary ........................... A-855

Plaintiff's Trial Exhibit 67—
    WellPoint Executive Operating Committee Meeting Report –
    Fourth Quarter Review ........................................... A-861

Plaintiff's Trial Exhibit 68—
    WellPoint Client Satisfaction Survey, dated February 14, 2008 ..... A-865

Plaintiff's Trial Exhibit 69—
    Meeting Notice dated January 10, 2008 to A. Weststeyn
    Re: J. Castelluccio Career Opportunities ........................... A-870

Plaintiff's Trial Exhibit 70—
    Email dated January 14, 2008 from J. Castelluccio to
    A. Weststeyn Re: Our phone conversation ......................... A-871

Plaintiff's Trial Exhibit 71—
    Email dated May 1, 2008 from A. Weststeyn to J. Castelluccio
    Re: Job Opportunities ........................................... A-872

Plaintiff's Trial Exhibit 72—
    Email dated May 4, 2008 from J. Castelluccio to A. Weststeyn
    Re: Job Search ................................................. A-873

Plaintiff's Trial Exhibit 73—
    Email dated January 18, 2008 from J. Castelluccio to
    G. Mastriforte Re: UK's DVLA Sr. PE Opportunity ............... A-875

v

PAGE

Plaintiff's Trial Exhibit 74—
    Email dated March 28, 2008 from J. Castelluccio to
    G. Mastriforte Re: Sr. PE Opportunities ........................... A-877

Plaintiff's Trial Exhibit 75—
    Meeting Notice dated January 9, 2008 to J. Castelluccio
    Re: Personal Phil Guido ........................................... A-878

Plaintiff's Trial Exhibit 76—
    Email dated February 27, 2008 from Castelluccio to G. Walker
    Re: Personal and Confidential .................................... A-879

Plaintiff's Trial Exhibit 78—
    Email dated April 7, 2008 from J. Castelluccio to
    M. Barnett Re: Your call ......................................... A-880

Plaintiff's Trial Exhibit 79—
    Email dated April 14, 2008 from M. Barnett to J. Castelluccio
    Re: Our Discussion Yesterday ..................................... A-881

Plaintiff's Trial Exhibit 80—
    Email dated April 23, 2008 from J. Castelluccio to B. Barnett
    Re: For our discussion ........................................... A-882

Plaintiff's Trial Exhibit 81—
    Email dated May 20, 2008 from B. Barnett to J. Castelluccio
    Re: Network Position ............................................. A-884

Plaintiff's Trial Exhibit 82—
    Email dated May 9, 2008 from C. Murphy to G. Walker
    Re: Actions/Notes from May 7 Five Minute Drill .................. A-885

Plaintiff's Trial Exhibit 83—
    Email dated May 13, 2008 from M. Echavarria to ME Directs,
    forwarding J. Collins-Smee email Re: Organizational changes ...... A-888

vi

PAGE

Plaintiff's Trial Exhibit 88—
    Email dated May 13, 2008 from J. Castelluccio to J. Overacre
    Re: Attached is my resume . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-890

Plaintiff's Trial Exhibit 90—
    Email dated May 21, 2008 from J. Collins-Smee to
    J. Castelluccio Re: Resume. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-891

Plaintiff's Trial Exhibit 91—
    Email dated May 20, 2008 from J. Collins-Smee to
    J. Castelluccio Re: Resume. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-893

Plaintiff's Trial Exhibit 92—
    Email dated May 30, 2008 from K. Holmes to J. Collins-Smee
    Re: J. Castelluccio – Executive Separation Talking Points . . . . . . . . . A-895

Plaintiff's Trial Exhibit 93—
    Email dated June 10, 2008 from J. Castelluccio to R. Atkins
    Re: Our phone conversation of a week ago . . . . . . . . . . . . . . . . . . . . . . . A-897

Plaintiff's Trial Exhibit 99—
    Letter dated April 15, 2009 from J. White to M. King
    Re: Castelluccio NYSDHR/EEOC Charge. . . . . . . . . . . . . . . . . . . . . . . . A-898

Plaintiff's Trial Exhibit 204—
    Report of Parties 26(F) Planning Conference,
    dated October 5, 2009 (Docket No. 18) . . . . . . . . . . . . . . . . . . . . . . . . . A-905

Plaintiff's Trial Exhibit 259—
    Plaintiff's Demonstrative Exhibit – IBM's Reasons for
    Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-928

Defendant's Trial Exhibit 12—
    Email chain dated April 25, 2006 from D. Liederbach to K. Jones
    Re: WLP Resource Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-929

vii

PAGE

Defendant's Trial Exhibit 13—
  Email dated May 9, 2006 from D. Liederbach to K. Jones Re:
  Personal and Confidential . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-931

Defendant's Trial Exhibit 28—
  Email chain dated January 26, 2007 from J. Collins-Smee to D.
  Liederbach cc: C. Adler; L. Serra Re: Wellpoint Labor
  Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-932

Defendant's Trial Exhibit 29—
  Email chain dated September 20, 2006 from D. Liederbach to J.
  Collins-Smee Re: Service Delivery at WellPoint – Urgent . . . . . . . . . A-937

Defendant's Trial Exhibit 32—
  Email chain dated February 16, 2007 from J. Collins-Smee to K.
  McDonald Re: my barrage of emails . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-942

Defendant's Trial Exhibit 34—
  Email chain dated February 18, 2007 from D. Liederbach to J.
  Collins-Smee cc: C. Adler Re: Request for Meeting . . . . . . . . . . . . . . A-943

Defendant's Trial Exhibit 36—
  Email dated February 28, 2007 from J. Collins-Smee to
  K. Holmes   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-946

Defendant's Trial Exhibit 45—
  Email chain dated March 31, 2007 from J. Collins-Smee to D.
  Liederbach; J. Castelluccio Re: Wellpoint – Monday . . . . . . . . . . . . . . A-947

Defendant's Trial Exhibit 48—
  Email chain dated May 4, 2007 M. Boxer to K. McDonald . . . . . . . . . A-948

Defendant's Trial Exhibit 52—
  Email dated May 15, 2007 from K. McDonald to J. Collins-
  Smee cc: D. Liederbach; E. McCabe; J. Shimkus; R. Zapfel Re:
  Delivery Leadership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-950

viii

PAGE

Defendant's Trial Exhibit 54—
    Email chain dated May 22, 2007 from M. Boxer to K. McDonald ... A-952

Defendant's Trial Exhibit 109—
    IBM's U.S. Concerns and Appeals Program (Open Door,
    Panel Review & Confidentially Speaking) ......................... A-954

Defendant's Trial Exhibit 117—
    Email dated May 30, 2008 from K. Holmes to J. Collins-Smee
    Re: J. Castelluccio Executive Separation Talking Points ........... A-965

Defendant's Trial Exhibit 124—
    Email chain dated May 14, 2008 from R. Mandel to K. Moran
    Re: Dir Global Interlock Process – Actions Pending for Daniels
    approval ...................................................... A-967

Defendant's Trial Exhibit 128—
    Email chain dated April 1, 2008 from R. Mandel to K. Moran Re:
    Candidate for Network Services Integration Position, with
    attachment .................................................... A-971

Defendant's Trial Exhibit 135—
    Email chain dated May 20, 2008 from G. Walker to R. Mandel
    Re: JG Castelluccio Resume ..................................... A-976

Defendant's Trial Exhibit 136—
    Email chain dated May 20, 2008 from G. Walker to R. Mandel
    Re: JG Castelluccio Resume ..................................... A-979

Court Exhibit 1—
    Jury Instruction Regarding Positions Open while Castelluccio
    on the Bench .................................................. A-981

Court Exhibit 2—
    Letter from Jury .............................................. A-982

IBM's Marked Witness List, dated January 24, 2014
    (Docket No. 188) ............................................. A-984

ix

PAGE

Castelluccio's Marked Witness List, dated January 24, 2014
    (Docket No. 189) ............................................... A-985

Court Exhibit List, dated January 24, 2014 (Docket No. 190) ........... A-986

Charge to the Jury, dated January 24, 2014 (Docket No. 194) ........... A-987

Judgment entered in favor of James Castelluccio against IBM,
    dated January 28, 2014 (Docket No. 195) ....................... A-1004

**Volume V of VI**

Affidavit of Mark R. Carta in Support of Plaintiff's Motion for
    Attorneys' Fees, Prejudgment Interest, Costs and Compensation
    for Increased Tax Liability, dated February 11, 2014
    (Docket. No. 199) ............................................. A-1005

    Exhibit 4 to Affidavit of Mark R. Carta—
    Carta, McAlister & Moore LLC Invoice, dated April 2, 2012
    (Docket. No. 199-4) ........................................... A-1031

    Exhibit 3 to Affidavit of Mark R. Carta—
    Rucci, Burnham & Carta, LLP Invoice, dated August 29, 2008
    (Docket. No. 199-10) ......................................... A-1102

    Exhibit 4 to Affidavit of Mark R. Carta—
    Carta, McAlister & Moore LLC Invoice, dated April 2, 2012
    (Docket. No. 199-11) ......................................... A-1201

**Volume VI of VI**

Defendant's Renewed Motion for Judgment as Matter of Law,
    or, in the Alternative, for New Trial/Remittiture,
    dated February 25, 2014 (Docket No. 202) ....................... A-1272

Declaration of Zachary D. Fasman, dated April 3, 2014
    (Docket. No. 223) ............................................. A-1325

x

PAGE

Exhibit 6 to Declaration of Zachary D. Fasman—
IBM designations of time entries regarding Summary Judgment
(Docket No. 223-6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1334

Exhibit 8 to Declaration of Zachary D. Fasman—
IBM designations of time entries regarding Trial Preparation
(Docket No. 223-8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1341

Plaintiff's Reply to IBM's Opposition to Plaintiff's Motion for
Attorneys' Fees, dated April 17, 2014 (Docket No. 229) . . . . . . . . . . A-1366

Affidavit of Mark R. Carta in Support of Plaintiff's
Supplemental Motion for Attorneys' Fees,
dated June 2, 2014 (Docket. No. 232) . . . . . . . . . . . . . . . . . . . . . . . . . . A-1390

Declaration of Zachary D. Fasman, dated June 23, 2014,
with Exhibit A (Docket. No. 235) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1395

Opinion and Order, dated July 23, 2014, denying Motion for
Judgment as a Matter of Law, denying Oral Motion for Judgment
as a Matter of Law, denying Renewed Motion for Judgment as a
Matter of Law, and denying Motion for New Trial or Remittitur
(Docket No. 236) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1414

Ruling on Plaintiff's Motion for Attorneys' Fees,
dated July 23, 2014 (Docket No. 237) . . . . . . . . . . . . . . . . . . . . . . . . . . A-1449

Final Judgment entered in favor of James Castelluccio against IBM,
dated July 28, 2014 (Docket No. 240) . . . . . . . . . . . . . . . . . . . . . . . . . . A-1472

IBM's Notice of Appeal, dated August 11, 2014
(Docket No. 241) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1473

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES CASTELLUCCIO, | : | CIVIL ACTION |
| Plaintiff | : | NO. 3:09 CV 1145 (TPS) |
| | : | |
| | : | |
| vs. | : | |
| | : | ORAL ARGUMENT REQUESTED |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | |
| Defendant. | : | February 25, 2014 |

## DEFENDANT'S RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL/REMITTITUR

Defendant IBM ("IBM") hereby renews its Motion for Judgment as a Matter of Law pursuant to Rule 50, or in the alternative for a New Trial/Remittitur pursuant to Rule 59.  In support of said Motions, IBM states as follows:

1.  This Court took IBM's prior Rule 50 Motion, filed January 17, 2014, Docket No. 179, under advisement, and this renewed Motion supplements the original Motion.

2.  In the alternative, IBM moves for a new trial or remittitur under Rule 59 following a jury verdict in Plaintiff James Castelluccio's ("Plaintiff's") favor, rendered on January 24, 2014.

3.  The Clerk entered judgment on January 28, 2014, and this Motion is timely filed under Rules 50 and 59 of the Fed. R. Civ. Procedure.

4.  The grounds for these Motions are set forth in the Memorandum of Law accompanying these Motions, submitted contemporaneously.

Respectfully submitted,

PROSKAUER ROSE LLP

Dated:  February 25,  2014
        New York, New York

By:       /s/ Zachary D. Fasman
         Zachary D. Fasman (phv0899)
         Eleven Times Square
         New York, NY  10036
         Telephone:  (212)  969-3440
         Facsimile:  (212) 969-2900

         Counsel for Defendant
         INTERNATIONAL BUSINESS MACHINES
         CORPORATION

Of Counsel:

PAUL HASTINGS LLP
Alexander W. Wood (phv05686)
75 E. 55TH St.
New York, N.Y. 10022
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090

PROSKAUER ROSE LLP
Zachary D. Fasman (phv0899)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3440
Facsimile: (212 969-2900
Attorney for Defendant

OF COUNSEL

PAUL HASTINGS LLP
Alexander W. Wood (phv05686)
75 E. 55th St.
New York, N.Y. 10022
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090


UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


| | | |
|---|---|---|
| JAMES CASTELLUCCIO, | : | CIVIL ACTION |
| Plaintiff | : | NO. 3:09 CV 1145 (TPS) |
| | : | |
| | : | |
| vs. | : | |
| | : | ORAL ARGUMENT REQUESTED |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | |
| Defendant. | : | February 25, 2014 |


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE
ALTERNATIVE, FOR NEW TRIAL/REMITTITUR**

## TABLE OF CONTENTS

                                                       **Page**

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ...............................................................................1

BACKGROUND AND FACTS ..............................................................2

ARGUMENT AND CITATION OF AUTHORITY ..................................6

I.      PLAINTIFF'S PROOF OF AGE DISCRIMINATION DID NOT MEET
      THE BUT STANDARD. ..............................................................7

          A.    Plaintiff Presented No Direct Evidence of Age
              Discrimination........................................................................7

               1.    Inquiries About Retirement Do Not Establish a
                     Case of Age Discrimination........................................7

               2.    Plaintiff's Allegation that Ms. Collins-Smee Asked
                     Him His Age in February 2007 Also Does Not
                     Establish Age Discrimination .....................................10

          B.    Plaintiff's Circumstantial Evidence Does Not Establish Age
               Discrimination......................................................................11

               1.    Plaintiff's Inferential Proof Has No Legal
                     Foundation. ............................................................13

                 2.    Plaintff's "Failure to Assist" Claim Has No Legal
                     Foundation. ............................................................17

                 3.    Plaintiff's Claim That There Were Numerous
                     Positions Available Does Not Create an Inference
                     of Age Discrimination..............................................18

               4.    IBM's Supposed Multiple Reasons for Terminating
                     Plaintiff Are Not "Shifting Explanations" and Do
                     Not Prove Age Discrimination...................................21

A-1276

Case 14-2854, Document 67, 03/13/2015, 1460801, Page17 of 216
Case 3:09-cv-01145-TPS   Document 202-1   Filed 02/25/14   Page 3 of 50

II.    JUDGMENT AS A MATTER OF LAW, OR IN THE
       ALTERNATIVE, A NEW TRIAL OR REMITTITUR, SHOULD
       BE GRANTED WITH REGARD TO THE JURY'S AWARD OF
       DAMAGES...................................................................................................22

       A.    The Jury's Finding of a Willful Violation is Completely
             Without Foundation. .......................................................................22

             1.    IBM's Investigation of Plaintiff's Complaint
                   Negated Any Basis for a Willfulness Finding. ..............................22

             2.    The Court Improperly Precluded IBM From
                   Presenting Evidence of Its Investigation........................................24

       B.    The Jury's Award of $500,000 For Garden Variety
             Emotional Distress Cannot Stand. ..............................................28

       C.    The Jury's Back Pay Award Is Inconsistent with Plaintiff's
             Sworn Testimony. .......................................................................31

       D.    The Jury Found That Suitable Work Existed for Plaintiff
             After His Termination, Yet Refused to Deduct Anything
             for Plaintiff's Failure to Mitigate Damages ...............................33

       E.    Plaintiff's Counsel's Reference to IBM Counsel as a New
             York Trial Lawyer Was Improper and Warrants an New
             Trial...........................................................................................39

ii

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Buckman v. Calyon Secs. (USA) Inc.*,
    817 F. Supp. 2d 322 (S.D.N.Y. 2011)......................................................................9

*Alam v. HSBC Bank USA, N.A.*,
    No. 07 Civ. 3540 (LTS) (JCF), 2009 WL 3096293
    (S.D.N.Y. Sept. 28, 2009), *aff'd*,
    382 F. App'x 74 (2d Cir. 2010) ...................................................................6, 17

*Booker v. Taylor Milk Co.*,
    64 F.3d 860 (3rd Cir. 1995) .....................................................................35

*Bringley v. Donahoe*,
    499 F. App'x 116 (2d Cir. 2012) ...............................................................20

*Broich v. Inc. Vill. of Southampton*,
    462 F. App'x 39 (2d Cir. 2012), *cert. denied*,
    133 S. Ct. 527 (2012)...........................................................................25

*Brown v. L & P Indus., LLC*,
    No. 5:04CV0379 (JLH), 2005 WL 3503637 (E.D. Ark. Dec. 21, 2005)................................23

*Butchko v. Textron Lycoming*,
    796 F. Supp. 63 (D. Conn. 1992)...............................................................21

*Byrnie v. Town of Cromwell Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001)...............................................................14, 20

*Campbell v. Alliance Nat'l Inc.*,
    107 F. Supp. 2d 234 (S.D.N.Y. 2000)...........................................................9

*Carter v. Rosenberg & Estis, P.C.*,
    No. 95 CIV. 10439 (DLC), 1998 WL 150491 (S.D.N.Y. Mar. 31, 1998).............................37

*Charvenko v. Barbera*,
    No. 09-CV-6383T, 2011 WL 1672471 (W.D.N.Y. Mar. 30, 2011) ........................................30

*Cooke v. Gen. Dynamics Corp.*,
    993 F. Supp. 56 (D. Conn. 1997)...............................................................22

*Cross v. N.Y. Transit Auth.*,
    417 F.3d 241 (2d Cir. 2005).....................................................................29

*Danzer v. Norden Sys., Inc.*,
    151 F.3d 50 (2d Cir. 1998)......................................................................9

*Dawson v. City of New York*,
   No. 09 Civ. 5348 (PGG), 2013 WL 4504620 (S.D.N.Y. Aug. 19, 2013)................................11

*DiFilippo v. Barclays Capital, Inc.*,
   552 F. Supp. 2d 417 (S.D.N.Y. 2008)...................................................................................23

*Dixon v. Int'l Fed'n of Accountants*,
   416 F. App'x 107 (2d Cir. 2011) ...........................................................................................9

*DLC Mgmt. Corp. v. Town of Hyde Park*,
   163 F.3d 124 (2d Cir. 1998)....................................................................................................7

*Do Yea Kim v. 167 Nail Plaza*,
   No. 05 CV 8560 (GBD), 2008 WL 2676598 (S.D.N.Y. July 7, 2008)..................................28

*Donahue v. Norwich Roman Catholic Diocesan Corp.*,
   No. 3:05 CV 413 (CFD), 2008 WL 821890 (D. Conn. Mar. 26, 2008) ...............................26

*EEOC v. Service News Co.*,
   898 F. 2d 958 (4th Cir. 1990) ...............................................................................................35

*Faldetta v. Lockheed Martin Corp.*,
   No. 98 Civ. 2614 (RCC), 2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000)...............................17

*Farrar v. Town of Stratford*,
   537 F. Supp. 2d 332 (D. Conn. 2008) ...................................................................................20

*Georgy v. O'Neill*,
   No. 00-CV-0660(FB), 2002 WL 449723 (E.D.N.Y. Mar. 25, 2002) .....................................9

*Gorzynkski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010)......................................................................................................6

*Gray v. City of New York*,
   No. 08-CV-2840 (NGG)(JMA), 2011 WL 6153635
   (E.D.N.Y. Dec. 12, 2011) .....................................................................................................26

*Greenway v. Buffalo Hilton Hotel*,
   143 F.3d 47 (2d Cir. 1998)..............................................................................................34, 39

*Gross v. FBL Fin. Servs.*,
   557 U.S. 167 (2009)..................................................................................................................6

*Harris v. Chand*,
   506 F.3d 1135 (8th Cir. 2007) ..............................................................................................18

*Hasemann v. United Parcel Service of Am., Inc.*,
   No. 3:11-cv-554 (VLB), 2013 WL 696424 (D. Conn. Feb. 26, 2013).........................9, 25, 26

*Holowecki v. Fed. Express Corp.*,
  382 F. App'x 42 (2d Cir. 2010) .................................................................6

*Hunt v. Klein*,
  476 F. App'x 889 (2d Cir. 2012) ...............................................................25

*Jasco Tools v. Dana Corp. (In re Dana Corp.)*,
  574 F.3d 129 (2d Cir. 2009)......................................................................15

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005).......................................................................11

*Kalra v. HSBC Bank U.S., N.A.*,
  567 F. Supp. 2d 385 (E.D.N.Y. 2008), *aff'd*,
  360 F. App'x 214 (2d Cir. 2010) ...............................................................17

*Lomotey v. Conn. D.O.T.*,
  355 F. App'x 478 (2d Cir. 2009) ...............................................................21

*Lomotey v. Conn. D.O.T.*,
  No. 3:09cv2143(VLB), 2012 WL 642763 (D. Conn. Feb. 28. 2012).......................14

*Lorillard v. Pons*, 434 U.S. 575 (1978)), *aff'd*,
  299 F. 3d 156 (2d Cir. 2002).....................................................................23

*Macmillan v. Millenium Broadway Hotel*,
  873 F. Supp. 2d 546 (S.D.N.Y. 2012).....................................................30, 31

*Manning v. N.Y. Univ.*,
  No. 98 CIV. 3300(NRB) 2001 WL 963982 (S.D.N.Y. Aug. 22, 2001), *aff'd*,
  299 F. 3d 156 (2d Cir. 2002). .....................................................................23

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988)....................................................................................22

*Meacham v. Knolls Atomic Power Lab.*,
  381 F.3d 56 (2d Cir. 2005), *vacated on other grounds*,
  544 U.S. 957 (2005)....................................................................................28

*Mileski v. Long Island R.R. Co.*,
  499 F.2d 1169 (2d Cir. 1974)......................................................................39

*Minneapolis, St. Paul & Sault Ste, Marie Ry. Co. v. Moquin*,
  283 U.S. 520 ...............................................................................................39

*Moore v. Houlihan's Rest., Inc.*,
  No. 07-CV-3129, 2011 WL 2470023 (E.D.N.Y. May 10, 2011) ...........................28

*N.Y. Cent. R.R. Co. v. Johnson*,
   279 U.S. 310 (1929)..................................................................................40

*Naval v. Herbert H. Lehman Coll.*,
   No. 97 CV 6800 (RJD), 2004 WL 3090578 (E.D.N.Y. Sept. 15, 2004) ................19

*Nieves v. Avalonbay Cmtys., Inc.*,
   No. 3:06CV00198 (DJS), 2007 WL 2422281 (D. Conn. Aug. 23, 2007) ...............26

*Nimely v City of New York*,
   414 F.3d 381 (2d Cir. 2005)..........................................................................6

*Norton v. Sam's Club*,
   145 F.3d 114 (2d Cir. 1998).............................................................6, 14, 26

*Pappas v. Middle Earth Condo Ass'n*,
   963 F.2d 534 (2d Cir. 1992)...............................................................39, 40

*Parrish v. Immanuel Med. Ctr.*,
   92 F.3d 727 (8th Cir. 1996) ........................................................................23

*Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*,
   310 F.3d 43, 55 (2d Cir. 2002).....................................................................31

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006)........................................................................28

*Pleau v. Centrix, Inc.*,
   No. 06cv01626 (DJS), 2008 WL 4380515 (D. Conn. Sept. 24, 2008), *aff'd*,
   343 F. App'x 685 (2009) ............................................................................14

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997)........................................................................ 7-8

*Raymond v. Boehringer Ingelheim Pharms., Inc.*,
   653 F. Supp. 2d 151 (D. Conn. 2009)..........................................................36

*Reich v. Bay, Inc.*,
   23 F.3d 110 (5th Cir. 1994) ........................................................................23

*Roge v. NYP Holdings, Inc.*,
   257 F.3d 164 (2d Cir. 2001)........................................................................21

*Rubinow v. Boehringer Ingelheim Pharms., Inc.*,
   496 F. App'x 117 (2d Cir. 2012) ...............................................................26

*Santora v. All About You Home Care Collaborative Health Care SVC, LLC*,
   No. 3:09CV00339 (DJS), 2012 WL 1964965 (D. Conn. May 31, 2012)...........8-9

*Schug v. Pyne-Davidson Co.*,
   No. 3:99-CV-1493 (CFD), 2001 WL 34312877 (D. Conn. Dec. 10, 2001) ..............................8

*Shumway v. UPS*,
   118 F.3d 60 (2d Cir. 1997).....................................................................................................20

*Singh v. Air-India Ltd.*,
   108 F. App'x 9 (2d Cir. 2004) ................................................................................................21

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993)...................................................................................................................6

*Staub v. Proctor Hosp.*,
   131 S. Ct. 1186 (2011).............................................................................................................25

*Timothy v. Our Lady of Mercy Med. Ctr.*,
   233 F. App'x 17 (2d Cir. 2007) ...............................................................................................21

*Tomassi v. Insignia Fin. Grp., Inc.*,
   478 F.3d 111 (2d Cir. 2007).......................................................................................................8

*Trans World Airlines, Inc. v. Thurston*,
   469 U.S. 111 (1985).................................................................................................................22

*Vahos v. Gen. Motors Corp.*,
   No. 06-CV-6783 (NGG)(SMG), 2008 WL 2439643 (E.D.N.Y. June 16, 2008) ...................27

*Weichman v. Chubb & Son*,
   552 F. Supp. 2d 271 (D. Conn. 2008)......................................................................................21

*Wolff v. Brown*,
   128 F.3d 682 (8th Cir. 1997) ...................................................................................................27


**STATUTES AND OTHER AUTHORITIES**

29 C.F.R. § 578.3(c)......................................................................................................................23

29 C.F.R. § 578.3(c)(3)..................................................................................................................24

Age Discrimination in Employment Act (ADEA)............................................................... passim

EEOC Notice, N-915.042, Guidance on Cases Involving the Definition of Willful
   Violation—Age Discrimination in Employment Act (ADEA), *available* at 2009 WL
   3608225 (May 1, 1989) ...........................................................................................................23

Fair Labor Standards Act (FLSA)..................................................................................................23

Fed. R. Civ. P. 50 ........................................................................................... passim

Fed. R. Civ. P. 59 ........................................................................................... 1, 2, 7

Fed. R. Evid. 801 ........................................................................................... 5

Fed. R. Evid. 801(c) ........................................................................................... 27

viii

**A-1283**

Defendant IBM ("IBM") respectfully submits this Memorandum of Law in Suport of its Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50, or in the alternative for a New Trial/Remittitur pursuant to Rule 59.

## <u>INTRODUCTION</u>

This Court could not have been clearer in instructing the jury not to render a sympathy verdict.  Your Honor's first instruction to the jury was:

> Sympathy has no place in this case and you should conscientiously and definitively avoid any consideration of sympathy as a basis for your decisions.

Charge to the Jury at 1.  Your Honor then specifically instructed the jury that to find for the Plaintiff, he had to prove that IBM intentionally terminated him because of his age:

> In order for the plaintiff to succeed on his ADEA claim, he must prove by a preponderance of the evidence that the defendant terminated his employment <u>because of</u> his age.  In other words, he must prove that age was the but-for cause of his termination, rather than just a contributing or motivating factor.  The plaintiff must prove by a preponderance of the evidence that the defendant would not have terminated him had he been younger and everything else had remained the same.

Charge to the Jury at 8 (emphasis in original).

Plaintiff's evidence did not come close to meeting this exacting standard; indeed, the evidence in the record proves just the opposite.  Yet the jury, after a nine day trial, ignored the Court's careful instructions and rendered a sympathy verdict in Plaintiff's favor on all counts, awarding him full relief plus liquidated damages for an allegedly willful violation of the ADEA, entirely without proof of age discrimination as required by law.  As discussed below, the verdict is contrary to the overwhelming weight of the evidence and must be set aside.

In the alternative, IBM hereby moves for a new trial or remittitur on the following basis:

- The jury found IBM violated the ADEA willfully, without any evidence to support this claim whatsoever and with IBM prevented from presenting a complete defense to this allegation, and to the underlying discrimination claims, by the Court's pre-trial ruling precluding introduction of evidence of IBM's internal investigation of Plaintiff's complaint;

- The jury awarded Plaintiff $500,000 in compensatory damages for a garden variety emotional distress claim, well out of the range of permissible damages for an emotional distress claim without medical evidence or corroboration;

- The jury awarded Plaintiff back pay based upon a flawed expert study which calculated damages to age 66, even though the Plaintiff twice testified under oath that he intended to retire at age 65; and

- The jury found that suitable work existed for Plaintiff after his termination, yet failed to make any deduction from the back pay award for failure to mitigate, a finding that is completely contrary to the evidence in the record.

IBM therefore moves, pursuant to Rule 59, for a new trial or a remittitur of excessive damages in the event the Court does not dismiss all of Plaintiff's claims under Rule 50.

## BACKGROUND AND FACTS

This litigation concerned only the Plaintiff's termination from IBM on June 30, 2008. It is undisputed that this termination occurred because Plaintiff had been unable to find a new position after being "on the bench" at IBM since January 1, 2008 without a job assignment, while being paid his full salary and benefits. Docket No. 133, at 15, ¶19. It is also undisputed that Plaintiff offered no evidence showing that any younger employee was afforded more time to find a new position while on the bench.

2

Plaintiff was on the bench because he had previously been removed from two positions in 2007 for failing to perform to IBM's expectations. The Court held prior to trial that Plaintiff's removal from these two positions was not timely challenged and was not actionable, Docket No. 108 at 10-11. Nonetheless, the Court held that evidence regarding those removals was admissible background evidence and Your Honor so instructed the jury at the conclusion of the trial. Charge to the Jury at 10. The undisputed facts with regard to these removals established the following.

- Plaintiff was removed from his original position, Vice President of the Public Sector Division ("VP-PSD") due to complaints from two senior IBM executives, David Liederbach and Keenie McDonald, both of whom testified at trial. Those complaints arose in 2006 and pre-dated the arrival of Plaintiff's final supervisor, Joanne Collins-Smee, who is the only person at IBM who he accuses of age discrimination.[1]

- Liederbach, who was in charge of the accounts in the Public Sector which Plaintiff and his team serviced, had requested that Plaintiff be removed from this position in mid-2006, when Plaintiff's supervisor was Kelton Jones. Tr. 1/21/2014 at 1169:22-1170:10; D. Ex. 12. Jones testified at trial, as Plaintiff's witness, that at the end of 2006 he was prepared to remove Plaintiff from this position on the basis of Liederbach's complaints, because Plaintiff had not established a viable working relationship with Liederbach's team. Tr. 1/17/2014 at 1080:16-1081:15; 1101:5-23. Jones was terminated prior to taking this action, but testified that he informed Plaintiff he intended to remove him from the VP-PSD position in January, 2007, prior to Jones's departure from IBM. Tr. 1/17/2014 at 1100:4-17.

---

[1] *See, e.g.*, D. Exs. 13 and 15; *and see* Tr. 1/15/2014, at 548:24-550:4 (no one aside from Ms. Collins-Smee made any age-based remarks to him).

3

- Collins-Smee replaced Jones on February 1, 2007, and removed Plaintiff from the VP-PSD position one month later, after receiving multiple requests for this action from Liederbach and McDonald. Tr. 1/16/2014 at 880:22-881:11; D. Ex. 28, 29, 32, 34. She took the very action Jones had planned to take for the very reasons he had planned to do so.

- Plaintiff was replaced as the VP-PSD by Miguel Echavarria, who at the time was 49 years old. Plaintiff at the time was 60. Docket No. 133, at 15, ¶13.

- Plaintiff was assigned at the end of March, 2007, to the role of Senior Delivery Project Executive ("SDPE") for the WellPoint account with no loss in pay or benefits. It is undisputed that IBM received numerous complaints about his performance in this position, with client personnel commenting that Plaintiff was "invisible" and "MIA." *See, e.g.,* D. Exs. 48 and 54; *and see* Tr. /21/2014 at 1248:16-1250:15.

- Plaintiff was removed from this role at the end of 2008, and replaced by Gordon Crawford, who was then age 59 to Plaintiff's age 60. Docket No. 133, at 15, ¶17.

Plaintiff, after 5 months on the bench with no success in finding a new position, was offered a separation package by IBM which contained a general release advising him to consult with counsel. Two days after consulting with counsel, Plaintiff filed an internal claim of age discrimination. Tr. 1/15/2014 at 569:17-570:21. This claim was investigated by Russell Mandel, who is in charge of IBM's internal appeals process, and who interviewed **21** witnesses and prepared a detailed report containing his findings. Tr. 1/23/2014 at 1670:2-11. The parties' pre-trial stipulations about this investigation are as follows:

23. On June 13, 2008, Mr. Castelluccio lodged a complaint with IBM's Human Resources Department, claiming that he was being systematically marginalized by his

4

manager for the purpose of terminating his employment as a result of age discrimination.

24. The IBM human resources department conducted an "Open Door Investigation" into Mr. Castelluccio's complaint. An "Open Door" investigation is an internal mechanism IBM has established to deal with employee complaints.

25. Mr. Russell Mandel, a senior Consulting HR Professional who runs IBM's internal appeals programs, conducted the Open Door investigation.

*****

27. On August 11, 2008, Mr. Mandell informed Mr. Castelluccio that the "Open Door" Investigation had concluded that his separation from IBM was not the result of age discrimination.

Docket No. 133, at 16, ¶¶ 23-27.

IBM was not able to present even these stipulated facts to the jury. Prior to trial, Your Honor granted Plaintiff's Motion in Limine and precluded IBM from introducing into evidence 1) the investigative report prepared by Mr. Mandel; 2) Mr. Mandel's notes of his investigation[2]; and 3) any testimony regarding the conclusion of his investigation. Docket No. 163, at 1-2. While Your Honor subsequently agreed that evidence regarding the investigation was directly relevant to Plaintiff's claim that IBM willfully violated the ADEA, the Court nonetheless prevented IBM from presenting the jury with evidence regarding the results of the investigation, and indeed prevented IBM counsel from asking Mr. Mandel whether he had the power to reinstate Plaintiff if he found in his favor. Your Honor ultimately instructed the jury that they might "consider this testimony [regarding the Open Door investigation] as evidence that IBM takes such allegations seriously. You should not consider it for any other purpose." Charge to the Jury at 11 (emphasis in original). The jury thereafter found that IBM had willfully violated the ADEA and ordered liquidated damages.

---

[2] Plaintiff stipulated during trial that the report and notes were business records and admissible under Fed. R. Evid. 801. Tr. 1/22/2014 at 1292:24-1293:3.

5

A-1288

Case 14-2854, Document 67, 03/12/2015, 1460801, Page29 of 216
Case 3:09-cv-01145-TPS   Document 202-1   Filed 02/25/14   Page 15 of 50

## ARGUMENT AND CITATION OF AUTHORITY

A Rule 50 motion should be granted where, as here, even "considering the evidence in the light most favorable to the non-moving party and drawing all reasonable evidentiary inferences in that party's favor, there [is] 'no legally sufficient evidentiary basis for a reasonable jury to find' in favor of the non-moving party." *Nimely v City of New York,* 414 F.3d 381, 390 (2d Cir. 2005) (citing Fed. R. Civ. P. 50(a)). In an ADEA case, *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009), requires "that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action and not just a contributing or motivating factor." *Gorzynkski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citation and internal quotation marks omitted).

That burden cannot be met through surmise or speculation—Plaintiff must affirmatively prove by a preponderance of the evidence that IBM terminated his employment <u>intentionally because of</u> his age, and must carry that burden throughout. *Holowecki v. Fed. Express Corp.*, 382 F. App'x 42, 45 (2d Cir. 2010) (judgment for employer where plaintiffs failed to establish that age was the but for cause of the employer's adverse action); *Norton v. Sam's Club*, 145 F.3d 114, 118-119 (2d Cir. 1998) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)); *Alam v. HSBC Bank USA, N.A.*, No. 07 Civ. 3540 (LTS) (JCF), 2009 WL 3096293, at *8 (S.D.N.Y. Sept. 28, 2009) (under the ADEA, the plaintiff must establish that discrimination was the but for cause of the employer's decision), *aff'd*, 382 F. App'x 74 (2d Cir. 2010). Plaintiff has not come close to meeting that standard here.

6

Under Rule 59, by contrast, the Court, sitting as the "thirteenth juror", may conclude that the verdict is unsupported and order a new trial without indulging every inference in favor of the non-moving party. "Unlike judgment as a matter of law [under Rule 50], a new trial may be granted [under Rule 59] even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir. 1998). All of the reasons supporting judgment as a matter of law, together with the excessive damages awarded and the evidentiary and other issues discussed below, require at a minimum a new trial or remittitur.

## I.   PLAINTIFF'S PROOF OF AGE DISCRIMINATION DID NOT MEET THE BUT-FOR STANDARD.

### A.   Plaintiff Presented No Direct Evidence of Age Discrimination.

#### 1.   Inquiries About Retirement Do Not Establish a Case of Age Discrimination.

Plaintiff testified that only his final manager, Joanne Collins-Smee, made any age-related comments to him and that only she was motivated by age discrimination. Tr. 1/15/2014 at 548:24-550:4. According to Plaintiff, Collins-Smee made three isolated and non-coercive references to his eligibility to "bridge to retirement." Tr. 1/15/2014 at 550:5-20. While Ms. Collins-Smee denied those statements[3], even if these references occurred exactly as described by plaintiff, they are not sufficient to support a finding of age discrimination, as a matter of law.

A discussion of retirement, standing alone, is not proof of age discrimination. The Second Circuit has made clear that "[t]he ADEA does not make all discussion of age taboo."

---

[3] She testified that she mentioned retirement as an option to Plaintiff in November, 2007, when she removed him from the WellPoint position and in May, 2008, when she told him that Human Resources was preparing a separation package for him in the event he was unable to locate a job by the end of June, 2008. Tr. 1/17/2014 at 928:15-931:6; 1/17/2014 at 963:2-964:5.

7

*Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997).   Employers have legitimate reasons to confirm employees' interest in taking early retirement, which is considered an "issue that [is] germane to the joint interests of the employee and the Company."  *Id.*  In the context of ADEA claims, "comments concerning retirement can be made without suggesting age discrimination." *Schug v. Pyne-Davidson Co.*, No. 3:99-CV-1493 (CFD), 2001 WL 34312877, at *5 (D. Conn. Dec. 10, 2001).   Any such comments "must be viewed in context, along with the specific language used and the number of times the comments were made."  *Id.*

Plaintiff's evidence does not establish a claim of but-for age discrimination; these were three innocuous "bridge to retirement" references that occurred on isolated occasions during a period of nearly 18 months.   Plaintiff admitted that Collins-Smee never advised him he was too old to do the job, or told him that he should retire.   Tr. 1/15/2014 at 548:5-10.   She said, according to the Plaintiff, only that he was eligible to "bridge to retirement."   Tr. 1/15/2014 at 553:10-17.   Additionally, as the Court heard, Plaintiff himself testified that an inquiry regarding retirement is not inappropriate at IBM.   Tr. 1/15/2014 at 551:12-552:16.

These three alleged "bridge to retirement" comments had no nexus to the termination decision, occurred outside of the statute of limitations period and should have been classified as inadmissible stray remarks, as IBM contended at trial.  *See* Docket No. 174.   It is well settled in the Second Circuit that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).   Courts consider allegedly improper comments to rise above the level of mere stray marks only when the statements are: "(1) made by the decision maker or one whose recommendation is sought by the decision maker;

8

(2) related to the specific employment decision challenged; and (3) made close in time to the decision." *Santora v. All About You Home Care Collaborative Health Care SVC, LLC*, No. 3:09CV00339 (DJS), 2012 WL 1964965, at *4 (D. Conn. May 31, 2012) (emphasis added).

"Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination." *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011), *quoting Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). There must be a meaningful and relevant nexus between the remarks and the employment decision. *See, e.g., Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight") (citation omitted). Absent evidence of a connection between the alleged remarks and the employment decision, such remarks are simply irrelevant. *See, e.g., Hasemann v. United Parcel Service of Am., Inc.*, No. 3:11-cv-554 (VLB), 2013 WL 696424, at *7 (D. Conn. Feb. 26, 2013) ("Although [the alleged discriminator's] comments could be viewed as discriminatory by a reasonable juror, the comments were not made in relation to the employment decision at issue and were not related to the decision making process").

Indeed, courts in this Circuit routinely require that to be admissible, comments must occur within a relatively short time frame of the adverse action. Courts thus refuse to find remarks relevant or admissible when made more than a few months prior to the adverse action. *See, e.g., Santora, supra* at *7 ("comment made at least **five months** before plaintiff's termination was not sufficient to create an inference of discrimination") (quotation omitted) (emphasis added); *see* also Buckman *v. Calyon Secs. (USA) Inc.*, 817 F. Supp. 2d 322, 336 (S.D.N.Y. 2011) ("[a remark made in isolation **five months** before plaintiff's discharge] was too

9

remote in time and context to support a reasonable inference that [plaintiff's] discharge was a result of . . . discrimination") (quotations omitted) (emphasis added); *Georgy v. O'Neill*, No. 00-CV-0660(FB), 2002 WL 449723, at *6 (E.D.N.Y. Mar. 25, 2002) (alleged discriminatory comment **six months** prior to plaintiff's termination was "the kind of isolated and stray remark insufficient, without more, to raise an inference of discrimination").

Based upon these standards, three isolated statements about "bridging to retirement" – even if they could be considered evidence of age discrimination in the first place – are so remote in time to the termination as to be meaningless.  The first alleged statement occurred in February 2007, nearly 18 months prior to the June 30, 2008 termination.  Tr. 1/15/2014 at 550:5-15. Assuming the relevant time frame for a stray comment is 6 months or less – as the case law discussed above establishes – an isolated comment made 18 months prior to the termination is a meaningless stray remark.[4] The same is true of a statement made in November, 2007, 9 months prior to the termination.   Tr. 1/15/2014 at 550:12-17.   That leaves one single non-coercive "bridge to retirement" comment, according to the Plaintiff occurring in March, 2008, within even remote temporal proximity to the termination in late June, 2008.   And none of these remarks referred at all to the termination decision. Taken separately or as a whole, three non-coercive "bridge to retirement" comments during the course of 18 months prove nothing.   They are not evidence of age discrimination.

---

[4] While Plaintiff also claimed that Ms. Collins-Smee asked about Ken Wisse's ability to bridge to retirement, he admitted that nothing ever came of this supposed inquiry and that Mr. Wisse was still working at the time Plaintiff left IBM. Tr. 1/15/2014 at 548:11-23.

2.   **Plaintiff's Allegation that Ms. Collins-Smee Asked Him His Age in February 2007 Also Does Not Establish Age Discrimination.**

Even when it comes to age-based inquiries, Plaintiff established nothing at trial that would conceivably support the enormous verdict based upon his termination on June 30, 2008. Indeed, the sole age-linked inquiry alleged is half a statement that allegedly occurred 18 months prior to the termination; according to Mr. Castelluccio, in early February, 2007, when they originally met, Ms. Collins-Smee started to say "how old" and stopped herself.[5]  Such a remark, made at their initial meeting nearly a year and a half before Mr. Castelluccio's termination, is not proof of anything.  The ADEA does not prevent an inquiry as to age, if indeed this alleged half-statement occurred and qualifies as such an inquiry.[6]  No reasonable juror could possibly conclude that a half-statement made by Ms. Collins-Smee when she took over as Plaintiff's manager in early February 2007 could have anything to do with his subsequent termination 18 months later.  As a matter of law, the passage of 18 months negates any relevance to this comment, for the reasons discussed in Section 1 above.

B.   **Plaintiff's Circumstantial Evidence Does Not Establish Age Discrimination.**

In assessing the quantum of evidence of age discrimination contained in the trial record, it is vital to bear in mind that Plaintiff's burden of proving but-for causation cannot be met by speculation or surmise.  Courts in this circuit consistently dismiss age discrimination cases based only on speculation instead of evidence that similarly situated younger employees are treated differently.  *See, e.g., Dawson v. City of New   York*, No. 09 Civ. 5348 (PGG), 2013 WL

---

[5] On direct, Plaintiff disingenuously claimed that Ms. Collins-Smee asked him how old he was.  Tr. 1/14/2014 at 251:8-12 .  Only on cross did he admit what he had testified to in his deposition; that she allegedly started to say something and then stopped.  Tr. 1/15/2014 at 556:5-557:10.  Ms. Collins-Smee vehemently denied making any such statement, Tr. 1/16/2014 at 866:23-867:13.
[6] Plaintiff did not mention this alleged statement to Mr. Mandel during his investigation, Tr. 1/22/2014 at1452:4-19, nor did he raise it with Mr. Walker in their discussions of his complaints against Ms. Collins-Smee.  Tr. 1/22/2014 at 1451:5-11.

4504620, at *12 (S.D.N.Y. Aug. 19, 2013) (rejecting the plaintiff's age discrimination claims based on "unfair" criticism and "unsatisfactory" performance ratings and suggesting that "no fair-minded jury could conclude that [the plaintiff] established a . . . case for age discrimination without engaging in 'unsubstantiated speculation.'") (citing *Jeffreys v. City of New York*, 426 F.3d 549, 533-54 (2d Cir. 2005); *and see supra* at 6-7 and cases there cited. This burden cannot be met through the speculation Plaintiff offered in this case.

Plaintiff did not attempt to meet his but-for burden through the traditional methods of proving discrimination through circumstantial evidence. He did not show that IBM or Joanne Collins-Smee were consciously attempting to reduce the age of the workforce. Indeed, the undisputed evidence shows just the contrary:

- Plaintiff was replaced as DPE on the WellPoint account by Gordon Crawford (59), who was one year younger than Plaintiff (60).

- Plaintiff was replaced as Vice-President of the Public Sector Division by Miguel Echavarria, who at the time was 49 years old.

- These decisions were made by Joanne Collins-Smee, who at the time was 50 years old.   Tr. 1/16/2014 at 850:23-851:6.

- Ms. Collins-Smee deliberately reached out to and strongly encouraged Mike Morin, previously the DPE on the WellPoint account, to remain with IBM when he was 56 years old. Tr. 1/16/2014 at 824:15-825:4; 888:2-20.

- The age of Ms. Collins-Smee's direct reports during the period when she was the General Manager of IT Delivery Americas did not change significantly (D. Ex. 227).

12

- Mr. Castelluccio's claims were investigated by Russell Mandel, IBM's head of Internal Appeals, who was 68 years old at the time of trial.   Tr. 1/22/2014 at 1440:15-19.

These facts are not in dispute, and show that IBM certainly was not engaged in any sort of youth movement.   Indeed, these facts completely undermine Plaintiff's claim that Ms. Collins-Smee was out to get him because he was 60 years old; why would she hire a 59 year old to replace a 60 year old employee who she supposedly terminated because of his age?   The very statement reveals its absurdity.

Moreover, Plaintiff did not present evidence that similarly situated younger employees were treated more favorably than he was. Plaintiff identified no executive of any age who was afforded more than 6 months to find a position while being retained at full salary plus benefits; he identified no comparably situated younger individual who received more assistance from his manager in an effort to find a new position.   There simply was no showing that comparably situated younger employees received better treatment than Plaintiff.   In the absence of such evidence, Plaintiff did not carry his burden of proving through circumstantial evidence that his age was the but-for cause of his termination.

### 1.   Plaintiff's Inferential Proof Has No Legal Foundation.

Instead of following judicially accepted methods of proving age discrimination, Plaintiff directly appealed to the jury to find age discrimination through speculation and surmise.   During his closing argument, Plaintiff's counsel improperly invited the jury to "infer" discrimination based upon actions which Plaintiff believed affected him adversely, without linking any of those actions to age.   The result was that the jury was asked to – and ultimately did – find that IBM

intentionally terminated the Plaintiff because of his age simply because IBM took several adverse actions against him, with no proof that any of these occurred because of Plaintiff's age.

That is not sufficient to establish a violation of the ADEA or New York law. Courts in this circuit and elsewhere have made it very clear that proving unfair treatment is not the same as proving age discrimination. *See Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998) ("[t]he ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*, for firing people on account of their age") (emphasis in original); *see also Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("[O]ur role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments") (citation omitted).[7] Your Honor adopted just this reasoning when the Court instructed the jury as follows:

> Simply because an employer has taken unfavorable action toward an employee who is 40 years of age or older does not mean that an act of age discrimination has taken place. Under the ADEA, an employer may transfer, terminate or take other actions against an employee for any reason, good or bad, fair or unfair, as long as it does not discriminate against employees on the basis of age…. While the law prohibits discrimination, it is not unlawful for an employer to take adverse action when its actions are based on non-discriminatory factors, whether or not you agree with the decision.

Charge to the Jury at 9.

Despite these clear legal precepts and the Court's very specific instruction, Plaintiff's counsel urged the jury to "infer" discrimination from events that had no connection to the

---

[7] *See also Lomotey v. Conn. D.O.T.*, No. 3:09cv2143(VLB), 2012 WL 642763, at *20 (D. Conn. Feb. 28. 2012) (same); *Pleau v. Centrix, Inc.*, No. 06cv01626 (DJS), 2008 WL 4380515, at *9 (D. Conn. Sept. 24, 2008) ("The court greatly sympathizes with [the plaintiff], as it appears [the employer] was unwilling to allow him to demonstrate . . . that he could still perform his duties satisfactorily. Nevertheless, 'the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*, for firing people on account of their age'") (alteration in original) (quoting *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998)), *aff'd*, 343 F. App'x 685 (2009).

14

Plaintiff's age at all.  Tr. 1/23/2014 at 1637:17-1639:7.  For example, counsel invited the jury to infer age discrimination from the following age-neutral acts:

• That Collins-Smee decided to remove him as Vice President of the Public Sector Division (Tr. 1/23/2014 at 1639:5-15) even though she acted upon the complaints of IBM executives (Liederbach and McDonald) without any age bias and even though Plaintiff's prior supervisor Kelton Jones testified that he was about to do the same thing for exactly the same reason;

• That Ms. Collins-Smee did not inform Plaintiff he was being replaced as VP-PSD until four months after the fact, Tr, 1/14/2014 at 344:12-18, even though documentary evidence showed that she did so inform him, *see* D. Ex. 36, and Plaintiff's own witness Kelton Jones testified that he himself informed Plaintiff of his impending removal in January, 2007[8];

• That Plaintiff was not placed on Pat Kerin's 5 minute drill, even though Keith Holmes testified that he attempted to do this in accordance with Ms. Collins-Smee's instructions.  Tr. 1/22/2014 at 1313:19-1315:12;

• That Plaintiff was assigned to the difficult WellPoint account in the first place, even though he never protested that assignment and considered himself a specialist in troubled accounts. Tr. 1/15/2014 at 602:5-13, 609:2-4; D. Exs. 45 and 108;

---

[8] Plaintiff's claim that he never knew he was being removed as the VP-PSD is simply incredible in light of Jones' testimony, by which Plaintiff – having offered him as a witness – is bound.  *See Jasco Tools v. Dana Corp. (In re Dana Corp.)*, 574 F.3d 129, 152 (2d Cir. 2009) (court should give credence to evidence that is uncontradicted and unimpeached, at least to the extent that evidence comes from a disinterested witness).  Here, of course, if Jones can be described as an "interested" witness, it is only because he was called by Plaintiff himself!  Moreover, IBM notes that Plaintiff's demonstrative entitled "Critical Time Lapses," P. Ex. 121 is plainly inaccurate and highly misleading insofar as it claims that Ms. Collins-Smee did not inform him of his replacement as VP-PSD or as DPE on WellPoint until months later, a topic discussed in subsequent text.

- That Plaintiff allegedly was asked to continue working as both VP-PSD and WellPoint DPE, Tr. 1/14/2014 at 313:8-13, even though Collins-Smee testified to the contrary Tr. 1/16/2014 at 891:12-21, and further testified that he never asked for help during this period and had he done so she would have found it for him;

- That Collins-Smee allegedly did not inform Plaintiff that she intended to replace him in the WellPoint role until November, allegedly a gap of several months, Tr. 1/14/2014 at 374:21-24; *and see* P. Ex. 121, even though Crawford did not even meet the client until the end of September, Tr. 1/22/2014 at 1409:1-20, and the client did not agree to take him on until mid to late November, Tr. 1/22/2014 at 1412:3-18; *and see* D. Ex. 80, shortly before Collins-Smee told Plaintiff the news[9].

The list of "wrongs" that IBM supposedly committed from which the jury was urged to "infer" discrimination continued and was lengthy, but in each and every instance the list was devoid of any evidence linking Plaintiff's treatment to his age. Plaintiff simply urged the jury to "infer" that every form of allegedly adverse treatment he received was the product of age discrimination.

This reverses the burden of proof entirely, and allowed Plaintiff to avoid proving discrimination. At the start of trial, Plaintiff's counsel suggested that Ms. Collins-Smee was engaged in a 17 month long campaign to rid IBM of Plaintiff because of his age, Tr. 1/13/2014 at 94:13. Plaintiff ultimately supplied no evidence to support this allegation. Inferences unsupported by evidence linking the adverse conduct to age are not proof of employment

---

[9] Once again, Plaintiff's demonstrative entitled "Critical Time Lapses," P. Ex. 121 was placed before the jury and was plainly wrong and highly misleading. These and other misleading exhibits – *see, e.g.,* P. Ex. 118 (again claiming significant time lapses in informing Plaintiff of events that were contrary to undisputed testimony at trial) themselves warrant a new trial.

16

discrimination.  Plaintiff improperly urged the jury to speculate that his supervisor was motivated by his age, without any proof thereof, and without showing that younger employees were treated more favorably.  By urging the jury to substitute inference and speculation for proof, Plaintiff failed to meet his but-for burden under *Gross* and a judgment for IBM must be entered.

### 2.   Plaintiff's "Failure to Assist" Claim Has No Legal Foundation.

Plaintiff argued that Ms. Collins-Smee was obligated to find him (a high level executive with more than 40 years of experience at IBM) another position after she removed him from his VP-PSD and WellPoint roles and that, because she did not go to the lengths that Plaintiff expected, she was guilty of age discrimination.  There is no logical or legal reason to so conclude, absent proof that she did more for comparably situated individuals.  Courts in this Circuit do not require that an employer find an employee another job as an alternative to termination, and this Court was very clear in instructing the jury to that effect.

> The ADEA does not require an employer to give special, favorable treatment to employees who are forty or older….[T]he mere fact that the plaintiff is over the age of forty and worked for the defendant for many years does not mean that the defendant had to retain him as an employee or offer him any position within its organization.

Charge to the Jury at 8; *and see Alam v. HSBC Bank USA, N.A.*, No. 07 Civ. 3540 (LTS) (JCF), 2009 WL 3096293, at *11 (S.D.N.Y. Sept. 28, 2009) (upholding the recommendation of the dismissal of the plaintiff's ADEA claim because "[o]nce again, the company was not obligated to find [plaintiff] a replacement job as long as its refusal to relocate or rehire him was based on non-discriminatory reasons").[10]

---

[10] *See also Faldetta v. Lockheed Martin Corp.*, No. 98 Civ. 2614 (RCC), 2000 WL 1682759, at *10 (S.D.N.Y. Nov. 9, 2000) (under the ADEA, employer "is not obligated to find another position for an employee who is about to be terminated, even if he is qualified for that position"); *Kalra v. HSBC Bank U.S., N.A.*, 567 F. Supp. 2d 385, 400

The same legal flaws hold true of Plaintiff's claim that he was not placed on enough of the 5 minute drills. As the Court will recall, Plaintiff was placed on the Zapfel 5 minute drill in June, 2007, and on other drills at various points along the way. While Plaintiff claims he was not considered for various jobs in this process, this complaint has nothing to do with his age absent proof that similarly situated employees were treated differently. It is only by indulging Plaintiff's *a priori* reasoning – that he was the victim of age discrimination and this is one manifestation of Ms. Collins-Smee's bias – that one can conclude that this is proof of discrimination. But this is not the law. Plaintiff's complaint that Ms. Collins-Smee did not do enough to find him a new position within IBM is insufficient as a matter of law to prove that she was motivated by discriminatory animus, absent proof that similarly situated younger employees were treated more favorably. Indeed, the alleged failure to find Plaintiff a position is neutral in terms of employment discrimination, and no evidence has been introduced to show otherwise.

### 3. Plaintiff's Claim That There Were Numerous Positions Available Does Not Create an Inference of Age Discrimination.

Plaintiff's improper attempts to claim that there were multiple jobs which he could have filled cannot be accepted without proof that he was not considered for specific positions because of his age. IBM is a large organization; at any given time, it has hundreds of job openings. If proving discrimination merely required proof of open positions, the burden of proving but-for causation would be eliminated. Plaintiff's generic claim that "there were a lot of jobs I could have filled" does not satisfy his burden of proof under *Gross*.

This is most clearly established by considering the 106 or more jobs that Plaintiff claims were filled while he was on the bench. These positions were filled by managers other than Ms.

---

(E.D.N.Y. 2008) (employer was under no obligation to provide employee with another position after terminating him for performance and behavioral issues), *aff'd*, 360 F. App'x 214 (2d Cir. 2010).

Collins-Smee, and thus are entirely irrelevant to Ms. Collins-Smee's motivation for Castelluccio's termination. Evidence of actions taken by managers other than the person responsible for a plaintiff's allegedly discriminatory treatment is irrelevant. *See Harris v. Chand*, 506 F.3d 1135, 1440 (8th Cir. 2007) (noting the district court did not err in concluding that "[w]hat some other unit manager did to another employee in a different situation at a different time" is irrelevant); *Naval v. Herbert H. Lehman Coll.*, No. 97 CV 6800 (RJD), 2004 WL 3090578, at *8 n.7 (E.D.N.Y. Sept. 15, 2004) (same).

Indeed, Plaintiff himself conceded as much and made clear that he offered evidence of these positions for a different and entirely irrelevant purpose:

> Mr. Castelluccio offers this evidence to show the number of positions that were open during the period from January 1, 2008 through June 30, 2008….Mr. Castelluccio does not claim that he should have been hired for these positions and you should not treat IBM's selection of someone other than Mr. Castelluccio for any of these open positions as evidence of age discrimination.

Charge to the Jury at 11 (emphasis added). This evidence amounts to a naked claim that there were a lot of jobs filled at IBM and Plaintiff must have been able to handle one of them. But in the absence of proof that Plaintiff was the best qualified person and should have been considered or selected for a particular job, a claim that Plaintiff deliberately did not make, evidence that lots of jobs were filled within the organization simply does not prove age discrimination.

For much the same reason, Plaintiff's claim that Ms. Collins-Smee "should have disclosed these positions to him, given him an opportunity to apply for them, and in some cases, recommended him for these positions", Charge to the Jury at 11, proves nothing. This is nothing

more than a "she should have done more for me" argument, a meaningless claim absent proof that she did more for comparably situated younger employees.[11]

As to the several positions filled in Ms. Collins-Smee's own organization, Ms. Collins-Smee testified that she wanted to hire the best possible candidate, Tr. 1/17/2014 at 954:23-24, and that the individuals hired were recent subject matter experts in the various fields.   Tr. 1/17/2014 at 953:25-962:2.  Plaintiff has not shown he was more qualified than those chosen—neither has he made a serious attempt to show that someone with his serious recent performance difficulties would have been considered for any of those positions.  Plaintiff made no attempt to show that any proffered comparators were "similarly situated in all material respects," *Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997).  IBM was not required to ignore that Plaintiff had to be removed from two jobs in 2007 for poor performance.

Moreover, Plaintiff testified not that he was better qualified than the individuals chosen, but equally qualified.  Tr. 1/15/2014 at 650:12-24.  This is not sufficient as a matter of law to prove age discrimination.  In order to demonstrate that his failure to secure those jobs is evidence of discrimination, Plaintiff would have to prove that his qualifications were so superior to those who ended up filling those positions that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie*, 243 F.3d at 103 (citation omitted); *accord Farrar v. Town of Stratford*, 537 F. Supp. 2d 332, 348 (D. Conn. 2008) ("no evidence that [plaintiff's] credentials were 'so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

---

[11] Plaintiff admitted on cross examination that there was no rule at IBM by which a supervisor was required to disclose open positions to executives on the bench. Tr. 1/15/2014 at 636:10-21.

question'") (citation omitted).   Plaintiff pointed to the seven individuals who filled those

positions and, in a conclusory fashion, testified that he was as qualified as they were.  This does

not begin to rise to the level of direct evidence of discrimination; indeed, it is not even

"background evidence" of discrimination.  *See Bringley v. Donahoe*, 499 F. App'x 116, 118 (2d

Cir. 2012) (plaintiff's "conclusory contentions that [the other candidate] was 'less senior' and

'less qualified' than she was at the time of that decision . . . do not raise a triable issue" of

pretext).  It goes without saying, as the Court instructed the jury, that "a plaintiff's subjective

belief alone is not enough to prove age discrimination."  Charge to the Jury at 9; *Weichman v.

Chubb & Son*, 552 F. Supp. 2d 271, 289-90 (D. Conn. 2008) (evidence of plaintiff's beliefs is not

evidence of employer's intent); *Butchko v. Textron Lycoming*, 796 F. Supp. 63, 67 (D. Conn.

1992) (claimant's subjective belief is insufficient to show pretext).

### 4.     IBM's Supposed Multiple Reasons for Terminating Plaintiff Are Not "Shifting Explanations" and Do Not Prove Age Discrimination.

Plaintiff's argument that the jury was entitled to infer discrimination because IBM

offered so-called "shifting reasons" for his treatment is erroneous.   Courts in this Circuit

consistently refuse to find pretext when the multiple reasons given by employers for terminating

employees are true and related — as they are here.  *See Timothy v. Our Lady of Mercy Med. Ctr.*,

233 F. App'x 17, 20 (2d Cir. 2007) (no pretext for discrimination when the multiple explanations

given by the employer were "facially plausible and adequately supported by admissible evidence

in the record"); *Singh v. Air-India Ltd.*, 108 F. App'x 9, 10 (2d Cir. 2004) (finding that the

company's multiple reasons for terminating the plaintiff was not evidence of pretext because the multiple reasons were non-discriminatory and were related). [12]

The facts offered by IBM have not changed so as to permit an inference that IBM had a discriminatory motive.  Plaintiff was placed on the bench because performance issues led to him being removed from his two prior positions.  He was then terminated because he could not secure another position for himself within IBM for half a year.  These reasons are obviously related and the evidence has borne them both out.  This argument is and was a red herring and should have been disregarded by the jury.

## II.   JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, A NEW TRIAL OR REMITTITUR, SHOULD BE GRANTED WITH REGARD TO THE JURY'S AWARD OF DAMAGES.

While IBM strongly urges Your Honor to enter judgment for it as a matter of law under Rule 50, in the alternative specific aspects of the jury's verdict should be vacated or modified, or a new trial should be ordered.  The jury's verdict is plainly in error in multiple respects.

### A.   The Jury's Finding of a Willful Violation is Completely Without Foundation.

#### 1.   IBM's Investigation of Plaintiff's Complaint Negated Any Basis for a Willfulness Finding.

There is absolutely no proof in the record that IBM acted willfully when it terminated the Plaintiff.  Courts have long considered an employer's actions under the ADEA 'willful' only if

---

[12] *See also Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 170 (2d Cir. 2001) (no inconsistency suggesting pretext because the multiple reasons given by the employer were "variations . . . on the same theme rather than separate inconsistent justifications"); *and see Lomotey v. Conn. D.O.T.*, 355 F. App'x 478, 481 (2d Cir. 2009) (rejecting argument that employer's non-discriminatory reason for its decision was pretextual because the reason offered during litigation was a further explication of the original reason).

"the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985) (citation omitted); *and see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135 (1988) ("The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent....If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful...."); *and see Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 65 (D. Conn. 1997) ("It is now well-settled that to prove a willful violation . . . it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. Thus, if an employer acts unreasonably, but not recklessly, in determining its legal obligation, its actions will not be considered willful") (internal citations omitted).[13]

Not only did Plaintiff offer no proof that IBM acted without regard to whether its conduct violated the ADEA; the record establishes that IBM did just the opposite. IBM carefully investigated Plaintiff's internal complaint of age discrimination to ensure that it was not violating the law. An employer's response to an internal complaint of age discrimination is central to deciding whether it acted reasonably or, to the contrary, with reckless disregard for whether its conduct violated the ADEA. In *Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 736 (8th Cir. 1996), the court, in determining that the defendant had willfully violated the ADEA, took into

---

[13] Interpretations of the Fair Labor Standards Act routinely apply to the ADEA, including the definition of willfulness under the statutes. *See Manning v. N.Y. Univ.*, No. 98 CIV. 3300(NRB) 2001 WL 963982, at *11 (S.D.N.Y. Aug. 22, 2001) ("[E]xcept as otherwise provided, the ADEA is to be enforced in the same manner as the FLSA. [The] selectivity that Congress exhibited in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully [into the ADEA] the remedies and procedures of the FLSA") (quoting *Lorillard v. Pons*, 434 U.S. 575, 582 (1978)), *aff'd*, 299 F. 3d 156 (2d Cir. 2002). *And see* EEOC Notice, N-915.042 Guidance on Cases Involving the Definition of Willful Violation—Age Discrimination in Employment Act (ADEA), *available* at 2009 WL 3608225, (May 1, 1989) ("The Supreme Court decisions in Thurston (liquidated damages) and Richland Shoe (statute of limitations) have now clearly established the same standard or test as to what constitutes a willful violation of the ADEA").

account the failure of the defendant's human resources department to investigate the circumstances regarding the mandatory retirement and transfer of the oldest employee in the affected department even after the employee brought the circumstances to the human resources director's attention.[14]  *See* also 29 C.F.R. §578.3(c).[15]

Here, the record is clear that IBM acted carefully and properly when confronted with Plaintiff's internal complaint of age discrimination.  Even within the boundaries of the Court's in limine ruling, discussed below, IBM was able to establish that Russell Mandel, head of Internal Appeals, investigated Plaintiff's complaint.  Tr. 1/22/2014 at 1449:11-13.  Mr. Mandel interviewed the plaintiff and **20** other witnesses.  Tr. 1/22/2014 at 1452:20-24.  And the Court underscored that the reason for the investigation was to ensure that IBM complied with the law:

> THE COURT: It's your job at IBM to investigate allegations of this nature, correct?
>
> THE WITNESS:  Yes.
>
> THE COURT:  And you did that, you conducted an investigation?
>
> THE WITNESS:  Yes.
>
> THE COURT:  And you and IBM conduct investigations like that, like this one, because you know and believe that the law with respect to discrimination is important, serious, and it should be obeyed.
>
> THE WITNESS:  Yes.

---

[14] *See also DiFilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 425 (S.D.N.Y. 2008) (employers may be found to have acted in reckless disregard of their statutory requirements if they made neither a diligent review nor consulted with counsel regarding their employment practices); *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (defendant's conduct was willful because, after being informed that its employment practices were unlawful, it continued "the payment practices without further investigation into the alleged violation"); *Brown v. L & P Indus., LLC*, No. 5:04CV0379 (JLH), 2005 WL 3503637, at *11 (E.D. Ark. Dec. 21, 2005) (employer had committed a willful violation of the FLSA because it failed to investigate for years complaints by an employee that the company's pay practices were not lawful).

[15] The Department of Labor's regulations specify that the standard for willfulness under the FLSA includes the following, 29 C.F.R. §578.3 (c)(3):

> (3)       For purposes of this section, an employer's conduct shall be deemed to be in reckless disregard of the requirements of the Act, among other situations, if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make further inquiry.

24

Tr. 1/22/2014 at 1468:6-7 (emphasis added).  These facts alone are enough to establish that IBM did not act with reckless disregard for whether its conduct violated the law.  The jury's award of liquidated damages cannot stand.

### 2. The Court Improperly Precluded IBM From Presenting Evidence of Its Investigation

With all due respect, IBM continues to submit that the Court erred by preventing it from making a complete record with regard to its investigation.  Your Honor's effort to avoid prejudice to the Plaintiff unfairly tipped the balance against IBM, resulting in an unwarranted liquidated damages finding which cannot stand.  More critically, Your Honor's refusal to allow introduction of plainly relevant evidence of the investigation denied IBM not only its defense against a charge of willfulness, but also a vital defense in the action as a whole.  The jury was entitled to hear and understand the facts as IBM understood them at the time it terminated the Plaintiff, and those facts were clearly revealed by the investigation that Mr. Mandel conducted.

This is critically important because Plaintiff's termination was not final until Mr. Mandel concluded his investigation.  Plaintiff's entire claim was based upon the actions of Ms. Collins-Smee; he identified no other IBM managers who were motivated by age discrimination.  But Mr. Mandel, and not Joanne Collins-Smee, was the ultimate decision-maker for IBM, as he had the power to reinstate Plaintiff if he found in his favor.  Numerous cases confirm that an investigation conducted by a neutral decision-maker can serve as a powerful defense to a claim of employment discrimination.  This Court and others have held that "if [an] employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action then the employer will not be liable [for discrimination]."  *Hasemann v. United Parcel Service of Am., Inc.,* No. 3:11-cv-554 (VLB), 2013 WL 696424, at *11 (D. Conn. Feb. 26, 2013)

25

A-1308

Case 14-2854, Document 67, 03/13/2015, 1460801, Page49 of 216
Case 3:09-cv-01145-TPS   Document 202-1   Filed 02/25/14   Page 35 of 50

(quoting *Staub v. Proctor Hosp.,* 131 S. Ct. 1186, 1193 (2011); *see also Hunt v. Klein*, 476 F. App'x 889, 892 (2d Cir. 2012) (same); *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 47 (2d Cir. 2012) (affirming dismissal of the plaintiff's discrimination and retaliation claims in part because he could not show that the board of trustees that ultimately approved his termination, after an investigation by an unbiased hearing officer, was influenced by a retaliatory animus), *cert. denied*, 133 S. Ct. 527 (2012).

While IBM submits that Ms. Collins-Smee's treatment of Plaintiff was entirely devoid of discriminatory animus, it is undeniable that Mandel's investigation was not motivated by any discrimination due to Plaintiff's age. That investigation, conducted promptly and thoroughly, would have provided invaluable evidence to defend IBM in this action, and would have allowed IBM to argue that Mr. Mandel, and not Ms. Collins-Smee, was the decision-maker. Yet IBM could not even refer to the results of the investigation and counsel was chastised for even implying that Mr. Mandel had the power to reinstate Plaintiff if he found in his favor. Your Honor cleared the courtroom after Mr. Mandel testified that he had the power to reinstate Plaintiff if he found in his favor, Tr. 1/22/2014 at 1457:23-1460:8. The point of this line of questioning was not to reveal the findings of the investigation, but to establish that Mr. Mandel had the final say on whether Plaintiff's termination would stand. This was vitally important because under IBM policy the ultimate termination decision was not Ms. Collins-Smee's at all. IBM's inability to prove this point prevented it from defending itself effectively against Plaintiff's claims.

The central issue in this case was IBM's motive when it terminated the Plaintiff. It is a bedrock principle "that in discrimination and retaliation cases, [the courts] are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the

employer . . . the factual validity of the underlying imputation against the employee is not at issue." *Gray v. City of New York*, No. 08-CV-2840 (NGG)(JMA), 2011 WL 6153635, at *14 (E.D.N.Y. Dec. 12, 2011) (internal quotations omitted) (citing *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)).[16] Because IBM's internal investigation occurred at the time of the questioned action itself, the investigative report recites the facts as IBM and Mr. Mandel knew them at the relevant time, and thus directly reveals IBM's state of mind. Numerous courts have found that reliance on internal investigations is particularly helpful in determining whether an employer has acted lawfully or willfully in an employment discrimination case, because the internal investigation report sets forth the facts as they appeared at the time to the employer. *See, e.g., Vahos v. Gen. Motors Corp.*, No. 06-CV-6783 (NGG)(SMG), 2008 WL 2439643, at *4 (E.D.N.Y. June 16, 2008) ("GM argues that it is seeking to admit the investigatory report not to prove that [plaintiff] actually acted improperly, but to prove that the GM decision-makers who were involved in discharging [plaintiff] legitimately believed that he had so acted.  This is a legitimate non-hearsay purpose").  In other words, "[i]n employment discrimination cases, internal documents relied upon by the employer in making an employment decision are not hearsay as that term is defined in <u>Fed. R. Evid. 801(c)</u>—statements offered to prove the truth of the matters asserted.  Rather, such documents are relevant and

---

[16] *See also Donahue v. Norwich Roman Catholic Diocesan Corp.*, No. 3:05 CV 413 (CFD), 2008 WL 821890, at *3 (D. Conn. Mar. 26, 2008) ("In a discrimination case . . . [w]e are interested in what motivated the employer") (citation omitted).  Put another way, "the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*, for firing people on account of their age." *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998)(emphasis in original); *see also Rubinow v. Boehringer Ingelheim Pharms., Inc.*, 496 F. App'x 117, 119 (2d Cir. 2012) ("Although [the plaintiff] disagrees with the circumstances surrounding her termination", the question is whether the court found that the reasons given were animated by a discriminatory motive); *Hasemann*, 2013 WL 696424, at *10 (the "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision does not stem from the person's age") (citation omitted); *Nieves v. Avalonbay Cmtys., Inc.*, No. 3:06CV00198 (DJS), 2007 WL 2422281, at *9 (D. Conn. Aug. 23, 2007) ("[E]ven assuming defendants were wrong in their belief that plaintiff had engaged in . . . misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status") (cittation omitted).

admissible because they help explain (or may help explain) the employer's conduct."  *Wolff v. Brown*, 128 F.3d 682, 685 (8th Cir. 1997).

Mr. Mandel's report was nothing less than a detailed contemporaneous record of what he and IBM believed at the time of the termination, which is <u>the</u> central issue in determining whether IBM terminated Plaintiff because of his age.  The Open Door investigation report was the best evidence of IBM's understanding at the time of the termination, and it should have been admitted into evidence.  IBM should not only have been allowed to introduce its Open Door report in full, but also to argue that because Mr. Mandel had the power to reinstate Plaintiff if he found in his favor, he was IBM's ultimate decision-maker in this case and that he had absolutely no age bias.  The Court's preclusion order worked a serious injustice, denied IBM the opportunity to present a powerful substantive defense, and requires at a minimum a new trial.

   **B.**    **The Jury's Award of $500,000 For Garden Variety Emotional Distress Cannot Stand.**

Plaintiff admitted that he did not seek or obtain any treatment for the emotional distress he allegedly suffered as a result of his termination.  Tr. 1/16/2014 at 678:10-15.  He further testified that the only medication he took for this distress was extra-strength Tylenol.  *Id.* His claim of emotional distress is at best a pure "garden variety" claim for which the courts allow only minimal if any damages, certainly nothing of the order of magnitude of the jury's award of $500,000.

Courts in the Second Circuit typically award between $30,000 and $125,000 for a genuine "garden variety" emotional distress claim, *i.e.*, a claim for which no medical treatment or testimony is sought or offered but which is based upon serious testimonial corroboration, and routinely cut excessive awards back to this level. *See Do Yea Kim v. 167 Nail Plaza*, No. 05 CV

8560 (GBD), 2008 WL 2676598, at *6 (S.D.N.Y. July 7, 2008) ("Federal courts in this Circuit have approved the range of compensatory damages, awarded over the past decade, between $30,000 and $125,000") (citing *Patterson v. Balsamico*, 440 F.3d 104, 120 (2d Cir. 2006)); *but see Moore v. Houlihan's Rest., Inc.*, No. 07-CV-3129, 2011 WL 2470023, at *6 (E.D.N.Y. May 10, 2011) ("Plaintiffs with garden variety claims generally receive $5,000 and $35,000") (citation omitted). Only when a plaintiff's subjective testimony is especially extreme can the award can be on the high end of this spectrum. *See Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 78 (2d Cir. 2005), *vacated on other grounds*, 544 U.S. 957 (2005) (upholding an award of $125,000 where plaintiff testified to experiencing shock, nightmares, and humiliation, but offered no medical proof). If the subjective testimony is less extreme, the award must be on the low end of this spectrum. *See, e.g., Cross v. N.Y. Transit Auth.,* 417 F.3d 241, 258 (2d Cir. 2005) (upholding a $50,000 award where plaintiff did not seek medical treatment but did testify to being humiliated, frustrated, and angry).

IBM has done a complete search of recent case law, and found no case in which any garden variety emotional distress claim received even close to the $500,000 which the jury here awarded. Indeed, in this case, Plaintiff's entire claim for compensatory damages was based solely upon his own testimony, and Plaintiff's deposition testimony about his alleged distress (showed to the jury in a video clip) was almost dismissive:

Q    I'm asking you because it's your claim, severe emotional distress, I'm trying to [understand] what that is?

A.    Weight loss I probably lost hair, I didn't have a lot to begin with, I'm sure I lost more, you know, I don't know.

Q   Okay, and

29

A   I didn't have a dog, couldn't take it out on the dog, no dog to kick.  I was dealing with

it internally.  I'm kind of a, you know, I don't, I  didn't want to burden my family with a

lot of this, right?  So I'm not, I probably should have been talking to my wife more about

this, but I wasn't, because I just, you know, it was what it was, so it's like trying to work

my way through it.

Q   Now, Mr. Castelluccio, did you see any medical provider for care for this?

A   No.

Q   You saw no therapist, correct?

A   Correct.

Q   No psychiatrist?

A   Correct.

Q   No psychologist?

A   Correct.

 Q   No counselor?

A   Correct, other than my wife, correct.

Q   Right?  Now, you didn't take any medication at all for this?

A Well, not for depression or something like that, but -- no.  I mean Tylenol, extra

strength  Tylenol.

Tr. 1/16/2014, at 678:10-679-17.[17]

This testimony cannot sustain an award of emotional distress damages of any sort. As the

Southern District stated in *Macmillan v. Millenium Broadway Hotel*, 873 F. Supp. 2d 546

---

[17]  Even at trial, in response to questions from his own counsel, Plaintiff testified only to generalized complaints, and not to any specific symptoms of emotional distress upon which a jury could base an award of damages  *See* Tr. 1/16/2014 at 709:19-710:23 (reciting no specific complaints but complaining about generalized upset).

30

(S.D.N.Y. 2012) "[a] jury has broad discretion in measuring damages, but it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as thought [sic] it were a winning lottery ticket." *Id.* at 559 (citation omitted). Moreover, "while compensatory damages may be based on 'the objective circumstances of the violation,' there must be sufficient proof of the claimed emotional harm or suffering to justify the damage award sought [and] . . . as a general rule, while medical evidence is not required to prove emotional damages, '[a] plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages." *Charvenko v. Barbera*, No. 09-CV-6383T, 2011 WL 1672471, at *5 (W.D.N.Y. Mar. 30, 2011) (citing *Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002)). Plaintiff's testimony here, completely uncorroborated by the testimony of any other witness, pales in comparison with anything resembling the kind of testimony accompanying even a passable "garden variety" emotional distress claim.

IBM would underscore that the size of this award is not a matter of fact committed to the jury's discretion, but a matter of law for this Court to decide. As courts in this circuit have stated, "[w]hile it is properly within the province of the jury to calculate damages, there is an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable [persons] may differ, but a question of law." *Macmillan*, 873 F. Supp. 2d at 559. This verdict well exceeds any range of damages allowable in the courts of this Circuit. The verdict in this case, based entirely on sympathy for the Plaintiff, has led to a compensatory damages award that is well beyond inappropriate, but which is certainly revealing when it comes to the unsoundness of the verdict as a whole. IBM suggests that a $500,000 emotional distress damage award without any medical treatment, supported only by Plaintiff's own testimony that

31

he was upset and took extra-strength Tylenol, is improper as a matter of law. The Court should vacate that award.

**C.**     **The Jury's Back Pay Award Is Inconsistent with Plaintiff's Sworn Testimony.**

Plaintiff testified twice on the witness stand that he intended to retire at age 65. Tr. 1/15/2014 at 532:4-18; 1/13/2014, at 108:22-25. Indeed, in a half-hearted attempt to "cure" this apparently inconvenient testimony, Plaintiff's counsel attempted to ask Plaintiff on redirect how long he would have worked if he had not been terminated, which Your Honor did not allow in the following colloquy that occurred in the presence of the jury:

> Q     If you had not been fired by IBM, how long would you have stayed working for them?
>
> MR. FASMAN:  Beyond the scope, Your Honor.
>
> THE COURT:  I'm sorry, Mr. Carta, what was the question again?
>
> MR. CARTA:  If you had not been fired by IBM, how long would you have stayed there.
>
> MR. FASMAN:  I didn't touch that.
>
> THE COURT:  Overruled. I think you're right, it was outside the scope.
>
> MR. FASMAN:  And he asked that. was asked and answered yesterday, . The witness was asked how long he would have stayed when he stopped his job search, and the jury heard it.
>
> THE COURT:  My recollection is he said he wanted to stay until 65.
>
> MR. FASMAN:  Correct.
>
> THE COURT:  Okay, we all got that, you still want to ask.
>
> MR. CARTA:  That's fine. No further questions.

Tr. 1/16/2014 at 710:24-711:20 (emphasis added).

32

Despite this very clear testimony and the Court's explicit confirmation of age 65, the jury awarded damages to the specific dollar proffered Dr. Crakes calculations, which were based upon an age 66 retirement age. Plaintiff's damages demonstrative exhibit, Pl. Ex. 201, calculates Plaintiff's economic loss at $1,345,042, exactly the jury's award. Yet this figure is based upon the assumption that Plaintiff would have worked until age 66, as Dr. Crakes testified. Tr. 1/21/2014 at 1136:2-8; *see also* 1138:11-13. Significantly, even Dr. Crakes admitted that if Plaintiff had intended to retire at age 65, his economic calculations would have been inaccurate:

> Q   So if he intended to retire at age 65, not 66, your calculation wouldn't be, correct?
>
> A   Again, if there was an alternative assumption there would be an alternative results, that's correct.

Tr. 1/21/2014 at 1136-1138. Yet despite this admission, and despite Plaintiff's very clear testimony of an age 65 retirement date – as confirmed by Your Honor's own statement confirming this in the presence of the jury that "we all got that" – the jury simply awarded damages based upon Dr. Crakes age 66 assumption. That is flatly wrong and cannot stand.[18]

Moreover, the jury erred in its calculation of the pension benefits Plaintiff received, which had to be deducted from the $1,345,042 figure. Plaintiff testified that he was receiving $78,000 in pension benefits each year. Tr. 1/16/2014 at 676:14-18. Assuming an age 66 retirement age, the proper calculated figure would have been $364,260 ($78,000 X 4.67), and at age 65 the proper calculated figure would have been $286,260. Yet the jury came up with an entirely different figure, $345,150.36, which is simply inexplicable based on the evidence in the record.

---

[18] The correct figure for an age 65 retirement would be $1,057,014, prior to deduction of pension benefits. Deducting pension benefits from this figure yields a net of $770,754. IBM does not suggest that Your Honor enter any such award because this error is not mathematical but shows that the jury's award is flawed, based entirely upon sympathy, and must be vacated.

These markedly improper awards, based upon an expert's study that was at odds with the Plaintiff's sworn testimony, proves that the jury's award of damages was fatally flawed. That award must be vacated and a new trial granted.

> **D.**   **The Jury Found That Suitable Work Existed for Plaintiff After His Termination, Yet Refused to Deduct Anything for Plaintiff's Failure to Mitigate Damages.**

The jury's findings on mitigation are not supported by the record and cannot stand; at the very least, the jury's treatment of this issue warrants a new trial. The jury, in answer to Question No. 3, found that Plaintiff had made some efforts to find a position after his termination.[19] But the jury found, in answer to Question No. 4, that IBM had proven by a preponderance of the evidence that suitable work existed for Plaintiff after the termination.[20] Yet even after finding that suitable work existed after termination, the jury refused to deduct any amounts for Plaintiff's failure to find such suitable work, which was available.

The jury's failure to deduct any amounts from the back pay award for failure to mitigate damages is completely contrary to the evidence in the record and cannot stand. IBM established that Plaintiff's job search was severely lacking in fundamental respects. Plaintiff admitted that he relied principally if not exclusively on two internet search engines – Netshare and Execunet – for his job search. Tr. 1/15/2014 at 496:23-498:13. According to Plaintiff's own testimony, this search was almost entirely passive and conducted from the comfort of his own home; he did not make any efforts whatsoever to contact individuals with whom he had worked while at IBM

---

[19] Question 3: Has IBM proven by a preponderance of the evidence that, after Mr. Castelluccio was terminated by IBM, he made no reasonable efforts to seek employment? Answer: No.
The purpose of this inquiry was to determine whether IBM had the burden of proving that suitable work existed after the termination, pursuant to the two-step mitigation inquiry authorized by the Second Circuit in *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998).
[20] Question 4: Has IBM proven by a preponderance of the evidence that after Mr. Castelluccio was terminated by IBM, suitable work existed for Mr. Castelluccio? Answer: Yes.

(falsely claiming he believed he had a covenant not to compete with IBM, Tr. 1/16/2014 at 695:13-696:25) and merely had one of his internet providers pass his resume on to an entity listing a position on the provider's website.  Tr. 1/16/2014 at 699:6-16. Not surprisingly, this strategy proved completely unsuccessful:

> Q.     Let me ask you one final question.  How many face-to-face interviews did you procure using NetShare and ExecuNet?
>
> A   I was hoping for at least one, and unfortunately I did not get one.  And a lot of things are I had phone calls.
>
> Q   No face-to-face?
>
> A   No face-to-face.

Tr. 1/16/2014 at 698:1-8.

The courts have been clear that a passive search such as this – the modern equivalent of looking through want ads – is not sufficient to satisfy the duty to use reasonable efforts to seek alternative employment.  *See Booker v. Taylor Milk Co.*, 64 F.3d 860, 865-66 (3rd Cir. 1995) (looking through want-ads insufficient to satisfy the duty to mitigate); *EEOC v. Service News Co.*, 898 F. 2d 958 (4th Cir. 1990) (same).  It is true that in this case, Plaintiff used a computer to conduct the search, but the proposition that one can satisfy the duty to mitigate by responding to listings provided by internet search providers alone, over a period of years where that strategy did not net <u>one single face to face interview</u>, makes a mockery of the duty to mitigate.  It would be highly inappropriate to force IBM to pay Plaintiff millions of dollars where he did not go to the trouble of calling one prior client, or taking one prior client to lunch, to search for employment.

IBM's expert witness, Dr. Charles Sodikoff, explained in detail that Plaintiff, in relying upon his internet providers exclusively instead of actually searching for jobs by using his own contacts developed during 40 years at IBM, did not engage in a reasonably diligent job search:

Q   Did Mr. Castelluccio use all potential sources of job leads?

A   In terms of all potential sources of job leads, he basically looked, as I said, his, it was very clear that his primary source of job leads was ExecuSearch, which is, I mean it was a good source, there was nothing wrong with doing that, but he wasn't out networking. He wasn't out there, he didn't contact directly executive recruiters. He spoke to some executive recruiters who contacted him, but he didn't reach out to other executive recruiters.  It was very little activity as far as uncovering sources of jobs.

        ********

Q   Could you tell whether Mr. Castelluccio effectively used his network?

A   Well, I saw no evidence that he really was networking.

Q    What kind of network would you expect a 40 year IT executive from IBM to have?

A    I would expect that person to have quite a wide network of people that they had met during their career.  I say to every candidate, networking are people who know you and like you, network are people who know you and don't hate you, anybody that's willing to [talk] to you so it's a very wide network of people that you could start with, and that's just starting, because then what you're doing is generating names from your network to speak to other people in the process, and so I would have to assume he had an excellent network.

36

Tr. 1/23/2014 at 1528:20-1529:7; 1529:23-1530:14.

The jury's refusal to deduct one single dollar from Plaintiff's back pay award, where he did not make one single telephone call to one single person with whom he had worked while at IBM, rewards him for a transparently inappropriate job search. This cannot be the law and of course has never been. *See, e.g., Raymond v. Boehringer Ingelheim Pharms., Inc.*, 653 F. Supp. 2d 151, 156-158 (D. Conn. 2009) (refusing to award the plaintiff damages in an ADEA case because he did not conduct a diligent job search); *see also Carter v. Rosenberg & Estis, P.C.*, No. 95 CIV. 10439 (DLC), 1998 WL 150491, at *15 (S.D.N.Y. Mar. 31, 1998) (reducing the plaintiff's back pay award because her job search essentially amounted to posting her resume online, visiting three agencies that failed to send her to any actual job interviews, and conspicuously did not include reaching out to former work colleagues for any positions).

Moreover, and perhaps more important, IBM established that Plaintiff completely failed to make use of perhaps the most effective device available to him for finding alternative employment while on the bench at IBM; bidding on a numerically banded position within IBM. As Keith Holmes explained, numerically banded positions at IBM (as opposed to executive positions) are posted on IBM's internal website and anyone with access to that website can bid on them. Tr. 1/22/2014 at 1321:3-1322:1. Plaintiff himself admitted that he knew this was an option, and that he could have pursued this had he wished to. Tr. 1/15/2014 at 642:23-643:9. Mr. Holmes further testified that he himself did exactly this when he lost his executive position in 2009, choosing to bid on a Band 10 position which he continues to hold today. Tr. 1/22/2014 at 1325:10-1326:9. He also testified that he suffered no salary loss as a result of this change of

37

positions, Tr. 1/22/2014 at 1326:10-14, and that under IBM policy an executive choosing to bid on a Band 10 position would at most lose 10% of his or her salary:

Q    And does IBM have a policy that governs compensation when a executive, in A, B, C, or D executive moves into a numerically banded job?  Is there a policy on that?

A    IBM has a policy that applies to any movement from a higher to a lower band, including executives moving into non-executive roles.

Q    Tell the jury what that policy is, please.

A    Well, that policy is that the adjustment, the reduction in their salary, can be no more than 10 percent of the salary.  But what we try to do generally is keep someone's salary within the range for that job, but sometimes someone in a higher band will have a higher salary.  So just a simple example, if someone was in a job that paid 120,000,  they moved into a job where the maximum was 100,000, the biggest reduction to their salary would be 12,000, which is the 10 percent limit.   So someone could be in a job where a maximum is a hundred, but they would make 108 simply because of this policy of not reducing salary by more than 10 percent.

Tr. 1/22/2014 at 1323:20-1324:16.

In other words, the uncontradicted facts in the record established that had Plaintiff sought a Band 10 position[21], he would have suffered at most a 10% reduction in salary.  Plaintiff's failure even to consider such a strategy – a strategy that would have kept him in the IBM

---

[21] Mr. Holmes testified that Band 10 positions in 2009 paid up to $395,000, well in excess of Plaintiff's salary.  Tr. 1/22/2014 at 1395:3-1396:1.

38

workforce, with full benefits – is inexplicable, and in fact was never explained at all.  Plaintiff did not offer any rebuttal testimony, and thus provided <u>no explanation at all</u> for his failure to seek out a numerically banded position.  This failure to offer any testimony on a critically important point apparently was simply ignored by the jury, illustrating a complete and total failure on their part to consider the evidence in the record.  Surely this failure in and of itself warrants a new trial, if not a remittitur based upon the maximum salary reduction that Plaintiff would have suffered had he bid on a numerically banded job.

### E.   Plaintiff's Counsel's Reference to IBM Counsel as a New York Trial Lawyer Was Improper and Warrants a New Trial.

It has long been established "[i]mproper or intemperate argument by counsel in summation may necessitate a new trial where it tends to arouse undue passion or prejudice on the part of the jury, thereby depriving the opposite party of a fair trial."  *Mileski v. Long Island R.R. Co.,* 499 F.2d 1169, 1171 (2d Cir. 1974).  Indeed, it has long been the law throughout the throughout the United States that no verdict <u>influenced to any degree</u> by regional prejudice may stand.  *See Minneapolis, St. Paul & Sault Ste, Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521 (no verdict can be permitted to stand which is found to be <u>in any degree</u> the result of appeals to passion and prejudice") (emphasis added); *and see Pappas v. Middle Earth Condo Ass'n*, 963 F.2d 534, 541 (2d Cir. 1992) ("No verdict may stand when it is found <u>in any degree</u> to have been reached as a result of appeals to regional bias or other prejudice").  This Circuit therefore has consistently ruled that "a party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party … thereby unfairly influencing [the jury's] verdict."  *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 51 (2d Cir. 1998); *Pappas*, 963 F.2d at 540 (when the conduct of

counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict a new trial should be granted").

In his final words to the jury, Plaintiff's counsel referred to IBM's counsel as a "New York trial lawyer" in an improper attempt to inject just such regional prejudice into this case as the jury retired:

> I just heard an awful lot from Mr. Fasman, who is an exceptionally able New York trial lawyer….

Tr. 1/23/2014 at 1707:16-18.

This improper and unprovoked appeal to regional prejudice was intended to and can only have poisoned the jury just as they were about to begin deliberations.  It is well-settled that such appeals to regional prejudice are wholly improper.  As the Second Circuit observed in *Pappas*, 963 F. 2d at 540-41 (emphasis added):

> There is no doubt whatever that <u>appeals to the regional bias of a jury are completely out of place in a federal courtroom.</u>  Appeals tending to create feelings of hostility against out-of-state parties are so plainly repugnant that the Supreme Court long ago stated their condemnation "require[d] no comment." *N.Y. Cent. R.R. Co. v. Johnson*, 279 U.S. 310, 319 (1929).  This sort of argument improperly distracts the jury from its sworn duty to hand down a just verdict based on the evidence presented to it.

There was and is no excuse for this conduct, which can only have been meant to prejudice the jury against IBM and its counsel.  Standing alone, and certainly standing in connection with the other issues referred to in this motion, a new trial must be granted.

40

Respectfully submitted,

Dated:  February 25,  2014
          New York, New York                PROSKAUER ROSE LLP


                                    By:         /s/ Zachary D. Fasman
                                            Zachary D. Fasman (phv0899)
                                            Eleven Times Square
                                            New York, NY  10036
                                            Telephone:  (212) 969-3440
                                            Facsimile:   (212) 969-2900

                                            Counsel for Defendant
                                            INTERNATIONAL BUSINESS MACHINES
                                            CORPORATION


OF COUNSEL

PAUL HASTINGS LLP
Alexander W. Wood (phv05686)
75 E. 55TH St.
New York, N.Y. 10022
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES CASTELLUCCIO, | : | CIVIL ACTION |
| Plaintiff | : | NO. 3:09 CV 1145 (TPS) |
| | : | |
| | : | |
| vs. | : | |
| | : | ORAL ARGUMENT REQUESTED |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | |
| Defendant. | : | February 25, 2014 |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 25, 2014, a copy of the foregoing Defendant IBM's Renewed Motions for Judgment as a Matter of Law Or, In The Alternative, For New Trial/Remittitur and Defendant's Memorandum of Law in Support of Its Renewed Motion for Judgment as a Matter of Law Or, In The Alternative, For New Trial/Remittitur were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: _____/s/ Zachary D. Fasman_____
Zachary D. Fasman (phv0899)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES CASTELLUCCIO,<br><br>                 Plaintiff,<br><br>    - against -<br><br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION,<br><br>                 Defendant. | Civil Action No. 3:09-cv-1145 (TPS)<br><br><br>April 3, 2014 |

## DECLARATION OF ZACHARY D. FASMAN

I, Zachary D. Fasman, hereby certify as follows:

1.    I am an Attorney-at-Law admitted *pro hac vice* to practice before the United States District Court for the District of Connecticut, a member of the New York and District of Columbia bars, and a Partner at the firm of Proskauer Rose LLP, attorneys for Defendant International Business Machines Corporation ("IBM" or "Defendant"). I make this declaration in support of Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees and Costs.

2.    This should have been a simple and straightforward single-plaintiff age discrimination case. Instead of treating this as a simple case, however, Plaintiff decided that he did not have to produce proof of employment discrimination and, instead, tried this case as a "fairness" referendum in which he claimed that every event of which he disapproved was the product of age discrimination. This was plainly contrary to law, as the jury was instructed. The result, as IBM has argued, was an improper sympathy verdict which must be overturned.

3.    In addition to being legally unsound, this strategy turned this case into one of the most time-consuming and overlitigated single-plaintiff cases the undersigned has ever seen.

4.      This is evident in Plaintiff's fee application, by which Plaintiff impermissibly seeks total reimbursement for items billed which were (1) unnecessary and excessive; (2) incurred in pursuit of unsuccessful or abandoned theories or claims; and (3) redundant and duplicative.  The following specific examples indicate that Plaintiff impermissibly seeks total reimbursement for items billed which were unnecessary and excessive:

5.      Plaintiff should not be permitted to recover **22.3 hours or $5,622.00** spent drafting the federal Complaint.  Not only are these hours excessive and unnecessary for what is a garden variety single-plaintiff age discrimination case, but these hours were incurred after Plaintiff's counsel already spent more than 17 hours litigating the same issues before the New York Division of Human Rights submitted to the EEOC.  Attached as **Exhibit 4** is a true and correct copy of an analysis of time spent by Plaintiff's counsel preparing the Complaint.

6.      Plaintiff should not be permitted to recover **25 hours** spent negotiating a rudimentary confidentiality agreement.  Mr. Carta and his office turned what should have been a straightforward document designed to protect the confidentiality of documents exchanged by the parties in discovery into a far more complicated and time-consuming process for no apparent reason or strategic gain.  In fact, Mr. Carta and his office never objected to any confidentiality designation by IBM concerning any document.

7.      Plaintiff should not be permitted to recover **17.2 hours or $5,042.50** spent drafting what should have been basic discovery requests to IBM.  Indeed, Plaintiff's initial document production request contained 67 multi-part requests and was clearly excessive for this single-plaintiff case.  Plaintiff's initial document production request forced IBM to locate and produce tens of thousands of mostly extraneous and irrelevant documents.  Attached as **Exhibit**

**1** is a true and correct copy of Plaintiff's original Request for Production of Documents Requests to Defendant.

8.      Plaintiff followed this with a second request for production, a set of interrogatories, and then additional document requests after the close of discovery, going so far as to file an unsuccessful Motion to Compel three weeks prior to trial.  Attached as **Exhibit 5** is a true and correct copy of an analysis of time spent by Plaintiff's counsel drafting discovery requests.

9.      Plaintiff should not be permitted to recover **272.30 hours or $71,040.00** spent opposing IBM's summary judgment motion.  This includes 19.9 hours spent on an unnecessary "sur-reply" by Plaintiff.  Mr. Carta's time records indicate that his office spent approximately three straight months working on nothing other than opposition to that straightforward motion.  For attorneys purportedly steeped in employment law, that again is clearly excessive for this single-plaintiff case. Attached as **Exhibit 6** is a true and correct copy of an analysis of time spent by Plaintiff's counsel opposing IBM's motion for summary judgment.

10.      Plaintiff should not be permitted to recover **4.4 hours or $1,585.00** spent presenting Plaintiff for the second day of his deposition, a proceeding only necessary because Plaintiff refused to produce documents in advance of his initial deposition.  Because Plaintiff initially produced no documents showing his efforts to mitigate damages by seeking alternative employment, Plaintiff had to be deposed on a second day on this subject.  During Plaintiff's third deposition on this subject, because the Court's consideration of the summary judgment motion extended for 19 months, Plaintiff inexplicably produced a chart admittedly created after discovery had closed and which contained numerous entries directly at odds with his prior deposition and trial testimony.  Plaintiff's counsel should not be permitted to recover fees and

costs associated with his return to continue the Plaintiff's deposition on that second day. Attached as **Exhibit 7** is a true and correct copy of an analysis of time spent by Plaintiff's counsel concerning Plaintiff's second day of his deposition.

11.     Plaintiff should not be permitted to recover **1,054.70 hours or $359,167.50** spent preparing for an eight-day trial.  The fact that Mr. Carta and his firm spent more than 16 times as many hours preparing for trial as the trial itself[1] is inherently excessive and full reimbursement should be denied.  Attached as **Exhibit 8** is a true and correct copy of an analysis of time spent by Plaintiff's counsel preparing for trial.

12.     IBM, therefore, requests that the excessive number of hours spent by Plaintiff's counsel for rudimentary tasks (1,395.9 hours or $442,457.00) be reduced by no less that 50% to **697.9 hours or $221,228.50**.

13.     The following specific examples indicate that Plaintiff impermissibly seeks total reimbursement for items billed which were incurred in pursuit of unsuccessful or abandoned theories or claims:

14.     Plaintiff should not be permitted to recover for a substantial number of hours spent researching and litigating concerning claims and theories that were abandoned.  These include (1) his claim that IBM allegedly breached an implied contract, which he abandoned before his Complaint was filed; (2) his claim for retaliation, which he abandoned after the close of discovery; (3) his claim that IBM violated its progressive discipline policy, which he abandoned after the pre-trial conference; (4) his claim that his pension should not be used to offset his damages claim, which he pursued despite the absence of legal support but abandoned only after IBM was forced to brief the issue at the very conclusion of the trial; (5) his efforts to

---

[1] Assuming an eight-hour work day, Plaintiff's counsel spent *132 days* preparing for an eight-day trial.

introduce evidence of a co-worker's earnings as evidence supporting his claim for lost stock options, which Plaintiff also abandoned; and (6) his failed application to amend the Case Management Plan to designate a rebuttal expert.[2]  The significant time and effort expended by Plaintiff on claims and theories never pursued to a successful conclusion should be excluded from any reimbursement of Plaintiff as the prevailing party.

15.     Plaintiff should not be permitted to recover **128.10** hours or **$39,925.00** spent unsuccessfully opposing IBM's two *Daubert* motions to bar Plaintiff's expert testimony because Plaintiff's expert, Dr. Gary Crakes, failed to investigate how IBM awards stock options and then tried to side-step the Court's ruling by using a different comparator. Dr. Crakes testified in his deposition that he knew nothing about how IBM awards stock options and, therefore, the Court precluded him from testifying regarding "any past or future economic loss … that is attributable to the exercise of stock options." (Docket No. 114).   Plaintiff unsuccessfully sought to reintroduce stock options by arguing that Dr. Crakes could testify to options based upon the work history of Miguel Echavarria, Plaintiff's successor in the Vice President position.  This resulted in a second *Daubert* ruling against the Plaintiff.  Yet even before trial, Plaintiff sought to introduce evidence regarding Mr. Echavarria's earnings, identifying this as an evidentiary issue in his pre-trial pleadings, and only abandoning this effort on the eve of trial.  Attached as **Exhibit 9** is a true and correct copy of an analysis of time spent by Plaintiff's counsel unsuccessfully opposing IBM's two *Daubert* motions.

16.     Plaintiff should not be permitted to recover **72.20** hours or **$23,065.00** spent deposing Barbara Brickmeier, Patricia O'Malley, Garrett Walker, and Jack Overacre because their depositions added nothing to the litigation or the outcome.

---

[2] Because Plaintiff's block bills do not contain a sufficient level of detail, IBM cannot identify time spent on these various failed efforts with complete specificity.

17.     Plaintiff's Rule 30(b)(6) notice to IBM required it to produce five witnesses to discuss non-issues like Red Team reviews, irrelevant details about the WellPoint account, and policies which did not figure in the litigation.  Attached as **Exhibit 2** is a true and correct copy of Plaintiff's Rule 30(b)(6) notice to IBM. Yet Plaintiff claims that IBM should reimburse him for fees incurred taking these needless depositions.  Indeed, in this overbroad discovery, Plaintiff still was unable to locate even one similarly-situated individual to him.  He located no one who was allowed more than six months on the bench, did not even claim that he should have been selected for one of the 106 positions which were filled by supervisors other than Ms. Collins-Smee, and found no one who was placed into a position by Ms. Collins-Smee who he claimed was less qualified than he was.  Plaintiff testified that he was equally qualified as the individuals Ms. Collins-Smee chose, which is insufficient as a matter of law to prove discrimination based upon qualifications.  Attached as **Exhibit 3** is a true and correct copy of select pages of the transcript of the jury trial.

18.     The witnesses Plaintiff presented at trial—himself for more than two days; Kelton Jones (his former supervisor who was not allowed to testify as to Plaintiff's suitability for various positions filled during the six months he spent on the bench); and Mike Morin, who testified to the undisputed fact that the WellPoint account which Plaintiff serviced was in difficulty at that time—testified either to admitted facts or irrelevant information. At no time did IBM ever deny that the Wellpoint account was a difficult one.  Indeed, three of IBM's own witnesses—Keenie McDonald, Dave Liederbach and Gordon Crawford—all so testified. Attached as **Exhibit 10** is a true and correct copy of an analysis of time spent by Plaintiff's counsel concerning depositions of extraneous and irrelevant witnesses.

19.     Plaintiff's counsel seeks to recover **40.7 hours or $12,325.00** spent opposing IBM's application to seal. Again, this application had no bearing on the case or its outcome, Plaintiff never objected to IBM's designation of any document as "confidential," and, therefore, Plaintiff need never have opposed IBM's motion to seal in the first instance.  Reimbursement for such an unrelated and unnecessary task is inappropriate here.  Attached as **Exhibit 11** is a true and correct copy of an analysis of time spent by Plaintiff's counsel opposing IBM's motion to seal.

20.     Plaintiff should not be permitted to recover **27 hours or $8,257.50** spent on an egregiously untimely and unsuccessful motion to compel discovery, filed on the eve of trial and more than three years after discovery closed. Attached as **Exhibit 12** is a true and correct copy of an analysis of time spent by Plaintiff's counsel moving to compel discovery on the eve of trial.

21.     Plaintiff should not be permitted to recover **22.4 hours or $8,257.50** spent on an unsuccessful motion to revise the parties' pre-trial stipulations to bar the introduction of stipulations about IBM's pre-trial investigation. Attached as **Exhibit 13** is a true and correct copy of an analysis of time spent by Plaintiff's counsel moving to revise the parties' pre-trial stipulations to bar the introduction of stipulations about IBM's pre-trial investigation.

22.     IBM submits that Plaintiff's fee application should, therefore be reduced by no less than **290.4 hours** or **$91,830.00**, to reflect Mr. Carta's firm's abandoned claims, unsuccessful motions, and tasks unrelated to the outcome of the case.

23.     Plaintiff also impermissibly seeks total reimbursement for items billed which were redundant and duplicative.  Mr. Carta and his partners, associates, and paralegals spent **314.2 hours or $87,039.50** jointly participating in various meetings, depositions, internal

conferences, and other aspects of the case.  Attached as **Exhibit 14** is a true and correct copy of an analysis chart identifying time spent by Plaintiff's counsel talking amongst themselves about the case, updating each other on events, and working on the same legal issues such as research and drafting.

24.    This resulted in double-, triple-, and even quadruple-billing for their joint telephone conferences and meetings with one another when discussing scheduling matters, sharing case strategies, updating each other as to the status of the case, and reviewing each other's written work product.

25.    Examples of the most egregious instances of the above include, but are not limited to, having:  two lawyers attend the Rule 26(f) conference and various routine teleconferences with the Court; two lawyers appear to defend Plaintiff's deposition and attend those of IBM's witnesses; two lawyers appear at non-binding mediation; and four lawyers confer about whether to make a settlement counter-offer.

26.    It is excessive and unnecessary to compensate anyone other than Mr. Carta (at his normal rate) for what is duplicative time and efforts by two or more lawyers where Mr. Carta's time and efforts would have sufficed.

27.    To the extent that the work done by two attorneys is duplicative or redundant, IBM submits that Plaintiff's fee application should be reduced by **314.2 hours** or **$87,039.50**, to reflect Mr. Carta's firm's duplicative appearances at depositions and conferences and associated travel time, and his firm's numerous redundant and duplicative time incurred in inter-office and intra-office communications, conferences, document reviews, and meetings.

28.    Mr. Carta and his partners and associates also billed **4.5 hours** or **$1,155.50** for secretarial work.  Attached as **Exhibit 15** is a true and correct copy of an analysis of time spent

by Plaintiff's counsel performing secretarial or administrative tasks. To the extent that Plaintiff's attorneys performed secretarial work, IBM submits that Plaintiff's fee application should be reduced by **4.5 hours** or **$1,155.50**.

29.     Finally, the Court can observe the volume of block billing employed by all eight of Plaintiff's attorneys, suggesting that counsel engaged in block billing to conceal his time entries from subsequent judicial review.  A 35% across-the-board reduction of the remaining $496,978.00 (representing remaining time entries not already specifically excluded) is, therefore, warranted and IBM requests that Plaintiff's fee application be discounted by **$173,942.47**.

30.     In sum, Plaintiff employed eight lawyers in this garden-variety age discrimination case.  They expended 2,674.40 attorney hours, the equivalent of eight people working eight hours per day for 42 straight days on nothing else but this case.

31.     IBM, therefore, respectfully requests that Plaintiff's motion for attorney's fees and related relief be denied or, alternatively, Plaintiff's requested reimbursement of attorney's fees should be reduced by a total of **$575,195.97**.[3]

Dated:  April 3, 2014
          New York, New York                    PROSKAUER ROSE LLP


                                    By:    /s/ *Zachary D. Fasman*
                                           Zachary D. Fasman (phv0899)

---

[3] Plaintiff's total fee amount sought is $898,232.00, less $401,253.50 (representing the fee reduction in accordance with Paragraphs 5 through 28, *supra*), less $173,942.47 (the 35% across-the-board reduction in accordance with Paragraph 29, *supra*) equals IBM's total requested reduction of $575,195.97.

# EXHIBIT 6

**A-1335**

**Plaintiff's Opposition to Summary Judgment**

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 9/23/10 | Review treatise re: age discrimination to prepare opposition to summary judgment motion | KAS | 0.50 | 125.00 |
| 9/24/10 | Continue reviewing case law re: pretext; correspondence with J. Castelluccio | KAS | 0.40 | 100.00 |
| 9/24/10 | Confer with K. Sherman about Motion for Summary Judgment | MRC | 0.20 | 70.00 |
| 9/27/10 | Review and analysis of Summary Judgment motion and supporting affidavits and exhibits; draft notes regarding research topics and assignments, confer with M. Carta re: same. | KAS | 4.10 | 1025.00 |
| 9/27/10 | Begin pulling all cases cited in Summary Judgment Motion for Attorney Sherman | MKD | 1.00 | 125.00 |
| 9/28/10 | Analysis of case law cited in IBM's brief; review of our mediation position statement; review Motion to Preclude Crakes' testimony | KAS | 2.50 | 625.00 |
| 9/29/10 | Review and analysis of IBM documents re: ITD executives and performance; review Crakes' testimony from Maury case; attend lengthy meeting with M. Carta and S. Mulliken re: preparation of response to Motion for Summary Judgment and research topics; review 5 minute drills and work with E. Tonkovich to create composite. | KAS | 5.60 | 1400.00 |
| 9/29/10 | Meet with K. Sherman and S. Mulliken to outline and discuss work that needs to be performed in response to Motion for Summary Judgment and Motion to Preclude Expert Testimony; review exhibits to Motion to Preclude Dr. Crakes' testimony | MRC | 3.00 | 1050.00 |
| 9/29/10 | Conference with M. Carta and K. Sherman re facts of case, response to motion for summary judgment, research issues; review of our earlier Mediation Position Statement. | SJM | 3.20 | 480.00 |
| 9/29/10 | Confer with M. Cm1a; work with M. Carta on drafting Motion to Expunge Affidavit | TJB | 0.20 | 25.00 |
| 9/30/10 | Review five minute drills and discuss assignment with S. Mulliken; attend long meeting w/M. Carta and J. Castelluccio re: Summary Judgment; review significant documents list; review organization charts and executive charts; attend to research re: Statute of Limitations and equitable estoppel | KAS | 6.20 | 1550.00 |
| 10/01/10 | Analysis of Statute of Limitations research; additional research re: retirement inquiries supporting prima facie case of discrimination | KAS | 5.40 | 1350.00 |

**A-1336**

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 10/04/10 | Attend to research in support of Objection to MSJ; review documents in preparation of objection; review Quebecer briefs submitted in opposition to summary judgment (Squatrito case) | KAS | 6.30 | 1575.00 |
| 10/05/10 | Meeting w/M. Carta regarding motion for summary judgment; review IBM documents and Smee depo transcript; correspondence with J. Castelluccio re: 5 minute drill analysis; review recent ADEA CT decision and brief, phone conference w/J. Castelluccio | KAS | 3.80 | 950.00 |
| 10/05/10 | Meet with K. Sherman to discuss Motions for Summary Judgment, to Preclude Experts and to File Under Seal; exchange emails with J. Castelluccio; call to Z. Fasman, Esq.; email to T. Bailey about Motion to Extend Time; exchange emails with Z. Fasman, Esq. | MRC | 1.50 | 525.00 |
| 10/05/10 | E-mails to and from Kate Sherman re: research project | SJM | 0.10 | 15.00 |
| 10/06/10 | Prepare digest of Smee deposition; review case law re: pretext for opposition to Motion for Summary Judgment; review documents provided by opposing counsel re: Sodikoff statistics, confer with M. Carta re: same; review Castelluccio testimony; review executive info and 5 minute drills | KAS | 6.10 | 1525.00 |
| 10/08/10 | Preparation of Castelluccio affidavit; review and analysis of documents | KAS | 5.70 | 1425.00 |
| 10/12/10 | Review notes re pertinent issues and factual background; Perform research re arguments re reassignment and admissibility of internal Investigations | DSM | 1.50 | 450.00 |
| 10/13/10 | Preparation of Local Rule 56(a)(2) statement; digest G. Walker deposition transcript | KAS | 4.20 | 1050.00 |
| 10/14/10 | Continued drafting of Rule 56(a)(2) statement | KAS | 2.20 | 550.00 |
| 10/15/10 | Continued preparation of Local Rule 56 statement; conference with M. Carta re : same; review and revise J. Castelluccio affidavit | KAS | 6.70 | 1675.00 |
| 10/18/10 | Review of various documents in support of Motion for Summary Judgment; continued drafting of Local Rule 56(a)(2) statement of facts; conference with D. McAlister and M. Carta re: research results | KAS | 6.10 | 1525.00 |
| 10/18/10 | Meet with K. Sherman and D. McAlister to discuss legal research and to refine issues; email to K. Sherman | MRC | 1.40 | 490.00 |
| 10/19/10 | Further research re additional issues and fact pattern comparison | DSM | 1.40 | 420.00 |

Case 3:09-cv-01145-TPS   Document 223-6   Filed 04/03/14   Page 4 of 7

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 10/19/10 | Attend to reviewing documents in support of Motion for Summary Judgment, organization of documents to be attached as exhibits; confer with M. Carta re: Walker notes re: Ireland; continue drafting Local Rule 56(a)(2) statement of facts; confer with M. Darcy re: digest assignment and review of drills; confer with E. Tonkovich re: GTS drill documents; email to J. Castelluccio with questions. | KAS | 5.80 | 1450.00 |
| 10/20/10 | Continue drafting Rule 56a(2) statement; phone conference with J. Castelluccio | KAS | 5.30 | 1325.00 |
| 10/21/10 | Continue drafting Rule 56( a) statement; confer with J. Castelluccio re: GTS Drills; analysis of filled positions. | KAS | 5.20 | 1300.00 |
| 10/22/10 | Continue drafting Rule 56(a)(2) statement and providing evidence in support of facts | KAS | 2.90 | 725.00 |
| 10/25/10 | Attend to review and revision of fact statement, adding evidence cites; phone conference with J. Castelluccio; review of O'Malley Deposition; conference with M. Carta re: timelines, confer with A. Zabetakis and M. Carta re: motion to seal | KAS | 7.80 | 1950.00 |
| 10/26/10 | Continue drafting Rule 56( a) statement; review GTS spreadsheet; review and revise Affidavit and Rule 56( a) statement. | KAS | 6.70 | 1675.00 |
| 10/27/10 | Review and revise Rule 56(a) statement; confer with M. Carta re: same; begin drafting Opposition brief. | KAS | 5.70 | 1425.00 |
| 10/28/10 | Continue drafting Opposition brief to Motion for Summary Judgment | KAS | 5.90 | 1475.00 |
| 10/29/10 | Continue drafting opposition to Motion for Summary Judgment; confer with M. Carta re: questions for argument in brief | KAS | 5.80 | 1450.00 |
| 10/31/10 | Analysis of research, review and revise Opposition Memorandum to Motion for Summary Judgment | KAS | 3.20 | 800.00 |
| 11/01/10 | Attend to analysis of research; continue drafting Memorandum in support of Opposition to Motion for Summary Judgment; confer with D. McAlister re: research results | KAS | 7.00 | 1750.00 |
| 11/02/10 | Continued drafting of Memorandum in opposition to Motion for Summary Judgment; confer with M. Carta re: fact statement; long phone conference with J. Castelluccio re: facts and arguments | KAS | 6.50 | 1625.00 |
| 11/02/10 | Work on Statement of Material Facts; confer with A. Zabetakis about Objection to Motion to Seal Documents; review Motion to Seal Documents filed by IBM; exchange emails with J. Castelluccio | MRC | 3.40 | 1190.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 11/03/10 | Continue drafting of Memorandum of Law in Opposition to Motion for Summary Judgment | KAS | 8.20 | 2050.00 |
| 11/03/10 | Continued revisions to Statement of Facts; exchange emails with A. Zabetakis and J. Castelluccio; calls with K. Sherman | MRC | 4.10 | 1435.00 |
| 11/04/10 | Attend to revision of Memorandum of Law in Opposition to Motion for Summary Judgment; preparation of Facts Section of Memorandum; review Fact statement; phone conference with M. Carta and J. Castelluccio re: Jones conversation, other issues | KAS | 7.20 | 1800.00 |
| 11/05/10 | Review and revise Statement of Facts, J. Castelluccio affidavit. Confer with M. Carta re: Fasman email. Phone conference with J. Castelluccio re : remaining issues, Fasman email. | KAS | 8.50 | 2125.00 |
| 11/06/10 | Draft response to Defendant's Local Rule 56( a)(1) statement. | KAS | 2.80 | 700.00 |
| 11/07/10 | Continue drafting of Response to Defendant's Local Rule 56(a)(l) statement; review emails from J. Castelluccio and attachments; respond to same. | KAS | 3.80 | 950.00 |
| 11/07/10 | Review and revise work on Brief in Opposition of Summary Judgment | MRC | 2.00 | 700.00 |
| 11/08/10 | Attend to review and revision of Affidavit, response to Defendant's statement of facts; confer with M. Carta re: brief; phone conference with J. Castelluccio, M. Carta and Z. Fasman; confer with J. Castelluccio re: open questions | KAS | 7.20 | 1800.00 |
| 11/08/10 | Continue to edit Brief; confer with K. Sherman; confer with J. Castelluccio and K. Sherman; call Z. Fasman and G. McLaughlin; confer with T. Bailey; update A. Zabetakis on results of call with Z. Fasman and extension of time | MRC | 6.30 | 2205.00 |
| 11/09/10 | Review and revise Fact Statement; review changes to brief and confer with M. Carta re: same; review and revise Motion for Extension of Time; email exchange with Z. Fasman re: position at IBM | KAS | 5.40 | 1350.00 |
| 11/10/10 | Continued preparation of Opposition to Motion for Summary Judgment; review and revise Affidavit and statement of facts; confer with M. Carta re: fact statement | KAS | 7.40 | 1850.00 |
| 11/11/10 | Continued preparation of Opposition to Motion for Summary Judgment; conference with J. Castelluccio re: Jones affidavit; preparation of Jones affidavit; review Motion to Exceed page limitation | KAS | 3.80 | 950.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/12/10 | Continued preparation of Opposition to Motion for Summary Judgment and statement of facts, organization of exhibits. | KAS | 5.80 | 1450.00 |
| 11/13/10 | Review and revise Local Rule Statement of Facts, J. Castelluccio affidavit, M. Carta Affirmation | KAS | 5.20 | 1300.00 |
| 11/14/10 | Continued revision of Local Rule Statement of Facts and M. Carta affirmation, editing brief to include citations to facts | KAS | 4.50 | 1125.00 |
| 11/14/10 | Finish review of IBM's Memorandum of Law; review and revise our Memorandum of Law; reply to K. Sherman's email; call T. Bailey at home regarding tomorrow's work load | MRC | 6.70 | 2345.00 |
| 11/15/10 | Review and revise Memorandum of Law in Opposition to Motion for Summary Judgment, confer w/M. Carta re; same; attend to revisions to Local Rule statement; review Shepards report; conference with J. Castelluccio re: affidavit | KAS | 8.20 | 2050.00 |
| 12/07/10 | Exchange emails with K. Sherman; read IBM's Reply Brief and make notes of points to discuss with K. Sherman; review IBM's Reply to Objection to File Documents under Seal | MRC | 1.40 | 490.00 |
| 12/13/10 | Confer with M. Carta re: Sur-reply brief; begin drafting Sur-reply brief | KAS | 3.60 | 900.00 |
| 12/13/10 | Meet with K. Sherman to discuss Sur-Reply Brief | MRC | 0.60 | 210.00 |
| 12/14/10 | Continue drafting Sur-Reply brief in response to IBM's Reply Brief | KAS | 3.10 | 775.00 |
| 12/15/10 | Continued drafting of Sur-Reply brief; review and revise same. | KAS | 4.20 | 1050.00 |
| 12/16/10 | Review and revise Sur-Reply brief | KAS | 2.10 | 525.00 |
| 12/16/10 | Review and revise Sur-Reply Brief; confer with K. Sherman several times | MRC | 2.10 | 735.00 |
| 12/17/10 | Review and revise Sur-reply brief and confer with M. Carta re: same | KAS | 2.20 | 550.00 |
| 12/17/13 | Meet with K. Sherman to discuss my proposed edits; meet with M. Delgado regarding review of transcript from J. Castelluccio's deposition; review deposition transcript excerpts located by M. Delgado; final review with K. Sherman | MRC | 0.60 | 210.00 |
| 8/08/11 | Review IBM Reply brief to Obj. to renewed Motion to Seal; email brief to J. Castelluccio. | KAS | 0.40 | 120.00 |
| 8/22/11 | Begin review of supplemental authority in support of Summary Judgment submitted by IBM counsel. | KAS | 0.30 | 90.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 8/23/11 | Review supplemental authority submitted by IBM in support of Motion for Summary Judgment, and research any new law in Connecticut | KAS | 1.50 | 450.00 |
| 9/01/11 | Review Summary Judgment brief for cases to check for updated law. | KAS | 0.30 | 90.00 |
| 9/02/11 | Review citation check report for any notable decisions since filing opposition to summary judgment. | KAS | 1.80 | 270.00 |
| 9/02/11 | Analysis of new CT district court decisions to determine whether to submit as supplemental authority. | KAS | 0.50 | 150.00 |
| | | Total | 272.30 | $71,040.00 |

# EXHIBIT 8

**Preparation for an Eight-Day Single-Plaintiff Trial**

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 3/13/13 | Confer with M. Carta regarding Trial preparation; work on creating Trial Notebooks | TB | 0.50 | 62.50 |
| 3/13/13 | Meeting with M. Triolo to plan trial preparation and discuss deposition of K. Jones; confer with T. Bailey to outline compilation of Trial Notebooks | MC | 2.20 | 825.00 |
| 3/13/13 | Meeting with M. Carta regarding Trial preparation, additional discovery, witness examinations and legal research | MAT | 2.00 | 600.00 |
| 3/20/13 | Meet with M. Carta to discuss legal research and trial strategy; conduct legal research regarding attorney's fees and evidence of willfulness | MAT | 3.00 | 900.00 |
| 3/21/13 | Confer with M. Triolo; work on Trial Notebook | MC | 0.60 | 225.00 |
| 3/22/13 | Conference call with J. Castelluccio and M. Carta to discuss trial preparation and legal research; conduct research regarding emotional distress and calculation of liquidated damages | MAT | 4.30 | 1290.00 |
| 4/2/13 | Organize Legal research for preparation of jury charge; research law regarding affect of Offer of Judgment on Damages awarded and Attorneys' fees recovery | MAT | 3.30 | 990.00 |
| 5/09/13 | Confer with M. Triolo; review legal research on mitigation of damages and parts of last deposition of J. Castelluccio; long meeting with M. Triolo and J. Castelluccio to prepare for his deposition and to begin working on his direct trial examination | MC | 4.70 | 1762.50 |
| 5/09/13 | Meet with M. Carta and J. Castelluccio regarding deposition preparation; organization notes regarding direct trial examination | MAT | 3.20 | 960.00 |
| 5/10/13 | Meet with M. Carta and J. Castelluccio; attend J. Castelluccio's deposition; organize notes regarding direct examination for Trial . | MAT | 3.30 | 990.00 |
| 7/15/13 | Review Joint Trial Order with M. Triolo; meet with M. Triolo to plan next steps. To divide – up work and strategize | MC | 1.70 | 637.50 |
| 7/15/13 | Review Court Order regarding Trial Memorandum requirements; review Local Rules of Procedure regarding same; research law regarding Voir Dire questions; draft Voir Dire; conference with M. Carta regarding trial preparation | MAT | 6.00 | 1800.00 |
| 7/16/13 | Research law regarding Jury Charges and Voir Dire | MAT | 0.80 | 240.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 7/17/13 | Draft, revise and review Voir Dire questions; revise Trial Memorandum | MAT | 1.50 | 450.00 |
| 7/18/13 | Revise and review Trial Memorandum; revise Jury Instructions; research law on standards of proof and elements of ADEA claims | MAT | 6.30 | 1890.00 |
| 7/19/13 | Conference with M. Carta regarding Trial Memorandum and trial preparation; revise and review Trial Memorandum; research law regarding Jury Charges; revise and draft Jury Charges | MAT | 5.50 | 1650.00 |
| 7/19/13 | Meet with M. Triolo to assess our progress sand discuss next steps; call to J. Castelluccio; email S. Lucas; prepare list of questions for J. Castelluccio and S. Lucas | MC | 1.50 | 562.50 |
| 7/19/13 | Review and revise proposed Voir Dire questions; email to M. Triolo | MC | 1.80 | 675.00 |
| 7/20/13 | Review Chronology and Summary Judgment facts to prepare Fact section of Trial Memorandum; review Facts for Chronology Exhibit | MAT | 0.40 | 120.00 |
| 7/20/13 | Begin work on J. Castelluccio's direct Examination | MC | 1.10 | 412.50 |
| 7/21/13 | Continue reviewing Chronology and Summary Judgment Facts; continue working on Fact section of Trial Memorandum; review Facts for Chronology Exhibit | MAT | 1.60 | 480.00 |
| 7/22/13 | Review and revise jury instructions; contact P. Hastings regarding missing documents; review file regarding same; revise Trial Memorandum; meet with M. Carta | MAT | 4.30 | 1290.00 |
| 7/23/13 | Work on J. Castelluccio's direct examination and questions for M. Triolo; review 4 emails from J. Castelluccio regarding Kelton Jones; prior Affidavit and email to J. Castelluccio | MC | 4.00 | 1500.00 |
| 7/23/13 | Review rules of evidence regarding admissibility of: (1) business records; (2) hearsay statements of corporate agents; and (3) compilations of evidence; research law regarding "for cause" challenges | MAT | 1.80 | 540.00 |
| 7/24/13 | Continue work on J. Castelluccio's direct examination; call with S. Lucas regarding his experience with Magistrates, Opening Statement and various questions regarding jury charge; call to J. Castelluccio; call Dr. Crakes regarding calculation of adverse tax impact; long meeting with J. Castelluccio to begin review of his testimony | MC | 6.10 | 2287.50 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 7/24/13 | Research law regarding affirmative defenses and jury charges; draft contested issues of law section of Trial Memorandum; review case law regarding "but for" causation; conference with M. Carta regarding trial preparation; review caselaw regarding increasing verdict to neutralize tax consequences of lump sum payment; review NY law regarding jury charge for NYSHRL claims | MAT | 6.30 | 1890.00 |
| 7/25/13 | Review administrative proceeding documents; research law regarding legal inferences due to age of replacement employee compared to age of terminated employee; conference with M. Carta regarding trial preparation; revise and review jury charges; revise Trial Memorandum | MAT | 5.20 | 1560.00 |
| 7/26/13 | Call Z. Fasman; call Judge's law clerk; notes to file; review Opinion on grossing-up jury award; call to Dr. Crakes; prepare list of items to review with M. Triolo; review decision on procedure for getting award enhanced because of adverse tax consequences; call with Dr. Crakes | MC | 3.30 | 1237.50 |
| 7/26/13 | Review and revise Voir Dire questions; review IBM's Statement of Undisputed Facts; take notes regarding direct examination of J. Castelluccio and cross-examination of Leiderbac | MC | 1.70 | 637.50 |
| 7/26/13 | Review exhibits for incorporation into Trial memorandum; conference with M. Carta regarding trial preparation; revise and review Trial Memorandum; review jury charges | MAT | 5.00 | 1500.00 |
| 7/29/13 | Meet with J. Castelluccio to review documents and testimony; edit outline of earlier testimony | MC | 3.40 | 1275.00 |
| 7/29/13 | Review Collin-Smee Deposition; review Exhibits from deposition; revise Trial Memorandum; update Exhibit list; review updated Chronology | MAT | 4.20 | 1260.00 |
| 7/30/13 | Meet with J. Castelluccio to work on his testimony; confer with T. Bailey | MC | 3.40 | 1275.00 |
| 7/31/13 | Meeting with M. Carta regarding Trial Preparation and Strategy; revise and review list of Exhibits; review Interrogatory responses; draft Motion for Extension of Time to file Trial Memorandum | MAT | 5.80 | 1740.00 |
| 7/31/13 | Edit J. Castelluccio 's direct examination; call Judge Squatritos chambers to squeak with T. Ring; call with Judge's secretary about extension of time and election of Magistrate to expedite trial date | MC | 4.50 | 1687.50 |
| 8/1/13 | Review Caselaw regarding "But for" causation revise Trial Memorandum to include Exhibits from depositions of IBM executive and Human Resource personnel; confer with M. Carta regarding Trial schedule; revise Motion for Extension of Time | MAT | 5.20 | 1860.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 8/2/13 | Long meeting with M. Triolo to answer questions regarding Joint Trial Memorandum; review 5-Minute Drills; call with J. Castelluccio; review K. Jones' email with "script"; read deposition of B. Brickmeier | MC | 4.40 | 1650.00 |
| 8/2/13 | Meeting with M. Carta Regarding case strategy and voir dire, jury charges, and Trial Memorandum; revise Trial Memorandum; revise voir dire | MAT | 2.80 | 840.00 |
| 8/5/13 | Review entire Outline of J. Castelluccio's testimony and make edits; meeting with J. Castelluccio to work on testimony and review additional documents he has identified; begin review of O'Malley's deposition transcript | MC | 4.50 | 1687.50 |
| 8/5/13 | Review Trial Memorandum; review depositions for Exhibits; list Exhibits in Trial memorandum; confer with M. Carta draft e-memo to J. Castelluccio | MAT | 4.80 | 1440.00 |
| 8/6/13 | Meet with M. Triolo to review progress on Joint Trial Memorandum and discuss in detail our list of witnesses and trial to a Magistrate; long meeting with J. Castelluccio to review documents and develop outline of testimony; discussion of other possible witnesses; follow-up meeting with M. Triolo | MC | 3.80 | 1425.00 |
| 8/6/13 | Conference with M. Carta regarding Exhibits, witnesses and Trial strategy; review deposition exhibits; revise and review Trial Memorandum including Exhibits list, Statement of Facts and Contested Issues of Law; revise and review list of Witnesses; draft summaries of proposed testimony | MAT | 7.30 | 2190.00 |
| 8/7/13 | Review deposition excerpts from O'Malley, Holmes and Overacre depositions; confer with M. Triolo about Joint Trial Memorandum; meet with J. Castelluccio to review documents and to outline direct and areas of possible cross examination | MC | 4.20 | 1575.00 |
| 8/7/13 | Organize preparation of Trial notebook; telephone conference with Dr. Crakes regarding income amounts for Stipulation of Facts; review law regarding jury charges; revise and review jury charges; revise Trial Memorandum; review Exhibits list; conference with M. Carta | MAT | 7.80 | 2340.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 8/8/13 | Review Declaration of K. McDonald and Leiderbach and exhibits thereto and develop questions for J. Castelluccio and cross examination of these likely witnesses; meet with M. Triolo regarding Joint Trial Memorandum and her call with Paul Hastings; long meeting with J. Castelluccio to work on direct and cross examination; confer with T. Bailey; review letter from G. Crakes; exchange emails with J. Castelluccio about his schedule of 5-Minute Drills; discussion with M. Triolo regarding M. Boxer as a witness; email J. Castelluccio | MC | 9.10 | 3412.50 |
| 8/8/13 | Revise Summaries of Witnesses testimony; review and revise Exhibits List; draft summary of claims; conference with M. Carta regarding witnesses and evidentiary issues; telephone conference with opposing counsel regarding document production; review documents regarding same; review summary of tax liability prepared by Dr. Crakes | MAT | 8.50 | 2550.00 |
| 8/9/13 | Review and revise Exhibits list; add 5-Minute Drills cited by IBM in support of Summary Judgment motion; conference with M. Carta and J. Castelluccio regarding Exhibits and Trial brief; review documents regarding potential Exhibits; review IBM pleadings for potential stipulated facts; conference with M. Carta regarding Trial strategy and revisions to Exhibits list | MAT | 4.20 | 1260.00 |
| 8/11/13 | Review all complimentary emails and make notes; review proposed Request to Charge and make notes | MC | 1.90 | 712.50 |
| 8/12/13 | Review emails from M. Triolo and J. Castelluccio; review fax from Dr. Crakes with his calculation of tax impact of a favorable verdict; review recent change to Voir Dire questions; review and revise Joint Trial Memorandum; meet with M. Triolo to revise jury charge; call to J. Castelluccio; meet with M. Triolo to discuss my edits on the balance of the Joint Trial Memorandum; work on enhancing disputed issues of law and fact; meet with J. Castelluccio to review complimentary emails; confer with M. Triolo on IBM's draft Trial Memorandum | MC | 7.60 | 2850.00 |
| 8/12/13 | Conference with M. Carta regarding Voir Dire and Jury Charges; revise same; revise charge for circumstantial evidence and add charge regarding credibility of witnesses; review Exhibits and update Exhibits list; conference with M. Carta regarding revisions to Joint Trial Memorandum; review IBM's draft Joint Trial Memorandum | MAT | 10.00 | 3000.00 |
| 8/25/13 | Work on J. Castelluccio's direct examination and cross examination of Ms. Collin-Smee and G. Crawford | MC | 2.20 | 825.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 8/26/13 | Exchange emails with J. Castelluccio; call with J. Castelluccio to review and answer his questions; review Judge Smith's website on trial procedures; call Judge Smith's law clerk; email to M. Triolo regarding rights to appeal from Magistrate's trial; call A. Wood; work on adding complimentary emails into J. Castelluccio's outline | MC | 3.00 | 1125.00 |
| 8/27/13 | Confer with M. Triolo and T. Bailey; work on cross examination of Ms. Collin-Smee; more work on J. Castelluccio's direct exam; call from Judge Smith's Chambers; call to A. Wood; confer with M. Triolo; meet with J. Castelluccio to prepare testimony; proof read today's edits | MC | 6.40 | 2400.00 |
| 8/27/13 | Research law regarding appeal from judgment entered after trial by Magistrate Judge; research Magistrates Smith and Martinez; revise and review exhibit list; conference with M. Carta regarding consent to Magistrate Judge and witness examinations; draft summaries of areas of inquiry for M. Morin and K. Jones; review exhibit binders | MAT | 6.20 | 1860.00 |
| 8/28/13 | Conference with M. Carta regarding preparation of Trial Memorandum; revise and review exhibit list; review exhibits to determine overlaps and completeness of documents; review depositions excerpts and update designations in Trial Memorandum; review exhibit list for documents concerning Mark Boxer | MAT | 6.00 | 1800.00 |
| 8/29/13 | Work on K. Holmes cross examination and J. Castelluccio's direct examination; confer with M. Triolo and T. Bailey; meeting with J. Castelluccio to review additional documents and further work on his direct and cross examinations | MC | 6.40 | 2400.00 |
| 8/29/13 | Revise and Review Trial Memorandum; Review our document production for documents to be added to exhibit list | MAT | 2.20 | 660.00 |
| 8/30/13 | Long meeting with J. Castelluccio to work on direct and cross examination | MC | 3.10 | 1162.50 |
| 8/31/13 | Proof read edits and additions from last 2 meetings with J. Castelluccio; complete line of questioning about 7 executives promoted by Ms. Collin-Smee | MC | 0.50 | 187.50 |
| 9/1/13 | Continue working on J. Castelluccio's outline (direct and Mark cross examinations) | MC | 1.60 | 600.00 |
| 9/3/13 | Conference with M. Carta regarding exhibit list; Review documents regarding duplicates | MAT | 1.20 | 360.00 |
| 9/4/13 | Proofread latest edits and revise for today's meeting with J. Castelluccio; confer with M. Triolo about IBM's revised Joint Trial Memorandum; email to A. Wood; meet with M. Triolo to prepare for call with A. Wood; call with A. Wood about Joint Trial Memorandum | MC | 6.80 | 2550.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 9/4/13 | Revise and Review Exhibit list; conference with M. Carta regarding Court requirements for Joint Trial Memorandum; telephone conference with M. Carta and A. Wood regarding Joint Trial Memorandum and exchange of Exhibit lists; conference with M. Carta and J. Castelluccio regarding M. Morin and Trial exhibits; review IBM's revisions to Joint Trial Memorandum | MAT | 11.00 | 3300.00 |
| 9/5/13 | Meet with M. Triolo regarding need to call A. Wood; discussion after she spoke with A. Wood; meet with J. Castelluccio to continue working on direct examination | MC | 3.40 | 1275.00 |
| 9/5/13 | Revise and Trial Exhibit list and organize Exhibits; telephone conference with A. Wood regarding preparation of Exhibit lists and Joint Trial Memorandum; review Joint Trial Memorandum for revisions made by IBM | MAT | 7.80 | 2340.00 |
| 9/6/13 | Review email from A. Wood with list of IBM's documents; confer with M. Triolo about IBM's document list; review IBM's revised Joint Trial Memorandum and meet with M. Triolo to discuss the same; call with T. Duffield and A. Wood regarding trying to agree on portions of Joint Trial Memorandum; call with J. Castelluccio regarding 2 document lists; make agreed revisions to list of evidentiary issues; confer with T. Bailey about compiling and printing IBM's additional documents; follow –up email to J. Castelluccio regarding 5 Minute Drills and IBM's claim with respect thereto | MC | 3.50 | 1312.50 |
| 9/6/13 | Review IBM's Exhibit list; conference with M. Carta regarding same and regarding proposed revisions to Joint Trial Memorandum; telephone conference with A. Wood and T. Duffield regarding Joint Trial Memorandum; revise and review same; review legal research regarding admissibility of emails as business records | MAT | 5.30 | 1590.00 |
| 9/8/13 | Review email from J. Castelluccio along with his excel spread sheet comparison of our Exhibit list and IBM's Exhibit list; compile and print all IBM Exhibits that do not appear on our Exhibit list; confer with M. Carta regarding same; e-memo to M. Carta and M. Triolo regarding same | TB | 5.00 | 625.00 |
| 9/9/13 | Review and reply to 2 emails from J. Castelluccio; meet with M. Triolo and T. Bailey on procedures for reviewing IBM's recently identified documents; review all of the Boxer documents that IBM refused to stipulate to being admissible; work on adding additional document to J. Castelluccio's outline | MC | 2.30 | 862.50 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 9/9/13 | Revise and review Joint Trial Memorandum; conference with M. Carta regarding Joint Trial Memorandum and review of IBM's Exhibits; review IBM's Exhibits | MAT | 5.00 | 1500.00 |
| 9/10/13 | Exchange emails with Z. Fasman; confer with M. Triolo regarding Motions In Limine; meet with J. Castelluccio to continue working on outline of his direct examination | MC | 4.10 | 1537.50 |
| 9/10/13 | Continued review of IBM's Exhibits; organize same; conference with M. Carta regarding same; draft revise and review Memorandum on Evidentiary Issues | MAT | 5.30 | 1590.00 |
| 9/11/13 | Exchange emails with J. Castelluccio regarding ExecuNet procedures; meet with M. Triolo to prepare for call with IBM's lawyers; long call with IBM's lawyers to discuss points of contention and referral to Magistrate Smith; call with J. Castelluccio; confer with T. Bailey about Judge Smith's past cases with IBM; review materials produced by T. Bailey; call J. Castelluccio; confer with M. Triolo about open questions on Joint Trial Memorandum Order; exchange emails with Z. Fasman on issues we might both be able to concede; two more meetings with M. Triolo on Joint Trial Memorandum facts and evidentiary issues; review of-documents produced by IBM; follow-up call to J. Castelluccio regarding Judge Smith and IBM; begin review of all IBM documents recently identified as its trial documents | MC | 9.10 | 3412.50 |
| 9/11/13 | Continue drafting Memorandum on Evidentiary Issues; revise and review Stipulated Facts; review IBM's proposed findings; revise and review Issues of Law and Fact; revise Exhibit list; telephone conference with Z. Fasman and A. Wood | MAT | 6.50 | 1950.00 |
| 9/12/13 | Continue review of IBM's trial documents; meet with M. Triolo to review Objection to documents; meet with J. Castelluccio to review Objection to documents; revise IBM's revised factual statement; complete review and objections to IBM's trial documents; review IBM's changes to Stipulation of Facts and make counter-revisions; confer with M. Triolo | MC | 9.80 | 3675.00 |
| 9/12/13 | Revise and revise Joint Trial Memorandum; review IBM's document production; conference with M. Carta regarding same; draft objections; revise objections to deposition references; research law regarding evidentiary issues; revise and review memorandum regarding same; prepare Joint Trial Memorandum for filing; telephone conference with Z. Fasman and W. Wood regarding same | MAT | 12.30 | 3690.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 9/13/13 | Calls with Z. Fasman to negotiate final edits to Joint Trial Memorandum; draft revisions; call to J. Castelluccio; confer with M. Triolo; sign Consent to Magistrate Judge; final review of Joint Trial Memorandum; review and revise same | MC | 6.20 | 2325.00 |
| 9/13/13 | Revise and review Joint Trial Memorandum; review J. Castelluccio's comments to Exhibit lists; review Exhibits; revise and review objections to Exhibits; revise and review memorandum regarding evidentiary issues; research law regarding same; conference with M. Carta regarding same; prepare Exhibits to Joint Trial Memorandum; telephone conference with opposing counsel; telephone conference with T. Bailey regarding e-filing Memorandum on Evidentiary issues | MAT | 8.00 | 2400.00 |
| 9/23/13 | Two meetings with M. Triolo about emails from J. Castelluccio, Notice of Trial Date and our response to evidentiary issues; email to J. Castelluccio | MC | 0.80 | 300.00 |
| 10/10/13 | Review and revise Reply to Defendant's Memorandum of Law on Evidentiary Issues; make notes for Ms. Collin-Smee's cross-examination; meet with M. Triolo to review my edit and comments of J. Castelluccio; call J. Castelluccio; call with Z. Fasman; complete review of Memorandum of Law; follow-up email to J. Castelluccio regarding one week postponement of Trial | MC | 6.70 | 2512.50 |
| 10/15/13 | Review notes regarding "To Do" list for Trial; conference with M. Carta regarding same; research law regarding admissibility of Human Resource investigations/reports review Open Door report | MAT | 3.80 | 1140.00 |
| 10/15/13 | Meet with M. Triolo to prepare comprehensive list of everything that needs to be completed for January Trial | MC | 1.20 | 450.00 |
| 10/21/13 | Meet with M. Triolo regarding Open Door evidence analysis pros and cons of filing Motion in Limine; review Magistrates Smith's procedural rules for such motions; discuss response to IBM's Lawyers; review leading opinion of Doe v. Connecticut; email to M. Triolo with questions and an update | MC | 5.10 | 1912.50 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 10/22/13 | Review opinion of Doe v. Connecticut on issue of excluding Mandel's report; make list of grounds for keeping out Open Door notes and final report; meet with M. Triolo regarding Open Door and the need to meet with Paul Hastings to vet 2 document lists and other time issues; call Judge Smith's chambers; meet with J. Castelluccio to discuss brief in opposition to Open Door investigation; review of Mandel notes and final "report" and add to preparation for cross examination outlines of J. Castelluccio and my cross examination of R... Mandel; email M. Triolo with addition points for Open Door brief; review message from Judge's law clerk | MC | 5.80 | 2175.00 |
| 10/22/13 | Research law on IBM Open Door Standards and admissibility into evidence; confer with M. Carta regarding Motion in Limine regarding Open Door report and interviews; conference with M. Carta regarding Trial preparation; conference with L. Ward to outline legal research needed; review and transcribe Mandel Open Door interview notes | MAT | 3.50 | 1050.00 |
| 10/23/13 | Review Mandel interview notes; research law regarding admissibility of Open Door notes and report; draft Motion for Permission to give Opening Statement and to allow Juror Notebooks; conference with M. Carta regarding Motion in Limine, Exhibits, and Trial preparation | MAT | 5.80 | 1740.00 |
| 10/24/13 | Revise and review Motion for Permission to give Opening Statement and juror notebooks; draft email to J. Castelluccio regarding ages of Executives on bench; review documents produced at time of filing Trial Brief; conference with M. Carta regarding same; review IBM policies on Open Door procedures | MAT | 4.80 | 1440.00 |
| 10/24/13 | Call Judge Smith's law clerk regarding Brief on Open Door; confer with M. Triolo about Open Door Brief; email to J. Castelluccio about other Open Door documents and witness meetings; review Motion for Permission to use Trial Exhibit Notebook and to give Opening Statement; call to Z. Fasman; call from T. Duffield; work on organizing cross-examination notes | MC | 2.20 | 825.00 |
| 10/25/13 | Conference with M. Carta regarding demonstrative exhibits; review legal research regarding admissibility of Open Door report; shepardize caselaw; review IBM draft jury charges; research law regarding objections thereto; telephone conference with A. Wood regarding: (1) preview of Exhibit lists, (2) Joint Motion regarding Juror Notebooks; and (3) missing documents | MAT | 4.80 | 1440.00 |
| 10/25/13 | Meet with T. Bailey and M. Triolo regarding demonstrative exhibits | MC | 0.40 | 150.00 |
| 10/28/13 | Email J. Castelluccio; work on one idea for J. Collins-Smee's cross-examination | MC | 0.40 | 150.00 |

**A-1352**

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 10/28/13 | Conduct research on law regarding jury charges: good faith as it affects willfulness; propriety of charge regarding plaintiff being "younger than forty"; and stray remarks | MAT | 5.20 | 1560.00 |
| 10/29/13 | Work on cross-examination of Collins-Smee and Leiderbach; attention to document referenced in J. Castelluccio's direct examination; cross areas for K. McDonald; add questions to outline for direct examination of M. Morin and K. Jones | MC | 4.40 | 1650.00 |
| 10/29/13 | Conduct legal research on procedures for objections to jury charges; research law regarding charge referencing sympathy for plaintiff and mandatory nature of liquidated damages in ADEA case; draft notes regarding objections to charges in preparation for charging conference; review IBM jury charges | MAT | 5.00 | 1500.00 |
| 10/30/13 | Meet with M. Triolo to update her on my progress and discuss her work on objecting to IBM's jury charge; make notes for opening and closing statements; add various points to cross examination outlines; comprehensive review and edit of J. Castelluccio's testimony outline for consistency and flow; also to incorporate J. Castelluccio's last series of edits and comments to the outline | MC | 3.40 | 1275.00 |
| 10/31/13 | Conduct legal research on stray remarks, whether remarks regarding retirement are evidence of age discrimination and setoffs to damages; revise and review research notes regarding objections to jury charges | MAT | 4.50 | 1350.00 |
| 10/31/13 | Conduct legal research on setoffs for unemployment compensation and social security benefits; necessity of medical evidence of emotional distress, whether judge or jury performs setoffs, and mitigation of damages; revise and review notes regarding objections to IBM's proposed jury charges. | MAT | 4.80 | 1440.00 |
| 10/31/13 | Review emails involving K. McDonald for possible use of her cross-examination; call with Dr. Crakes regarding documents he will be relying on at Trial | MC | 0.60 | 225.00 |
| 11/1/13 | Research law regarding mix motive jury instruction, plaintiff's subjective belief, and juror's right to question defendant's business judgment; revise and review notes regarding jury charges; conference with M. Carta regarding mixed motive charge; research law regarding employer helping employee find substitute position in reduction of workforce cases | MAT | 5.80 | 1740.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/5/13 | Meet with M. Triolo regarding open issues with IBM's attorney; review R. Mandel's notes of interview with L. Fernandez; discuss M. Morin documents for our meeting with M. Morin; exchange two emails with T. Duffield about joint motion and motion to preclude Open Door investigation; work on M. Morin testimony outline; review of document in which M. Morin is referred to; email to J. Castelluccio with agenda for tomorrow's meeting | MC | 2.90 | 1087.50 |
| 11/5/13 | Conference with M. Carta regarding outstanding issues with opposing counsel; review Exhibit lists regarding M. Morin documents; review jury charge objections regarding issues which affect testimony; draft notes summarizing research. | MAT | 4.50 | 1350.00 |
| 11/6/13 | Conference with M. Carta regarding Motion regarding Open Door Investigation and proof of willfulness; review Exhibit lists for K. Holmes documents; revise outline of M. Morin questions; meeting with J. Castelluccio and M. Carta regarding "bench" policies and termination codes/procedures; review complaint regarding allegations of supervisor's conduct; review J. Collins-Smee deposition transcript | MAT | 5.80 | 1740.00 |
| 11/6/13 | Review exchange of emails between J. Castelluccio and M. Triolo regarding list of fired employees; confer with M. Triolo about involuntary dismissal codes and information we have about employees "on the bench"; review revise Joint Motion RE Opening Statements and Use of Jury Notebooks; meet with J. Castelluccio to outline M. Morin's testimony and review related documents | MC | 4.50 | 1687.50 |
| 11/7/13 | Draft K. Holmes questions regarding separation codes; conference with M. Carta regarding document requests; review Joint Motion regarding Opening Statements and contact T. Duffield regarding outstanding document requests; review caselaw regarding pretext charge; review federal rules regarding motions to compel | MAT | 4.30 | 1290.00 |
| 11/7/13 | Meet with M. Triolo regarding termination from the bench; work on M. Morin's direct and cross examination; attention to likely cross examination of K. Jones; review relevant allegations of Complaint to confirm that we have challenged J. Collins-Smee's conduct while J. Castelluccio was "on the bench" | MC | 3.80 | 1425.00 |
| 11/8/13 | Review legal research regarding Motion in Limine to preclude Open Door Report; draft Memorandum of Law and affirmation; review deposition transcripts regarding affirmation | MAT | 3.30 | 990.00 |
| 11/9/13 | Work on K. Holmes cross examination; review notes and exhibits; review deposition transcript | MC | 2.70 | 1012.50 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/11/13 | Review and reply to J. Castelluccio's email about call with M. Morin; meet with M. Triolo regarding Motion to Compel and Open Door documents and reply of T. Duffield; review T. Duffield's reply; Discussion about significance of fact that J. Collins-Smee relegated J. Castelluccio to the bench rather than firing him; notes to outline questions for K. Jones | MC | 1.00 | 375.00 |
| 11/11/13 | Revise and review Memorandum of Law in support of Motion in Limine; review legal research; conference with M. Carta regarding Requests tor Production of Documents; forward documents to M. Morin | MAT | 4.20 | 1260.00 |
| 11/12/13 | Proofread edits to M. Morin outline (direct and cross); review outline and supporting documents complied by M. Triolo | MC | 0.80 | 300.00 |
| 11/12/13 | Review and summarize history of requests for production of Open Door and PBC documents from IBM; review Federal Rules regarding Motions to Compel; revise and draft Memorandum of Law in Support of Motion in Limine; review Morin documents and areas of inquiry | MAT | 3.50 | 1050.00 |
| 11/14/13 | Revise and draft Memo of law in support of Motion in Limine; review correspondence to Judge Smith | MAT | 2.20 | 660.00 |
| 11/15/13 | Review legal research regarding attorney fees awards in ADEA cases; telephone conference with M. Carta, J. Castelluccio and M. Morin regarding Trial testimony; revise Memo of law in support of Motion in Limine | MAT | 5.30 | 1950.00 |
| 11/18/13 | Call with Z. Fasman regarding documents and settlement; meet with M. Triolo to review settlement proposal and idea of bifurcating attorney's fees; calls to Judge A. Nevas regarding same; notes to file; call J. Castelluccio; work on K. Jones' outline; confer with T. Bailey and M. Triolo with K. Jones documents; call J. Castelluccio to discuss settlement; more work on K. Jones' outline | MC | 3.40 | 1275.00 |
| 11/18/13 | Draft, revise and review memo of law regarding admissibility of Open Door Evidence; conference with M. Carta regarding settlement proposal; review mediation for elements of damages and amounts sought. | MAT | 3.20 | 960.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/19/13 | Call to Z. Fasman; meet with J. Castelluccio to continue work on outline of K. Jones' testimony; review documents for K. Jones' direct and cross; discuss text of settlement with M. Triolo and J. Castelluccio; review email from J. Castelluccio regarding Open Door and cross examination of J. Collins-Smee; reply to J. Castelluccio; call with Z. Fasman; update J. Castelluccio and M. Triolo | MC | 4.20 | 1575.00 |
| 11/19/13 | Review exhibit lists for K. Jones documents; review Collins-Smee deposition re: same; review legal research regarding award of attorneys' fees where parties settle underlying ADEA claim; research law regarding same; draft, revise and review Memo of Law regarding Open Door evidence | MAT | 7.80 | 2340.00 |
| 11/20/13 | Conference with M. Carta regarding attorneys' fees research; revise and review Memorandum of law regarding Open Door Evidence; prepare affirmation and exhibits; research law regarding court discretion to exclude admissible evidence | MAT | 4.20 | 1260.00 |
| 11/20/13 | Review 3 Decisions on recovery of attorney's fees when there is a settlement under the ADEA; discuss issue with M. Triolo revise offer; proofread K. Jones' outline; review reply from Z. Fasman and forward to J. Castelluccio; work on editing Memorandum of Law regarding excluding Open Door Investigation; email to M. Triolo | MC | 2.20 | 825.00 |
| 11/21/13 | Revise and review memorandum of law regarding Open Door issue; conference with M. Carta regarding same; attend conference call with K. Jones, M. Carta and J. Castelluccio regarding trial testimony and document review. | MAT | 4.80 | 1440.00 |
| 11/21/13 | Finish editing of Brief on Open Door Investigation; meet with M. Triolo to review my comments and to discuss Exhibits we are attaching to Affirmation; conference call with K. Jones, M. Triolo and J. Castelluccio | MC | 3.50 | 1312.50 |
| 11/22/13 | Research law regarding human resource reports as business records; revise and review Memorandum of Law regarding Open Door Evidence; conference with M. Carta re: same; review affirmation | MAT | 10.50 | 3150.00 |
| 11/22/13 | Final revision to Memorandum of Law regarding Exclusion of Open Door Evidence; confer with M. Triolo about yesterdays' call with K. Jones | MC | 3.70 | 1387.50 |
| 11/25/13 | Telephone conference with M. Carta, J. Castelluccio and K. jones re: trial preparation; draft Motion to Compel; review Federal Rules regarding same | MAT | 4.80 | 1440.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/25/13 | Meet with M. Triolo and J. Castelluccio and long call with K. Jones; follow-up meeting with J. Castelluccio to discuss PBC's in detail | MC | 5.30 | 1987.50 |
| 11/26/13 | Draft, revise and review Castelluccio affidavit; Carta affidavit, Motion to Compel and Memo of Law in support of Motion to Compel; conference with M. Carta regarding same; prepare exhibits | MAT | 7.50 | 2250.00 |
| 11/27/13 | Work on Outline of K. Jones direct examination | MC | 2.20 | 825.00 |
| 12/1/13 | Exchange emails with M. Triolo and T. Bailey about IBM's Memorandum of Law regarding Open Door evidence | MC | 0.20 | 95.00 |
| 12/2/13 | Review Court Order Granting right to use Trial Exhibit Notebooks; review IBM's Reply to our Motion to Preclude Open Door Evidence | MC | 0.40 | 190.00 |
| 12/3/13 | Meet with M. Triolo to discuss Trial exhibits and IBM's new argument that Mandel terminated J. Castelluccio; review idea of "dress rehearsal" for J. Castelluccio's testimony; long meeting with J. Castelluccio to review documents and additional areas of inquiry; make revisions to direct examination outline and additional notes for K. jones' examination | MC | 3.30 | 1567.50 |
| 12/3/13 | Conference with M. Carta regarding trial preparation and IBM Reply Memorandum; Review court procedures for using technology during trial; select chronology entries for use in exhibit; review documents which support chronology entries; conference with client regarding exhibit preparation and IBM reply brief; review proposal for exhibit preparation; draft Mock jury questions; plan mock jury exercise | MAT | 6.00 | 1800.00 |
| 12/4/13 | Meet with M. Triolo to discuss cross examination of K. McDonald and exhibits; call with J. Castelluccio | MC | 0.50 | 237.50 |
| 12/4/13 | Conference with M. Carta re exhibit preparation; contact court regarding use of technology at trial; prepare Keenie McDonald cross examination; review McDonald affidavits and exhibits; review IBM trial exhibits regarding McDonald; conference with M. Carta regarding same | MAT | 5.30 | 1590.00 |
| 12/5/13 | Work on K. jones' examination | MC | 3.00 | 1425.00 |
| 12/5/13 | Revise and review Keenie McDonald Cross Examination; review documents regarding same; review IBM PBC documents regarding manager and employee goal setting | MAT | 4.20 | 1260.00 |
| 12/6/13 | Draft, revise and review K. McDonald cross examination; review documents; review J. Collins-Smee deposition transcript | MAT | 4.30 | 1290.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 12/6/13 | Continue work on K. Jones' direct examination | MC | 2.60 | 1235.00 |
| 12/7/13 | Proofread last edits to K. Jones outline and add in questions from post notes | MC | .30 | 142.50 |
| 12/8/13 | Review portions of Collins-Smee deposition and documents in which K. Jones is reference; work on K. Jones' outline | MC | 5.90 | 2802.50 |
| 12/9/13 | Exchange emails with J. Castelluccio regarding his review of documents; call with M. Triolo to answer questions about Exhibits and logistics of Trial; finish K. Jones outline; begin work on M. Morin outline | MC | 9.20 | 4370.00 |
| 12/9/13 | Revise K. McDonald Cross; draft email to client; conference with M. Carta regarding trial exhibits; research law regarding Motion for Judgment as a Matter of Law | MAT | 3.50 | 1050.00 |
| 12/10/13 | Draft statement of IBM defenses and claims for use with mock jurors; contact potential jurors; revise K. McDonald cross; review documents; draft email to client; conference with M. Carta re Trial preparation K. McDonald cross research graphic artists for chronology exhibit | MAT | 3.80 | 1140.00 |
| 12/11/13 | Meet with M. Triolo and T. Bailey regarding Trial logistic and cross examination of K. McDonald; meet with M. Triolo regarding Trial Exhibits; attention to planning "mock jury"; make call to potential jurors | MC | 1.30 | 617.50 |
| 12/11/13 | Conference with M. Carta and T. Bailey re trial preparation; telephone conference with graphic artist; email potential mock jurors; research law regarding motion for judgment as a matter of law review Confidentiality Stipulation and Agreement | MAT | 4.50 | 1350.00 |
| 12/12/13 | Confer with M. Daher and S. Carta regarding mock jurors; confer with S. Heydt; meet with M. Triolo to discuss mock juror questionnaire, legal charge and format email to mock jurors; review confidentiality stipulation; conference with M. Carta regarding Holmes cross examination, demonstrative exhibits, mock direct examination; review Kerin Five Minute Drills | MC | 2.50 | 1187.50 |
| 12/12/13 | Review draft of demonstrative exhibit, email same to J. Castelluccio; conference with M. Carta regarding preparation for mock direct exam; revise mock juror questionnaire; review jury charge; revise Agreement re: confidentiality; review outline of K. Jones direct examination. | MAT | 4.30 | 1290.00 |
| 12/13/13 | Review outlines of M. Morin and K. Jones; meet with M. Triolo regarding mock jury and "to do" list; call M. Morin to schedule meeting; call with J. Castelluccio; call with S. Carta regarding mock jury; proofread K. Jones' edits | MC | 3.40 | 1615.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 12/13/13 | Review K. Jones direct; Conference with M. Carta regarding trial preparation: revise to do lists, prepare demonstrative exhibits, prepare mock direct examination, courtroom technology, exhibit review, preparation of direct exams, Kelton Jones schedule, subpoenas for witnesses, K. Jones direct; telephone conference with client; revise chronology for demonstrative exhibit; contact copy service regarding email enlargements | MAT | 5.00 | 1500.00 |
| 12/14/13 | Draft demonstrative exhibit regarding IBM's alleged reasons for termination; review Kelton Jones and Mike Morin testimony; make notes for M. Carta | MAT | 2.50 | 750.00 |
| 12/15/13 | Call T. Bailey; revise Trial Exhibit with chronology; edits to K. Jones' outline; proofread M. Morin outline and make revisions; review M. Triolo's notes | MC | 2.30 | 1092.50 |
| 12/15/13 | Revise demonstrative exhibit regarding alleged reasons for termination | MAT | 0.80 | 240.00 |
| 12/16/13 | Review K. Holmes documents and continue work on K. Holmes cross-examination; confer with M. Triolo about confidentiality agreements and "mock trial"; long meeting with J. Castelluccio to review documents and revise testimony; review proposed "composite" exhibits; review J. Castelluccio's comments to K. Jones' outline | MC | 8.40 | 3990.00 |
| 12/16/13 | Draft mock opening statement; review J. Castelluccio email; draft emails to mock jurors; contact consultant regarding demonstrative exhibits; contact Deputy regarding courtroom technology; conference with J. Castelluccio regarding K. McDonald cross examination and demonstrative exhibits. | MAT | 4.60 | 1380.00 |
| 12/16/13 | Continue working with M. Carta on extensive revisions to J. Castelluccio's Direct Examination | TB | 1.00 | 125.00 |
| 12/17/13 | Continue work on K. Holmes' cross-examination; call with M. Triolo, Z. Fasman and T. Duffield regarding procedures for vetting trial documents; long meeting with M. Triolo to discuss trial exhibits, answer questions and finalize plan for "mock trial"; call with J. Castelluccio | MC | 5.30 | 2517.50 |
| 12/17/13 | Telephone conference with Z. Fasman, T. Duffield and M. Carta; review law regarding Motions for judgment as a matter of law; review demonstrative exhibit drafts; draft email to mock jurors; review confidentiality stipulation; conference with M. Carta regarding Holmes cross examination, demonstrative exhibits, mock direct examination; review Kerin Five Minute Drills | MAT | 5.80 | 1740.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 12/18/13 | Confer with M. Triolo and T. Bailey; rehearsal of J. Castelluccio's testimony with documents; attention to brief opening statement | MC | 6.80 | 3230.00 |
| 12/18/13 | Write Opening Statement and begin rehearsal of same | MC | 2.20 | 1045.00 |
| 12/18/13 | Compile all identified Exhibits for Mock Jury and create Jury Notebooks (BILLED AT 50% OF RATE) | TB | 4.00 | 250.00 |
| 12/18/13 | Prepare documents for mock exam; revise exhibit list; review opening statement , IBM defenses and Jury instructions; email court deputy re technology; contact Visualex regarding demonstrative exhibit; research law regarding judicial notice of pleadings. | MAT | 6.20 | 1860.00 |
| 12/19/13 | Final preparation for mock trial; meet with "jurors" to outline procedure; conduct mock trial; meet with jurors to review feedback and questionnaires | MC | 10.30 | 4892.50 |
| 12/19/13 | Prepare for and attend Mock examination; meet with jurors to gather feedback; review juror questionnaires; conferences with M. Carta regarding same | MAT | 7.50 | 2250.00 |
| 12/20/13 | Compile notes regarding opening and closing statements; review direct examinations to update exhibit list; conference with M. Carta regarding mock juror feedback and revisions to J. Castelluccio direct exam; review deposition exhibits and direct exams of M. Morin and K. Jones to revise exhibit list; make revisions to exhibit list | MAT | 8.00 | 2400.00 |
| 12/20/13 | Confer with M. Triolo about meeting to evaluate feedback; email and call to J. Castelluccio; revise Opening Statement | MC | 2.30 | 1092.50 |
| 12/23/13 | Revise and review exhibit list; review and input J. Castelluccio revisions; conferences with M. Carta; review Collins-Smee exam regarding documents; review decision regarding Motion to Preclude; review pleading regarding stipulations and admissions; review PBCs; review IBM document production | MAT | 10.20 | 3060.00 |
| 12/23/13 | Modifications to J. Castelluccio's Direct Examination based on "jurors'" input; complete list of Trial documents for tomorrow's exchange with counsel; confer with M. Triolo regarding same; review Judge Squatrios Memorandum of Decision to confirm that all facts upon which he relied are in outline; begin review of Collins-Smee's deposition for her examination; confer with T. Bailey | MC | 5.80 | 2755.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 12/24/13 | Conference with M. Carta regarding exhibit list revisions; conference with J. Castelluccio re: same; review Z. Fasman proposed revisions to stipulations regarding Open Door Investigation; prepare revised exhibit list and forward same to T. Duffield. | MAT | 3.50 | 1050.00 |
| 12/24/13 | Review exchange of emails with J. Castelluccio; read Judge Smith's ruling on Motion to Exclude Open Door Evidence; call with J. Fasman | MC | 2.40 | 1140.00 |
| 12/26/13 | Conference with M Carta regarding exhibit review and objections; review IBM's exhibit list; revise exhibit binders. | MAT | 5.50 | 1650.00 |
| 12/26/13 | Read Opinion on inadmissibility of Open Door Evidence; review edits; review email and Stipulation from Z. Fasman; email J. Castelluccio regarding same; call with M. Morin; attention to outline of Opening Statement; exchange emails with Z. Fasman; attention to J. Collins-Smee's examination; confer with M. Triolo about agreeing on documents | MC | 8.70 | 4132.50 |
| 12/27/13 | Revise exhibit binders; review exhibits; draft objections; review deposition excerpt objections; conference with M. Carta regarding exhibits; review IBM's Motion for Reconsideration; research law regarding standard for granting Motion for Reconsideration. | MAT | 9.30 | 2790.00 |
| 12/27/13 | Review email from J. Castelluccio and reply; exchange emails with Z. Fasman; long call with J. Castelluccio concerning other witnesses and his recent review of documents; review lists of Trial documents with objections with M. Triolo | MC | 4.50 | 2137.50 |
| 12/29/13 | Review Court's ruling regarding motion to preclude, IBM's motion for reconsideration and relevant law; draft, revise and review Memo of Law in Opposition to Motion for Reconsideration; conference with M. Carta regarding same; conference with M. Carta regarding IBM exhibit list. | MAT | 5.30 | 1590.00 |
| 12/29/13 | Finish review of Trial documents and objections; review deposition excerpts; confer with M. Triolo about deposition excerpts of 3 witnesses; call with J. Castelluccio; e-memo to T. Bailey regarding meeting with M. Morin | MC | 5.90 | 2802.50 |
| 12/30/13 | Confer with M. Carta re review of expert deposition; Begin reviewing same | DM | 0.30 | 120.00 |
| 12/30/13 | Conference with M. Carta regarding revised trial exhibit list; telephone conference with T. Duffield regarding trial exhibits; revise demonstrative exhibit. | MAT | 3.00 | 900.00 |

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 12/30/13 | Review IBM's objections to deposition excerpts; long call with T. Duffield and M. Triolo regarding agreeing on documents; call with M. Morin; call to D. Crakes; plan out Trial times and schedule; confer with T. Bailey about his call to Clerk; revise Memorandum of Law in Opposition to Motion for Reconsideration; call with J. Castelluccio; call with K. Jones; develop further our objections to IBM's deposition excerpts and excerpts we agree to; confer with D. McAlister regarding expert's deposition | MC | 7.50 | 3562.50 |
| 12/31/13 | Review deposition transcript re expert testimony to highlight issues for M. Carta to address | DM | 0.80 | 320.00 |
| 12/31/13 | Conference with M. Carta regarding deposition excerpts and demonstrative exhibits; telephone conference with T. Duffield re. same; revise exhibit list and deposition excerpt list; meeting with client regarding preparation of demonstrative exhibits review IBM demonstrative exhibits; telephone conference with court clerk regarding exhibit preparation. | MAT | 9.00 | 2700.00 |
| 12/31/13 | Exchange emails with M. Morin and S. Dressler; meet with M. Triolo to work on demonstrative exhibits and deposition excerpts; calls with M. Morin; meet M. Morin in Hartford to review IBM exhibits and his testimony | MC | 9.30 | 4417.50 |
| 1/1/14 | Prepare Binders of Exhibits being objected to for Pretrial Conference | TB | 2.00 | 300.00 |
| 1/1/14 | Revise and review two chronology exhibits; forward draft to M. Carta and J. Castelluccio; review IBM's demonstratives. | MAT | 2.20 | 660.00 |
| 1/1/14 | Call with T. Bailey regarding documents for Court hearing on January 6th; review Exhibits from M. Triolo | MC | 0.20 | 95.00 |
| 1/2/14 | Telephone conferences with Visualex; revise and review chronology exhibit; conferences with M. Carta and J. Castelluccio re: same; prepare new format for drill summaries and reformat excel documents review IBM exhibit list revisions; organize exhibits. | MAT | 6.80 | 2040.00 |
| 1/2/14 | Meet with M. Triolo regarding IBM's demonstrative exhibits; review emails from T. Duffield; email M. Morin regarding his revised testimony and documents for cross-examination | MC | 5.50 | 2612.50 |
| 1/3/14 | Revise and review demonstrative exhibits; drill summaries, organization charts, job search summaries and chronology; telephone conferences with Visualex; review revisions to IBM's exhibit list; conference with M. Carta regarding objections; review deposition excerpt objections; forward demonstratives to IBM counsel. | MAT | 7.30 | 2190.00 |

Case 3:09-cv-01145-TPS   Document 223-8   Filed 04/03/14   Page 22 of 25

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 1/3/14 | Review series of emails and drafts of demonstrative exhibits and discuss outstanding objectives; work with I. Heydt, M. Triolo and J. Castelluccio on revising demonstrative exhibits: review emails from T. Duffield; review Summary of Zapfel's 5 Minute Drills; long call with J. Castelluccio; add demonstrative exhibits to J. Castelluccio's outline; revise 3 exhibits relating to J. Castelluccio's job quest and chronology; work on M. Morin's testimony revisions | MC | 8.10 | 3847.50 |
| 1/4/13 | Review legal memoranda regarding evidentiary issues to be discussed at pretrial hearing; review case law; summarize arguments; prepare for pretrial | MAT | 5.30 | 1590.00 |
| 1/4/13 | Revisions to M. Morin's testimony; review new exhibits disclosed concerning Dr. Crakes prior testimony in Maury case; careful analysis of Kerin's March 2007 Drill for use in J. Castelluccio's direct examination; add newest emails identified by IBM to testimony outlines of J. Castelluccio and M. Morin | MC | 5.50 | 2612.50 |
| 1/5/14 | Prepare for pretrial hearing; review exhibit list, revise same; review deposition excerpts; review legal arguments, summarize same, conferences with M. Carta and J. Castelluccio re: pretrial | MAT | 10.50 | 3150.00 |
| 1/5/14 | Finish adding documents to M. Morin's testimony; meet with J. Castelluccio to review documents and questions for tomorrow's conference; discuss with M. Triolo the legal objection to evidence still at issue; work to further reduce documents we are objecting to; prepare to respond to IBM's objections to our documents; develop "to do" list of remaining tasks; prepare to ar1..rue Objection to Motion to Reconsider; read cases cited by IBM; discuss with M. Triolo | MC | 10.10 | 4797.50 |
| 1/5/14 | Work on compiling final Exhibits and preparation for Trial | TB | 6.50 | 975.00 |
| 1/6/14 | Attend pretrial conference before Judge Smith; revise and Work on compiling final Exhibits and preparation for Trial review chronology; telephone conference and draft email to Visualex re same; revise exhibit list to ret1ect agreements at pretrial conference; conference with M. Carta and T. Bailey regarding preparation of exhibit notebooks. | MAT | 10.30 | 3090.00 |

**A-1363**

| Date | Explanation | Attorney | Hours | Amount |
|---|---|---|---|---|
| 1/6/14 | Final review of Trial exhibits to which IBM is still objecting; travel to and from Hartford for Trial Management Conference; attend Trial Management Conference; meet with T. Duffield to debate objections to Trial exhibits; call Dr. Crakes regarding today's ruling on Echavarria; work on revisions to chronology exhibit with M. Triolo; meet with M. Triolo and T. Bailey to finalize plans for Exhibit Notebooks | MC | 10.60 | 5035.00 |
| 1/6/14 | Continue working on compiling final Exhibits and preparation of Exhibit Binders | TB | 3.00 | 450.00 |
| 1/7/14 | Revise and review demonstrative exhibits; conferences with J. Castelluccio, M. Carta and Visualex re same; draft email with revisions; revise drill summaries; revise chronology entries; revise and review joint trial memorandum; telephone conference with opposing counsel regarding same; prepare and revise exhibit list | MAT | 12.50 | 3750.00 |
| 1/7/14 | Work on Collins-Smee's examination; call with J. Castelluccio; long call with M. Morin; review voice message from Z. Fasman; revise M. Morin exam based on call; call with Z. Fasman; exchange emails with Z. Fasman; meet with M. Triolo regarding demonstrative exhibits | MC | 8.30 | 3942.50 |
| 1/7/14 | Continue compiling final Exhibits; various telephone calls and meetings with Ricoh Representative regarding formation of Exhibit Binders; work with M. Carta on additional revisions to direct and cross examination outlines | TB | 9.00 | 1350.00 |
| 1/8/14 | Review revised Joint Trial Memo; draft motion to revise Trial memo; review standing order regarding same; telephone conferences with court clerk; revise and review demonstrative exhibits; review K. McDonald Cross; draft changes to proposed jury charge regarding 106 positions; review and revise verdict form; research law regarding same; review demonstrative exhibits; research law regarding damages cap for emotional distress; conferences with M. Carta. | MAT | 11.60 | 3480.00 |
| 1/8/14 | Review edits made after long call yesterday with M. Morin; continue work on Collins-Smee's examination; prepare for meeting with Dr. Crakes; call with J. Castelluccio regarding M. Morin; call with M. Triolo; call with Dr. Crakes regarding meeting questions; call S. Lucas, Esq. to discuss sequencing of witnesses | MC | 11.40 | 5415.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 1/8/14 | Continue working with Ricoh in preparation of Exhibit Binders; continue compiling Exhibits for J. Castelluccio's Direct Examination; work with M. Carta on revisions to direct and cross examinations | TB | 10.00 | 1500.00 |
| 1/9/14 | Discussions with M. Triolo regarding deposition designations for O'Malley, Walker and Brickmeier; review of correspondence from Defendant's counsel regarding deposition designations; review of deposition transcripts for background information to be read to jury, etc. | SM | 1.90 | 427.50 |
| 1/9/14 | Assist with document preparation; revise and review verdict form and joint jury charge, research law regarding same; conference with M. Carta regarding same; telephone conferences with clerk's office; telephone conference with Judge regarding stipulated facts; review exhibit lists; review deposition excerpts; revise demonstrative exhibits; conference with S. Mulliken. | MAT | 10.50 | 3150.00 |
| 1/9/14 | Confer with M. Triolo about call to Court; review letter from T. Duffield and respond with an email concerning Dr. Crakes calculation; confer with M. Triolo about emotional distress claim; call Judge Smith with Z. Fasman regarding Open Door evidence; work with M. Triolo on proposed Jury Charge and Jury Questionnaire; review and reply to several emails from Dr. Crakes; call to Dr. Crakes; work on Opening Statement | MC | 10.10 | 4797.50 |
| 1/10/14 | Finalize work with Exhibit Binders; work with M. Carta on J. Collins-Smee's outline and Opening Statement | TB | 11.00 | 1650.00 |
| 1/10/14 | Call with M. Triolo about her discussion with Judge's Law Clerk; contact J. Castelluccio to discuss same; work on J. Collins-Smee examination; flurry of calls about possible settlement with Z. Fasman and Judge Smith; confer with T. Bailey about Opening Statement and J. Collins-Smee examination | MC | 8.90 | 4227.50 |
| 1/10/14 | Draft emails to opposing counsel regarding deposition excerpts, trial binders, verdict form, and jury charge; telephone conference with court clerk; review list of potential jurors; review exhibit notebooks; revise exhibit list; review K. McDonald documents and review draft cross examination | MAT | 8.80 | 2640.00 |
| 1/11/14 | Work with M. Triolo on final additions to Exhibit Binders; coordinate items needed for Trial; work with M. Carta on revisions to various outlines | TB | 10.00 | 1500.00 |

| Date | Explanation | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 1/11/14 | Revise Opening Statement; confer with M. Triolo and long meeting with J. Castelluccio; meeting with M. Triolo to discuss Opening Statement | MC | 10.10 | 4797.50 |
| 1/11/14 | Prepare for trial: conference with M. Carta regarding Opening statement; prepare demonstrative exhibits; organize exhibit binders; review IBM exhibit binders; review deposition excerpts; verdict form and stipulated charge | MAT | 9.60 | 2880.00 |
| 1/12/14 | revisions to various outlines; compile specific Exhibits for the various outlines and create trial notebooks for each witness | TB | 9.30 | 1395.00 |
| 1/12/14 | Rehearse Opening Statement; revise Opening Statement; pack Office for Trial; review notes on Jurors in Pool; final Trial preparation including review of Dr. Sodokoff's deposition | MC | 9.50 | 4512.50 |
| 1/12/14 | Prepare exhibits and revise and review exhibit lists; conference with M. Carta regarding voir dire and trial preparation; pack trial materials; travel to Hartford; review Evidentiary Memo; conference with M. Carta regarding same | MAT | 10.10 | 3030.00 |
| | | Total | 1054.70 | $359,167.50 |

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES CASTELLUCCIO, | : | CIVIL ACTION |
| | : | NO. 3:09 CV 1145 (TPS) |
| Plaintiff | : | |
| vs | : | |
| | : | |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | |
| | : | |
| Defendant. | : | APRIL 17, 2014 |

PLAINTIFF'S REPLY TO IBM'S OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Plaintiff James Castelluccio ("Mr. Castelluccio") submits this Reply Memorandum to IBM's Memorandum of Law in Opposition to Mr. Castelluccio's Motion for Attorneys' Fees (Doc. # 222, ("IBM's Opposition")).

IBM does not contest the amount sought by Mr. Castelluccio for prejudgment interest or tax liability.  ("IBM's Opposition, p.6, n.7). Accordingly, Mr. Castelluccio requests that those amounts be awarded in full. [1]

The Supreme Court has held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" <u>Farrar v. Hobby</u>, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).  The jury found in favor of Mr. Castelluccio on every one of his claims, and awarded him damages in the full amount sought.  The attorneys' fees incurred by Mr. Castelluccio were reasonably expended to achieve this complete success, and an award of these fees is merited by the jury's verdict. While IBM undoubtedly has the right

---

[1] As set forth in the Affidavit of Mark R. Carta in Support of Plaintiff's Motion for Attorneys' Fees, Prejudgment Interest, Costs and Increased Tax Liability (Doc. # 199) ("Carta Aff., Doc. #199"), Mr. Castelluccio seeks prejudgment interest in the amount of $13,236 and compensation for increased tax liability in the amount of $209,488.   (Carta Aff., Doc. # 199, ¶¶ 91, 92, Ex. 6, (Prejudgment Interest); ¶¶ 93, 94, Ex. 7, (Tax Liability)).

to employ its considerable resources in its defense of an employment claim made by a single individual, after having done so and lost, its complaints about excessive fees ring hollow.

IBM objects to the number of hours incurred by Mr. Castelluccio's counsel based primarily on its characterization of Mr. Castelluccio's claims as a simple, straight forward, garden variety age discrimination case. [2] (Declaration of Zachary D. Fasman ("Fasman Decl.") Doc. # 223, ¶¶ 1, 9). However, IBM conspicuously neglects to supply the court or even reference the most persuasive evidence available to substantiate this claim: its own fees in this matter. IBM suggests that a reasonable fee for litigating this case over nearly five years, through trial and to verdict, would have been $323,036.03. The Court is left to wonder what IBM paid for its defense of this "simple" claim.

> IBM opposes Mr. Castelluccio's fee request in the following ways:
>
> (1) it seeks  a 50% reduction of fees for what it claims to be excessive billing for tasks which it characterizes as "rudimentary". (IBM's Opposition, pp. 7-10). As discussed below, IBM's arguments are based on an overly broad or erroneous reading of counsel's time entries and/or a misstatement of the events which took place in the litigation of this case;
>
> (2) it seeks a wholesale deduction of fees for matters that it claims Mr. Castelluccio abandoned, or pursued unsuccessfully. (IBM's Opposition, pp. 10-13). IBM's arguments in this regard are contrary to the applicable law, and often mistaken as to the degree of Mr. Castelluccio's success;
>
> (3) it seeks a wholesale deduction of fees for which the associated time entry contains the words "confer" or shows participation by more than one of Mr. Castelluccio's attorneys.  (IBM's Opposition, pp. 14-16).  IBM cites no law for the proposition that fees are not compensable or reasonable where attorneys confer, and certainly there is no basis to claim that an entire time entry should be disallowed simply because it includes a single reference to attorney collaboration.
>
> (4)  it seeks a complete deduction of fees allegedly billed to Mr. Castelluccio for attorney performance of secretarial tasks. (IBM's Opposition, p. 16).  A review of the time entries on which IBM relies shows that they are wholly unsupportive.

---

[2] IBM does not contest the reasonableness of the hourly rates charged by Mr. Castelluccio's counsel, and has focused its challenge on the number of hours incurred.

(5) it seeks a 35% deduction for what it labels "block billing." (IBM's Opposition, pp. 17-18). Mr. Castelluccio's counsel disagrees that he engaged in block billing as described by IBM, and further contests IBM's argument that block billing provides a basis for the fee deduction sought by IBM.

IBM's analysis of counsel's time entries contains at least the following errors making the

efficacy of IBM's analysis of Mr. Castelluccio's fees highly unreliable:

- **Fasman Decl., Ex. 9 – Opposition of IBM's Two Daubert Motions (A $26,497.50 error).** The time entries and fees that IBM attributed to Mr. Castelluccio's opposition of IBM's two <u>Daubert</u> motions are incorrect. The Court ruled on the second of IBM's <u>Daubert</u> motions on June 5, 2013 (Doc. # 127). The last time entry made by Mr. Castelluccio's counsel on that issue was on June 7, 2013. IBM's Exhibit 9 erroneously includes eighteen unrelated time entries after that date, totaling $26,497.50 in fees. Based on this mistake, IBM calculated that Mr. Castelluccio had accumulated $39,925 in fees on this issue, and seeks a deduction in that full amount. Since IBM's calculation is wrong, there is no basis to award it the deduction sought.

- **Fasman Decl., Ex. 13 – Revisions of Stipulations contained in the parties' Pretrial Memorandum. (A $8,242.50 error).** The time entries and fees that IBM attributed to Mr. Castelluccio's Motion to Revise the parties' Pretrial Memorandum (Doc. # 173) incorrectly includes time spent on an entirely different issue. IBM erroneously refers to Mr. Castelluccio's counsel's review of IBM's proposed stipulations which occurred prior to the time Mr. Castelluccio sought to revise the Joint Pretrial Memorandum. Since IBM identified the wrong time entries, there is no basis to award it the deduction sought.

- **Fasman Decl., Ex. 14 – Billing for Multiple Attorneys/Attorney Conferences. (A $2,375.00 error).** The time entries and fees that IBM attributed to counsel's supposed "duplicative billing" are incorrect. IBM erroneously lists the following time entries twice: KAS: 5/11/09, 10/20/09, 11/02/09, 11/04/09, and 11/05/09. These entries account for $2,375 in fees which IBM asks the court to deduct twice. (Fasman Decl., Ex. 14 pp. 2, 4, 13). Exhibit 14 is also flawed in that it is impossible to decipher how IBM selected the entries for which it seeks a deduction. In some instances, it appears IBM asks the court to completely disallow the fees of all the lawyers who collaborated on an issue. For example, IBM cites to "four lawyers confer about whether to make a settlement counteroffer." (IBM's Opposition, p. 15; Fasman Decl., Ex. 14). Counsel's bills show that three attorneys conferred on a settlement offer, and IBM asks that all of the time of all of the lawyers be excluded.

3

I.     **MR. CASTELLUCCIO'S FEES ARE PROPER AND REASONABLE**

   A.     **Items For Which IBM Claims Mr. Castelluccio's Counsel Billed Excessive Time**

When evaluating whether time spent by counsel was excessive, the relevant issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)(citing Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir.1990)).  As discussed below, all of the time expended by Mr. Castelluccio's attorneys was reasonable and contributed to the substantial success achieved at trial.

**Time spent drafting the Complaint (A 50% reduction sought, totaling $2,811.00)(IBM's Opposition, pp. 7-8)**

The complaint in this action is 19 pages long, includes 64 paragraphs (with subparagraphs) and four counts. (Doc. # 1).  Of the 22.3 hours billed, only 2.1 hours were performed by a partner, 19.1 hours were performed by an associate, and 1.1 hours were performed by a paralegal.  (Supplemental Affidavit of Mark R. Carta (filed herewith) ("Carta Suppl.Aff."), ¶2). Mr. Castelluccio contends that the total number of hours, including legal research and client consultations, is reasonable and requests that he be compensated for this time in full.

**Time Spent Negotiating IBM's Confidentiality Agreement (A 50% reduction sought) (IBM's Opposition, p. 8)**

IBM does not designate which time entries it asserts were related to the negotiation of its Confidentiality Agreement, but claims that the total was 25 hours. (IBM's Opposition, p. 8).  Mr. Castelluccio's counsel conducted a review of time entries during the relevant period and found that even if one were to include every minute of any entry which references the "Confidentiality Agreement," the total number of hours spent was only 12.1. (Carta Supp. Aff. ¶3  Ex. A).  Since

4

IBM is seeking a 50% reduction of the 25 hours it claims were spent, it should have no complaint with the actual total.

IBM should also bear the entire cost of the Confidentiality Agreement for the reasons that this document was put in place at IBM's sole behest using an 18-page form proposed by IBM. In addition, the agreement's sole purpose was to protect IBM's confidentiality. This document was neither required nor desired by Mr. Castelluccio. It is hard to grasp the notion that Mr. Castelluccio should be obligated to pay to protect the confidentiality of documents that ultimately proved IBM's discrimination. Therefore, IBM should compensate Mr. Castelluccio for the full cost of the Confidentiality Agreement.

**Time Spent Drafting Discovery Requests** (A 50% reduction sought, totaling $2,521.50) (IBM's Opposition, p. 8)

IBM's argument seeking the reduction of counsel's fee related to Mr. Castelluccio's discovery is flawed in two respects: it overestimates the time entries that are related to discovery[3] and underestimates the crucial role that documents obtained in discovery played in Mr. Castelluccio's success.[4]

As detailed in the Carta Supp. Aff. ¶5, IBM's documents provided strong evidence of Ms. Collins-Smee's age bias. Through them, the jury was provided with evidence that Ms. Collins-Smee offered employment opportunities to younger employees while relegating Mr. Castelluccio to the bench. It is notable that of the documents produced by IBM, IBM identified approximately 383 documents on its initial list of trial exhibits, (Doc. # 133-2) indicating that it

---

[3] The time entries which IBM claims are attributable to drafting discovery requests also erroneously include tasks such as: responding and objecting to IBM's requests for production; scheduling a settlement conference; participating in a conference call with Judge Garfinkel; and reviewing IBM's Confidentiality Agreement. (Fasman Decl.,¶7, Ex. 5).

[4] A list of the most significant documents obtained in discovery is found in the Suppl. Carta Aff. ¶5).

too considered many documents to be not only relevant to the issues of this case, but needed for trial.

Lastly, of the discovery time which IBM claims is unreasonable, only 2.5 hours was time spent by a partner, while 14.7 hours was spent by an associate. (Carta Suppl. Aff. ¶4). This appropriate division of labor evidences the efforts of Mr. Castelluccio's counsel to keep his fees as low and reasonable as possible.[5]

**Time spent opposing IBM's Summary Judgment Motion (A 50% reduction sought, totaling $35,520) (IBM's Opposition, p. 8)**

Mr. Castelluccio was successful in defeating the dozen arguments advanced by IBM in its Motion for Summary Judgment.[6]   Success is the most critical factor in determining the reasonableness of a fee award.  Farrar v. Hobby, , 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).   Both Mr. Castelluccio and IBM expended a substantial amount of time and effort related to the Summary Judgment Motion.[7] (Carta Aff., Doc. #199, ¶¶ 33-40). Nonetheless, IBM claims that 272.30 hours was an unreasonable amount of time for Mr. Castelluccio to spend.

Mr. Castelluccio disputes both IBM's calculation of the hours attributed to Mr. Castelluccio's defense of the Summary Judgment Motion, and whether these hours were reasonable.  Mr. Castelluccio's counsel calculates that approximately 240 hours were necessary to defeat IBM's motion.  (Carta Aff. Doc. #199, ¶40).  In addition, courts in this district have

---

[5] As explained in Mr. Carta's Affidavit, in May 2010, Mr. Carta voluntarily reduced his billing rate, as well as the rates of the associate and paralegal working on this matter to help alleviate some of the financial burden shouldered by Mr. Castelluccio. (Carta Aff. Doc. 199, ¶ 85).

[6] IBM's "straightforward" motion and supporting memorandum contained 12 separate legal arguments and consisted of 347 pages including supporting documents.

[7] In March of 2009, the Supreme Court decided the case of Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), redefining a plaintiff's burden in an age discrimination case.   This new standard required additional analysis, briefing and research in the preparation of Mr. Castelluccio's response to IBM's Motion.

approved up to nearly 300 hours in the defense of a summary judgment motion.  *See e.g.,* Serricchio v. Wachovia Sec., LLC, 706 F. Supp. 2d 237, 258 (D. Conn. 2010) aff'd, 658 F.3d 169 (2d Cir. 2011)(allowing compensation for 294.25 hours of attorney time spent opposing a Motion for Summary Judgment.)

IBM's counsel argues without any basis that "Mr. Carta's time records indicate that his office spent approximately three straight months working on nothing other than opposition to that straightforward motion." (IBM's Opposition, p.8)(Fasman Decl., ¶ 9).  Exhibit 6, created by IBM, reflects that Mr. Carta spent a total of 32.7 hours from October 19, 2010 to December 19, 2010; hardly all of Mr. Carta's billable time for three months.  IBM also complains about the fact that Mr. Castelluccio filed a Sur-Reply Brief.  As explained in the introduction to his Sur-Reply Brief, the filing of this pleading was necessitated by the fact that "IBM has taken liberties in its Reply with Mr. Castelluccio's testimony, misconstrued the evidence and addressed only certain discrete facts while disregarding many other material facts." (Doc. #96, p.1)

While it is true that the parties could have saved substantial time and fees had IBM not filed its Motion for Summary Judgment, once it did so, Mr. Castelluccio had no choice but to defend it to the best of his attorneys' ability.[8]  Given Judge Squatrito's favorable ruling on the Motion for Summary Judgment and Mr. Castelluccio's ultimate success at trial, counsel's time was well spent. Mr. Castelluccio seeks compensation for all of his fees incurred in defeating IBM's Summary Judgment motion.

---

[8] As was revealed at trial, IBM's tactic at the Summary Judgment stage was to have its witnesses attend their depositions purposefully unprepared.  (Tr. 1/17/14 at 1101:9-18).  In this way, IBM sought to make as few facts available to Mr. Castelluccio as possible.  Although this tactic proved unsuccessful for IBM, it did result in Mr. Castelluccio having to make additional efforts to discover facts which should have been disclosed through depositions.

**Time spent presenting Mr. Castelluccio for the Second Day of his Deposition (A 50% reduction sought, totaling $792.50) (IBM's Opposition, p. 8)**

At the time of his first deposition, Mr. Castelluccio had created and produced one document related to his efforts to mitigate damages.  After that time, he more diligently recorded his mitigation efforts on detailed spreadsheets. (P's Tr. Exs. 103, 104, 105).  Thereafter, these spreadsheets were produced to IBM in a timely fashion.  Subsequently, IBM sought to re-depose Mr. Castelluccio regarding these new documents. Mr. Castelluccio readily agreed and fully explained the steps he took after his first deposition to be a more thorough record keeper.  IBM objects to paying the fees associated with Mr. Castelluccio's second deposition arguing that it was necessitated by Mr. Castelluccio's alleged purposeful withholding or false preparation of his spreadsheets. [9]   IBM's accusation is disingenuous as Mr. Castelluccio fully explained the bases of his new spreadsheets.  Neither Mr. Castelluccio nor his counsel did anything to unnecessarily increase the already overwhelming amount of time and money necessary to prosecute this action.  Mr. Castelluccio requests that his attorneys' fees associated with his second deposition be compensated in full.

**Time Spent Preparing for Trial (A 50% reduction sought, totaling $179,583.75) (IBM Opposition, p. 8-9)**

"There exists a strong presumption that the lodestar figure represents a reasonable fee."

Detje v. James River Paper Corp., 167 F. Supp. 2d 248, 250 (D. Conn. 2001).   The reasonableness of the time Mr. Castelluccio's counsel spent in preparation for trial was validated by a verdict in his favor on all counts, granting him the relief sought in full.

IBM's argument seeking to reduce Mr. Castelluccio's fee request for time spent preparing for trial contains two sentences, one citation, and on this basis only, asks that Mr.

---

[9] IBM has already gone to great lengths to try to convince the jury that Mr. Castelluccio had purposefully withheld, or subsequently created his spreadsheets. (Tr. 1/16/14 at 683:19 to 693:25). The jury too was apparently unconvinced.

Castelluccio's fees be reduced by $179,583.75.  IBM has provided no indication of the fees it paid for trial preparation and does not identify a single unnecessary or excessive time entry. Rather, IBM simply compiled a list of time entries of work performed over eleven months, including every entry in which the word "trial" or any noun associated with trial is used.  IBM added these time entries, labeled them "trial preparation", and then claimed that it was excessive. This overly inclusive, misleading approach does not support the reduction IBM seeks.  The time spent by IBM's counsel in preparation for trial was appropriate, reasonable and necessary.   The trial of this case lasted for two weeks.  The jurors heard testimony of fourteen witnesses and 285 exhibits were entered into evidence.  By any standards, this was a complex trial for which a significant amount of preparation was necessary.[10]

### B.   Item For Which IBM Seeks A Complete Deduction of Fees on The Grounds That They Were Incurred For Abandoned or Unsuccessful Claims

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.   Normally, this will encompass all hours reasonably expended on the litigation…. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  Hensley v. Eckerhart, 461

---

[10] IBM's argument that Mr. Castelluccio's fees are excessive given the simplicity of this case misses the mark.  The degree of complexity of the issues is not always the best measure of the fees which will be necessary to litigate. The tenacity and resources of one's opponent are often more reliable indicia.  In this case, IBM vigorously defended Mr. Castelluccio's claim throughout, refusing to abandon any argument.  By way of example, IBM first raised the argument that Ms. Collins-Smee statements regarding Mr. Castelluccio's age and retirement were "stray remarks" in 2010 in its Motion for Summary Judgment.  Despite the fact that Judge Squatrito rejected the argument, IBM raised it again in an Evidentiary Memorandum filed the evening before trial, seeking to exclude Ms. Collins-Smee's statements from evidence.  (Doc. 174).  The Court denied IBM's motion. (Tr. 1/13/14 at 222:5 to 223:20). At the charging conference, after the Court declined to include IBM's requested charge regarding stray remarks, IBM again requested that the jury be charged that:"[i]nquiries about retirement are not evidence of age discrimination. …" (Tr. 1/23/14 at 1571:14-22).  The Court again declined IBM's request.  The next day, in his closing statement, IBM's counsel took the liberty of "charging the jury" himself, stating, "comments that are not close in time to the event in question -- and here the termination occurred in June 2008 -- are mere stray remarks which don't prove anything." (Tr. 1/23/14 at 1676:8-11).  Since the conclusion of trial, IBM has moved for Judgment as a matter of law, again claiming that "[i]nquiries about retirement do not establish a case of age discrimination." (IBM's Memorandum in Support of Motion for Judgment as a Matter of Law, Doc. #179. pp. 3-5). IBM's persistence in the face of repeated court rulings against it, has undoubtedly contributed to the substantial fees incurred by Mr. Castelluccio.

U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).   When determining whether fees should be reduced for abandoned or unsuccessful claims, the proper inquiry is not whether plaintiff's attempt was successful, but whether it was based on a reasonable litigation strategy.  Serricchio v. Wachovia Sec., LLC, 706 F. Supp. 2d 237, 262 (D. Conn. 2010) aff'd, 658 F.3d 169 (2d Cir. 2011).  "Preventing …prevailing parties from recovering fees for unsuccessful efforts during the course of an otherwise successful litigation may discourage attorneys from zealously representing their clients and raising novel but reasonable arguments on their behalf."  Id. (quoting Marisol A. ex. rel. Forbes v. Guiliani, 111 F. Supp.2d 381, 393 (S.D.N.Y. 2000)).

"[W]hen a plaintiff's claims for relief 'involve a common core of facts or [are] based on related legal theories,' the 'lawsuit cannot be viewed as a series of discrete claims.' Rather, the district court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" Dominic v. Consol. Edison Co. of New York, Inc., 822 F.2d 1249, 1259 (2d Cir. 1987)(quoting Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)).

**Time spent on alleged "abandoned" claims**   (IBM's Opposition, p. 12, IBM does not request a specific deduction of fees for the issues listed below).

Many of the issues which IBM labels as "abandoned" or "unsuccessful" claims were in fact litigation decisions and strategies made by Mr. Castelluccio's counsel during the course of the case in order to streamline the case and present only claims which were most likely to achieve success at trial.  (Carta Supp. Aff. ¶6). For example, early in the proceedings, Mr. Castelluccio's counsel conscientiously decided not to pursue claims of an implied contract or for retaliatory discharge.  These decisions were based upon the realization that the claims were not

strong.[11]  (Carta Supp. Aff. ¶6).  As the implied contract claim was dropped before suit was filed and was not part of the complaint, it did not have to be addressed in the summary judgment phase, and fees were minimized.  The lack of support for Mr. Castelluccio's retaliation claim was learned during discovery, and counsel withdrew that claim immediately afterward. (Carta Suppl. Aff. ¶6).  As the retaliation claim was withdrawn very early in the case (approximately 3 1/2 years prior to trial), fees on this related claims were also minimized.

Furthermore, courts in this Circuit have held that "discrimination and retaliation claims [are] factually interrelated and involve a common set of facts." Dominic, at 1259 (2d Cir. 1987) (awarding a fully compensatory fee where plaintiff was unsuccessful on his age discrimination claim, but successful on retaliation claim.); Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 184 (D. Conn. 2002).  Accordingly, Mr. Castelluccio's decision to withdraw his retaliation claim does not affect his ability to collect his entire fee.

Counsel's decision not to introduce Mr. Castelluccio's successor's earnings into evidence was also a prudent litigation decision designed to streamline the evidence at trial. (IBM's Opposition, p.12). Counsel decided that the most straightforward calculation of damages would be based on Mr. Castelluccio's past earnings although the earnings of his successors were substantially greater. A change from one reasonable litigation strategy to another does not justify a reduction of fees.  Serricchio at 262.

With regard to Mr. Castelluccio's claim that IBM violated its progressive disciplinary policy (IBM's Opposition, p. 12), Mr. Castelluccio did not abandon this claim.  Rather this issue was resolved through a ruling on IBM's Motions in Limine on which Mr. Castelluccio prevailed

---

[11] On this point, the cases cited by IBM to support a reduction of fees for abandoned claim are inapposite.  In all of the cases relied on by IBM, the "abandoned" claims were withdrawn at or immediately prior to trial. At that juncture the fees expended on the abandoned claims would have been far more substantial and counsel's decision to pursue them until the eleventh hour would be more subject to question. (IBM's Opposition, p. 13).

in part.  At the pretrial conference, the Court ruled that evidence of interim reviews would be admissible, but disallowed evidence of performance improvement plans.  The Court will recall that IBM's policy regarding interim reviews was introduced at trial through Kelton Jones.  (Tr. 1/17/14 at 1062:3 to 1065:11).   Counsel's pursuit of this evidence was reasonable, and IBM cites no authority for the proposition that a lack of complete success on a Motion in Limine is grounds to deny a successful plaintiff compensation for fees.

IBM also challenges the fees related to Mr. Castelluccio's argument at the charging conference concerning whether his pension benefits should be offset against his damage claim. (IBM's Opposition, p. 12).   IBM also characterizes this as an "abandoned claim." Mr. Castelluccio pursued this argument based on a good faith belief that an open question of law existed as to which party had the burden to establish as an offset the amount that should be deducted from Mr. Castelluccio's damages as a result of the pension payments he had received. (Carta Supp. Aff., ¶7).  After researching this issue and finding no controlling precedent, Mr. Castelluccio decided not to introduce into the record an appealable issue, and therefore did not press further his position that IBM had the burden to establish the amount of the pension offset.

IBM also contends that it should be relieved of its obligation to pay Mr. Castelluccio's fees associated with his application to amend the Case Management Plan in order to disclose a rebuttal expert.   (IBM's Opposition, p.m 12).  In July 2010, counsel sought to amend the Case Management Plan so that he could investigate the necessity of retaining a rebuttal expert to address Dr. Sodikoff's opinion.  While it is accurate that the Court denied Mr. Castelluccio's request, this does not support a reduction of his attorneys' fee award.  The proper inquiry is whether at the time, it was a reasonable litigation strategy for Mr. Castelluccio's counsel to analyze whether a rebuttal expert was necessary.  See, Hnot v. Willis Grp. Holdings Ltd., 01

12

CIV. 6558 GEL, 2008 WL 1166309 at * 1 (S.D.N.Y. Apr. 7, 2008). Mr. Castelluccio' submits that exploring the use of a rebuttal expert witness 3 ½ years before trial was a reasonable expenditure of time.

### Time spent opposing IBM's Daubert Motions (A $39,925 reduction sought) (IBM's Opposition, p. 12). [12]

IBM's first Motion to Preclude sought to disallow Dr. Crakes' testimony in its entirety. IBM has moved to disallow the time Mr. Castelluccio spent opposing this motion despite the fact that he largely prevailed in his opposition. Judge Squatrito denied IBM's motion with only one exception; Dr. Crakes was precluded from testifying as to Mr. Castelluccio's damages arising from lost stock options. Judge Squatrito reasoned that Dr. Crakes' opinion was speculative as to IBM's criteria for awarding stock options. To cure this defect, Mr. Castelluccio's counsel sought a second opinion from Dr. Crakes based on the actual restricted stock units awarded to Mr. Castelluccio's successor, Miguel Echavarria. Judge Squatrito ruled that this second approach also did not sufficiently cure the speculative nature of Dr. Crakes' opinion, and ultimately disallowed testimony on this issue. Mr. Castelluccio submits that as lost stock options and/or restricted stock units are generally recoverable in employment discrimination claims, it was appropriate for counsel to make all reasonable efforts to introduce them into evidence. Sharkey v. Lasmo (AUL Ltd.), 214 F.3d 371, 376 (2d Cir. 2000)(discussing whether prejudgment interest is appropriate on portion of ADEA damages award attributable to stock options.). Mr. Castelluccio's fee request concerning these efforts should be awarded in full.

---

[12] As discussed above, p. 3, IBM erroneously included eighteen time entries unrelated to work performed opposing IBM's Daubert motions, totaling $26, 497.50. Accordingly, IBM seeks a deduction unrelated to the fees actually billed by counsel for this task.

**Time spent deposing Brickmeier, O'Malley, Walker and Overacre (A $23,065 reduction sought) (IBM's Opposition, p. 12)**

IBM argues that Mr. Castelluccio should not be permitted to recover his fees for the depositions of Brickmeier, O'Malley, Walker and Overacre because they added nothing to the case. This argument is surprising in that IBM itself introduced excerpts from the depositions of three of these four witnesses at trial. (Tr. 1/22/14 at 1471:20 to 1503:23). Further, each of these four witnesses was deposed after being identified by IBM as having knowledge relevant to the issues in this lawsuit. Specifically, Mr. Walker was identified in IBM's Amended Rule 26(a)(1) disclosure.[13]  Brickmeier, Overacre and O'Malley were identified by IBM in response to Mr. Castelluccio's Rule 30(b)(6) deposition Notice. (Carta Supp. Aff., ¶¶ 11 and 12 Exs. D and E). Given that these witnesses were identified by IBM, Mr. Castelluccio reasonably believed their depositions to be necessary at the time they were taken. The fact that deposition excerpts of these witnesses were used at trial confirms the reasonableness of this belief.

The same argument IBM makes here was addressed and rejected by Judge Arterton in Serricchio v. Wachovia Sec., LLC, 706 F. Supp. 2d 237, 258 (D. Conn. 2010), aff'd, 658 F.3d 169 (2d Cir. 2011). There too the defendants argued that fees attributable to depositions of witnesses who were only tangentially involved in the case should be disallowed. Judge Arterton held that as the defendants had designated the witnesses pursuant to Fed. R. Civ. P. 30(b)(6) and 26, the depositions were reasonably taken and the fees associated with them were allowed in

---

[13] IBM identified Mr. Walker as having knowledge of: "Plaintiff's concern regarding his 2007 PBC evaluation, Plaintiff's search for another position within IBM, Ms. Collins-Smee's efforts to find Plaintiff another position within IBM, and Plaintiff's complaint regarding his termination from employment with IBM." (IBM's Rule 26(a)(1) Disclosure, p. 3; Carta Aff., Ex. C).

full.[14]  Mr. Castelluccio requests that he be awarded all fees associated with the depositions of O'Malley, Brickmeir, Walker and Overacre.

**Time Spent Opposing IBM's Motion to Seal** (A $12,325 reduction sought) (IBM's Opposition, p. 12)

Contrary to IBM's assertions, Mr. Castelluccio's opposition to IBM's two Motions to Seal was necessary and successful.  After IBM insisted that the parties' consent to an extensive Confidentiality Stipulation, it endeavored to further protect its "confidential" documents by filing two Motions to Seal.   Judge Squatrito denied virtually all of IBM's Motions, permitting the nondisclosure of only limited excerpts of some of the documents at issue.  One of the principal reasons given by the Court for rejecting IBM's motion was IBM's own prior disclosure of the information sought to be sealed. (Ruling on Motion to Seal, Doc. # 117, March 28, 2013, pp. 6-9, 11).   Given the extremely broad reach of the Confidentiality Stipulation, and IBM's own publication of most of the information it sought to have sealed, it was the *filing* of the Motions to Seal that was unnecessary, not Mr. Castelluccio's opposition to them.

At the time the Motions were filed, IBM also argued that Mr. Castelluccio's opposition to its Motions to Seal was inappropriate.   Indeed, IBM sought an award of costs and fees against Mr. Castelluccio for what it perceived as his wrongful opposition to its Motions.  The Court validated Mr. Castelluccio's objection by not only denying, in large part, IBM's Motions to Seal, but declining to award IBM recovery of its fees and costs.

---

[14]  The number of witnesses identified in response to Mr. Castelluccio's deposition notice was also a matter completely within IBM's control.  As each area of intended inquiry identified in Mr. Castelluccio's Rule 30(b)(6) notice concerned IBM's policies and procedures, IBM could have easily reduced the number of depositions necessary, thereby reducing costs, by educating a single witness on the various policies and procedures at issue. Krasney v. Nationwide Mut. Ins. Co., 3:06 CV 1164 JBA, 2007 WL 4365677 (D. Conn. Dec. 11, 2007).

A-1381

Case 14-2854, Document 67, 03/13/2015, 1460801, Page122 of 216
Case 3:09-cv-01145-TPS   Document 229   Filed 04/17/14   Page 16 of 24

The time spent by Mr. Castelluccio's counsel opposing IBM's Motions to Seal was appropriate and reasonable.  Mr. Castelluccio requests that he be awarded the full amount of his fees related to this issue.

**Time Spent on Mr. Castelluccio's Motion to Compel Discovery (A $8,257.50 deduction sought) (IBM's Opposition, p. 12)**

IBM's persistent failure to produce documents sought by Mr. Castelluccio in discovery and on countless occasions afterward, necessitated the filing of a Motion to Compel in advance of trial.[15]  Mr. Castelluccio sought two categories of IBM policy documents which were described by IBM's Rule 30(b)(6) witnesses. They were: documents concerning "Addressing Low Contribution" and "Addressing Unsatisfactory Performance"; and documents instructing Open Door investigators how to document their findings in a report.  IBM contends that fees associated with this Motion should not be compensated because the motion was unsuccessful. This is incorrect.

At the pretrial conference, IBM requested the Court to preclude all evidence relating to progressive discipline.  The Court overruled IBM's objection to evidence of interim reviews but sustained its objection concerning performance improvement plans.  Also at the pretrial, the Court denied IBM's Motion for Reconsideration of its preclusion of the Open Door Evidence. Based on these rulings, Mr. Castelluccio's counsel agreed not to pursue the first category of

---

[15]  The documents were first sought through Mr. Castelluccio's Request for Production of Documents dated November 6, 2009.  Mr. Castelluccio's counsel requested the documents again after they were specifically identified by IBM's 30(b)(6) witness O'Malley at her April 21, 2010 deposition. On April 30, 2010, counsel again requested the documents by letter to IBM's counsel and received no response.  On October 4, 2013, counsel contacted IBM's counsel by telephone and email and requested the documents relevant to IBM's PBC policy.  IBM's counsel responded that they had procured and produced everything that they could but indicated that he would make further inquiry. On October 24, 2013, counsel for Mr. Castelluccio contacted counsel for IBM by telephone to inquire as to the status of the outstanding request. On November 7, 2013, counsel for Mr. Castelluccio was advised that the documents would not be produced.  Finally, on or about November 13, 2013, counsel for Mr. Castelluccio was advised that IBM would not produce the documents related to the PBC procedure because it did not believe that these procedures related to Mr. Castelluccio, and that it had produced all of the documents relating to the Open Door procedure which it was willing to produce. (Affidavit of Mark R. Carta in support of Motion to Compel, Doc. # 162, ¶¶ 5-12).

documents sought in its Motion to Compel, and concluded that it did not need to pursue the second category, as all documents relating the Open Door investigation were to be precluded. The Court issued an Order denying Mr. Castelluccio's Motion to Compel as moot in light of the agreements entered into by the parties and Court. (Doc. # 170). Mr. Castelluccio's Motion to Compel would not have been necessary but for IBM's refusal to comply with its discovery obligations. Mr. Castelluccio should be compensated for these fees in full.

**Time Spent on Mr. Castelluccio's Motion to Revise the Parties' Stipulations in the Joint Trial Memorandum** (A $8,257.50 deduction sought) (IBM's Opposition, pp. 12-13)

IBM's claim that it is entitled to a deduction of time incurred by Mr. Castelluccio in seeking to revise the stipulations contained in the parties' Joint Trial Memorandum (Doc. #133) is erroneous in several respects. Initially, the time entries referenced in IBM's Exhibit 13 incorrectly included time spent on an entirely different issue. They do not pertain to Mr. Castelluccio's Motion to Revise the Joint Trial Memorandum in January 2014. Rather, they concern time spent reviewing stipulations proposed by IBM subsequent to the Court's ruling precluding evidence of the Open Door investigation in December 2013. Secondly, the amount of the reduction sought is also unfounded. IBM's Exhibit 13 lists time entries totaling $8,242.50 in fees whereas IBM seeks a deduction of the greater sum of $8,257.50.

The sequence of events with regard to the parties' stipulations concerning the Open Door investigation was as follows. Several months prior to trial, the parties filed their Joint Pretrial Memorandum, ("Pretrial Memo") which contained a number of stipulated facts regarding IBM's Open Door investigation. Pursuant to Judge Squatrito's pretrial order, the stipulated facts were to be read to the jury. Approximately one month before trial, the Court granted Mr. Castelluccio's Motion to Preclude evidence of IBM's Open Door investigation. Thereafter, IBM's counsel contacted Mr. Castelluccio's counsel seeking to enter into a revised stipulation of

facts with regard to the Open Door investigation. (Time entries listed in Fasman Decl. Ex. 13). The parties were unable to reach an agreement on such a revision. Thereafter, IBM filed a Motion for Reconsideration of the Court's Ruling on the Motion to Preclude evidence of the Open Door investigation, which the Court denied at the pretrial conference. After the Court's ruling, Mr. Castelluccio sought to revise the stipulations contained in the parties Joint Pretrial Memorandum to be consistent with the Court's ruling. By telephone conference, the Court rendered this issue moot by explaining that it did not intend to read the stipulated facts to the jury. Accordingly, it was not necessary for the Court to issue a formal ruling on Mr. Castelluccio's Motion. The time spent by Mr. Castelluccio's counsel to revise the stipulations of the Pretrial Memorandum so they were consistent with the Court's ruling was reasonable. Therefore, even had IBM cited to the correct time entries, fees for this Motion are appropriately included in Mr. Castelluccio's fee application.

### C. Items For Which IBM Contends Mr. Castelluccio's Counsel Inappropriately Staffed With More Than One Attorney (A $87,039.50 deduction sought) (IBM's Opposition, pp. 14-16)

"[I]t is not uncommon for parties to recover attorneys' fees for the collaboration of multiple attorneys on a case, when the district court decides that such collaboration is appropriate given the scope and complexity of the litigation. Barbour v. City of White Plains, 07 CIV. 3014 RPP, 2013 WL 5526234 at *6 (S.D.N.Y. Oct. 7, 2013).

IBM's approach to claiming this deduction is simple: it reviewed Mr. Castelluccio's counsels' time records, and asks the Court to deduct the entire time entry if any part of the entry contains the word "confer," indicates that two attorneys worked together or discussed an issue.[16]

---

[16] An example of a time entry which IBM seeks to entirely exclude for duplicative work is: "Review and revise mediation Position Statement; review J. Castelluccio comments and make appropriate changes; phone call to J. Castelluccio; confer with M. Carta re: proposed changes; shepardize cases in document and obtain copies of unreported cases; email Mediation Position Statement to Judge Garfinkel and J. Castelluccio; phone conference with

IBM cites no authority to support this approach, and in fact, the relevant caselaw is unsupportive. Lenhihan v. City of New York, 640 F. Supp. 822, 826(S.D.N.Y. 1986)("intra-office conferences among attorneys familiar with and working on particular litigation enhance the possibility of competent and efficient litigation, and hours spent in such conferences are not reduced under the rubric of 'billing judgment' unless the result is unproductive."); Barati v. Metro-North R. Co., 939 F. Supp.2d 153, 157 (D. Conn. 2013)(not unreasonable for attorneys to work collaboratively on a brief).

It should also be noted that at no time did Mr. Castelluccio have two partners present at any proceeding – including trial.  Mr. Castelluccio's responses to what IBM calls the most "egregious instances" of overstaffing are set forth in the Supp. Carta Aff., ¶8).  In sum, when possible, Mr. Castelluccio was either not billed or billed at a reduced rate if more than one attorney attended a deposition.  In other instances, two attorneys conferred or collaborated where it was reasonable and efficient to do so. "Prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist."  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983).

IBM's argument fails to make a distinction between collaborative work and redundant or duplicative billing.  A review of counsel's time records reveals that they reflect the former and not the latter.[17]

---

J. Castelluccio re: mediation; email correspondence re: postponing mediation, new date." 3.4 hours/$935.00 (Fasman Declar. Ex. 14, p. 7).

[17] As discussed infra, p. 3, IBM's erroneously included five time entries twice, seeking an improper deduction of $2,375 (Fasman Decl. Ex. 14, pp. 2, 4, 13).

**D.**   **Fees allegedly billed for secretarial tasks** (A $1,155.50 deduction sought)
(IBM's Opposition p. 16)

IBM selects five time entries which it inexplicably identifies as concerning secretarial tasks (Doc. # 223-15) (included among these entries are: drafting federal complaint; researching law; reviewing court rulings).   Mr. Castelluccio disagrees with the characterization of any of the tasks identified as being "secretarial work."   There is a single entry concerning the filing of the complaint, which is a paralegal task.   A review of this single time entry discloses that the filing of the Complaint was indeed performed by a paralegal and billed at a paralegal rate.   IBM is not entitled to deduct any of the fees designated on the grounds that they were fees improperly billed for secretarial work.

**II.**   **IBM'S DESCRIPTION OF COUNSEL'S TIME RECORDS AS "BLOCK BILLING" DOES NOT SUPPORT A REDUCTION OF THE FEES SOUGHT**
(A 35% deduction sought, totaling $ 173,942.47)(IBM's Opposition, pp. 17-18)

In the case of New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983), the Second Circuit described the requirements for time records in fee applications.   The Court stated, "any attorney...who applies for court-ordered compensation in this Circuit … must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."   The aggregation of multiple tasks into a single billing entry, has been held to satisfy these requirements.   Hnot v. Willis Grp. Holdings Ltd., 01 CIV. 6558 GEL, 2008 WL 1166309 at * 6 (S.D.N.Y. Apr. 7, 2008)(citing  Meriwether v. Coughlin, 727 F.Supp. 823, 827 & n.5 (S.D.N.Y. 1989).

While block billing has been cited as a basis for reducing a fee request, "courts have limited across-the-board reductions to situations 'where there was evidence  that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were

20

not all compensable, or not all compensable at the same rate." Adusumelli v. Steiner, 08 CIV. 6932 JMF, 2013 WL 1285260 (S.D.N.Y. Mar. 28, 2013).[18]  In sum, courts impose fee reductions only where block billing makes it impossible to assess the reasonableness of the time billed or to separate compensable matters from noncompensable matters.

This Court has declined to reduce an attorney fee award due to allegedly vague "block billing." In LaPlante v. Estano, 3:04-CV-322CFD, 2007 WL 2789429 (D. Conn. Sept. 25, 2007) adopted as modified, 3:04CV322 (CFD), 2008 WL 1817979 (D. Conn. Apr. 22, 2008), the Court accepted as adequate a time entry for 18.3 hours where the description of the work performed was "prepared for trial." The Court reasoned that a more verbose entry would not have been more helpful in making a determination as to whether preparation for trial was a reasonable or necessary task.

All of counsel's time entries satisfy the Carey standard, and provide the Court with a sufficient basis to assess their reasonableness.[19]  IBM does not specify which entries are improper.  This alone has been held to be sufficient to deny a defendant's request for a reduction in fees. Hnot, at *6; Adusumelli, at *4.

---

[18] S. New England Tel. Co. v. Global NAPS, Inc., CIVA 3:04-CV-2075 JC, 2007 WL 521162 at *3 (D. Conn. Feb. 14, 2007)(no fee reduction because block billing did not prevent court from assessing the reasonableness of plaintiff's fee application); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009)(denying defendant's request to reduce plaintiff's fee award based on plaintiff's use of block billing); J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03CIV.1548(GHDAJP), 2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008)("absent evidence that plaintiffs block billing has obscured [any] unreasonable billing the Court will not impose an across-the-board penalty simply because a law firm has engaged in a generally accepted billing practice.")(quoting Hnot); G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415 (S.D.N.Y. 2012)(no reduction for block billing warranted where defendant  identified no entries where the hours billed were unreasonable, or where block billing combined activities compensable at different rates.); Adusumelli v. Steiner, 08 CIV. 6932 JMF, 2013 WL 1285260 (S.D.N.Y. Mar. 28, 2013)(denying requested reduction for block billing where "there was no evidence that plaintiff's block-billing has obscured … unreasonable billing.")

[19] Each attorney and paralegal working on a case at Carta McAlister & Moore, LLC bills its clients in separate detailed entries billed at different rates, in six minute increments, and enters their time into the firm's time keeping program daily. (Carta Aff. ¶ 13).

The interpretation advanced by IBM of the unpublished opinion in Stuart v. Stuart, X08 CV020193031, 2005 WL 590433 (Conn. Super. Ct. Feb. 10, 2005) strains credulity.  IBM's *ad hominem* attack on Mr. Carta based on its distortion of this opinion is irresponsible.  IBM states that the Connecticut Superior Court disqualified 93% of the fees of Mr. Carta's firm in part as a result of so-called "block billing".  IBM then goes on to claim that in light of this past experience *"Mr. Carta deliberately engaged in block billing to conceal his time entries from subsequent judicial review."* (IBM's Opposition, pp. 17 – 18).

Here are the facts.  In the Stuart case, the Honorable Taggart Adams of the Superior Court ruled that plaintiffs' attorney's fees were recoverable on only the CUTPA count of the plaintiffs' nine count complaint.  And, with respect to that one CUPTA count on which fees were recoverable, the Court held, attorney's fees were only recoverable with respect to one of three defendants.  In addition, by all accounts, very little work was performed on the CUTPA count during the period of time Mr. Carta's former firm, Rucci Burnham, Carta & Edelberg ("RBCE"), was representing the plaintiffs.  Based on these facts, the plaintiffs only sought recovery of 15% of the fees of RBCE which it attributed to the pursuit of the CUPTA claim.  Stuart at * 4.  Not only had Mr. Carta's former firm not been representing plaintiffs for more than one and one half years at the time Judge Adams rendered his opinion, but RBCE had no input into estimating the percent of its work that plaintiffs sought to recover on the CUTPA claim against one of the three defendants as it was no longer representing the plaintiffs at the time of the fee application.

In its ruling on the plaintiffs' application for fees, the court simply found that the work performed by RBCE on the CUTPA claim *"did not reflect that fifteen percent of those bills reflected work on the CUTPA claim."* Id.  Rather, based on RBCE's detailed invoices the court found that only 6.83% of RBCE's billable time during the relevant time period was attributable

to the successful CUTPA claim.  The Judge reduced the fees sought by 8.17% from 15% to 6.83%.  At no time did Judge Adams even refer to so-called block billing or admonish RBCE for its timekeeping and billing practices.  IBM's indication to this Court that Mr. Carta's current firm was rebuked for so-called block-billing by the reduction of its fees by more than 93% is an excellent example of the type of irresponsible claim that has resulted in the escalation of attorney's fees in this civil rights case.

IBM's attempt to obtain a 35% reduction of Mr. Castelluccio's fees by simply labelling counsel's time as "block billing" is unsupported by law. No reduction should be imposed to Mr. Castellucci's attorneys' fees without proof that the hours billed were unreasonable.

**III.    CONCLUSION**

Mr. Castelluccio respectfully requests that his Motion for Attorneys' Fees be granted in full.

RESPECTFULLY SUBMITTED
THE PLAINTIFF
JAMES CASTELLUCCIO


BY:    _____/S/_____
MARK R. CARTA (ct06645)
MARGARET A. TRIOLO (ct08618)
Carta, McAlister & Moore, LLC
1120 Post Road, Post Office Box 83
Darien, Connecticut 06820
(203) 202-3100/Mark@CMM-Law.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 17, 2014, a copy of the foregoing Reply Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

THE PLAINTIFF
JAMES CASTELLUCCIO


BY:     _____/S/_____
        MARK R. CARTA (ct06645)
        Carta, McAlister & Moore, LLC
        1120 Post Road, Post Office Box 83
        Darien, Connecticut 06820
        (203) 202-3100/Mark@CMM-Law.com

24

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES CASTELLUCCIO, | : | CIVIL ACTION |
| | : | NO. 3:09 CV 1145 (TPS) |
| Plaintiff | : | |
| vs | : | |
| | : | |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | |
| | : | |
| Defendant. | : | JUNE 2, 2014 |

AFFIDAVIT OF MARK R. CARTA IN SUPPORT OF PLAINTIFF'S
SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES

STATE OF CONNECTICUT )
                      )   ss: Darien
COUNTY OF FAIRFIELD   )

Mark R. Carta, Esq., being duly sworn, deposes and says:

1.      I am over the age of eighteen and believe in the obligations of an oath.

2.      I make this affidavit on personal knowledge and in support of plaintiff James Castelluccio's ("Mr. Castelluccio") Supplemental Motion for an Award of Attorneys' Fees.

3.      I hereby incorporate by reference the statements made in my February 11, 2014 Affidavit in Support of Mr. Castelluccio's Motion for Attorneys' Fees, Prejudgment Interest, Costs and Compensation for Increased Tax Liability (Doc. # 199).

I.      **Post-Trial Legal Services**

4.      I also submit this affidavit to detail for the Court the nature and extent of the work performed for Mr. Castelluccio during the time period of February 2014 through May

2014.   The legal work performed during this time period included the research and preparation of Mr. Castelluccio's:

(a)   Motion for Attorneys' Fees;

(b)   Memorandum of Law in Support of Motion for Attorneys' Fees dated February 11, 2014 *(Doc. #198)*;

(c)   Affidavit in Support of Motion for Attorneys' Fees dated February 11, 2014 *(Doc. #199)*;

(d)   Verified Bill of Costs dated February 11, 2014 *(Doc. #200)*;

(e)   Memorandum of Law in Opposition to IBM's Post-Trial Motions dated March 26, 2014 *(Doc. #212)*;

(f)   Reply to IBM's Opposition to Mr. Castelluccio's Motion for Attorneys' Fees dated April 17, 2014 *(Doc. #229)*;

(g)   Supplemental Affidavit of Mark R. Carta in Support of Mr. Castelluccio's Reply to IBM's Opposition to Motion for Attorneys' Fees, dated April 17, 2014 *(Doc. #230)*;

(h)   Supplemental Motion for Attorneys' Fees; and;

(i)   Affidavit of Mark R. Carta in Support of Mr. Castelluccio's Supplemental Motion for Attorneys' Fees.


II.   **Mr. Castelluccio's Reasonable Attorneys' Fees**

5.   From March 2014 through and including June 2014, invoices were rendered to Mr. Castelluccio by Carta, McAlister & Moore, LLC ("CMM").  Copies of CMM's Invoices are attached hereto as Exhibit 1.   The following is a list showing the dates, invoice numbers and amount of attorneys' fees sought in each bill:

2

| Date | Invoice | Attorneys' Fees |
|------|---------|-----------------|
| | | |
| 03-05-2014 | 1959[1] | $23,565.00 |
| 04-03-2014 | 1998 | 56,225.00 |
| 05-02-2014 | 2064 | 21,475.00 |
| 06-02-2014 | 2137 | 1,095.00 |
| | | |
| | **Total** | **$102,360.00** |

      6.      Listed below are the hourly billing rates charged for each attorney and paraprofessional who performed work for Mr. Castelluccio's during the time period of February 2014 through May 2014:

| Attorney | Rate |
|----------|------|
| Mark R. Carta | $475 |
| Margaret A. Triolo | $300 |
| Darcy S. McAlister | $400 |

| Paraprofessional | Rates |
|------------------|-------|
| Suzanne J. Mulliken | $225 |
| Troy J. Bailey | $150 |

      7.      Listed below are the number of hours and amount of fees billed for each attorney and paraprofessional involved in Mr. Castelluccio's representation during the time period of February 2014 through May 2014:

---

[1] The total amount of Invoice #1959 is greater than the sum reflected above as it includes $1,304.71 in disbursements as well as attorneys' fees. Mr. Castelluccio will seek to recover this amount as well as any other compensable costs incurred at the appropriate time.

3

| Attorney | Hours | Fees |
|---|---|---|
| Mark R. Carta | 80.4 | $36,195.00 |
| Margaret A. Triolo | 207.9 | 62,370.00 |
| Darcy S. McAlister | 2.1 | 840.00 |
| **Sub-Total** | | **$99,405.00** |
| | | |
| **Paraprofessionals** | | |
| | | |
| Suzanne J. Mulliken | 6.4 | 1,440.00 |
| Troy J. Bailey | 5.2 | 1,515.00 |
| **Sub-Total** | | **$2,955** |
| **Total** | | **$102,360.00** |

Dated at Darien, Connecticut this 2nd day of June, 2014.

MARK R. CARTA, Affiant

Subscribed and sworn to before me this 2nd day of June, 2014.

Notary Public
My Commission Expires: ROSE ROBIN ELIZABETH BRADSHAW
NOTARY PUBLIC
STATE OF CONNECTICUT
My Commission Expires March 31, 2018

4

<u>CERTIFICATE</u> <u>OF</u> <u>SERVICE</u>

I hereby certify that on June 2, 2014, a copy of the foregoing Affidavit of Mark R. Carta in Support of Plaintiff's Supplemental Motion for Attorneys' Fees and Costs was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

THE PLAINTIFF
JAMES CASTELLUCCIO

BY:        _____/S/(ct06645)_____
           MARK R. CARTA (ct06645)
           Carta, McAlister & Moore, LLC
           1120 Post Road, Post Office Box 83
           Darien, Connecticut 06820
           (203) 202-3100 (phone) - (203) 202-3102 (facsimile)
           Mark@CMM-Law.com

**A-1395**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES CASTELLUCCIO, | Civil Action No. 3:09-cv-1145 (TPS) |
| Plaintiff, | |
| - against - | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | June 23, 2014 |
| Defendant. | |

## <u>DECLARATION OF ZACHARY D. FASMAN</u>

I, Zachary D. Fasman, hereby certify as follows:

1.      I am an Attorney-at-Law admitted *pro hac vice* to practice before the United States District Court for the District of Connecticut, a member of the New York and District of Columbia bars, and a Partner at the firm of Proskauer Rose LLP, attorneys for Defendant International Business Machines Corporation ("IBM" or "Defendant").  I make this declaration in support of Defendant's Opposition to Plaintiff's Supplemental Motion for Attorneys' Fees and Costs.

2.      Attached as **Exhibit A** is a true and correct copy of Plaintiff's counsel's invoices (Document 232 at 7-20) that are highlighted as follows:  those entries marked in yellow represent time and costs incurred by Plaintiff in preparing his bill of costs and fee application; those marked in blue represent time spent by Plaintiff's various lawyers conferring with each other concerning various aspects of the bill of costs, fee application, and other post-trial motions.

3.      IBM submits that the time marked in yellow (119.80 hours or $40,642.50) for time spent preparing a bill of costs and fee application and supporting documents is excessive for what should have been routine tasks for lawyers with a purported expertise in employment law and litigation.

4.      IBM, therefore, requests that the excessive number of hours spent by Plaintiff's counsel for these rudimentary tasks be reduced by no less that 50% to **59.9 hours or $20,321.25**.

5.      Plaintiff once again also impermissibly seeks total reimbursement for items billed which were redundant and duplicative.  As the blue highlighted entries represent, Mr. Carta and his partners, associates, and paralegals submitted block-bills totaling 56.1 hours or $46,337.50 that include numerous entries for joint participation in internal meetings and conferences discussing matters other than the bill of costs and fee application discussed above.[1]

6.      This resulted in redundant billing for joint telephone conferences and meetings with one another when discussing scheduling matters, sharing case strategies, updating each other as to the status of the case, and reviewing each other's written work product.

7.      Though Plaintiff's counsel's block-billing makes it again impossible to identify how much of that time was spent on legitimate tasks, IBM submits that this time should be cut by at least one-third and that Plaintiff's supplemental fee application should be reduced by **18.7 hours** or **$15,445.83**.

8.      Finally, the Court can readily observe the volume of block-billing employed once again by Plaintiff's attorneys, suggesting that counsel engaged in block billing to conceal his

---

[1] Block-bills totaling an additional 81.3 hours or $24,155.00 include time Plaintiff's lawyers spent jointly participating in internal meetings and conferences discussing the bill of costs and fee application.

time entries from subsequent judicial review.  A reduction of all $66,592.92 (representing remaining time entries not already excluded) is warranted and IBM, therefore requests that Plaintiff's fee application be discounted by an additional **$29,966.81**.

9.     In sum, $35,767.08 (representing the reduction for excessive and redundant fees), plus $29,966.81 (the 45% across-the-board block-billing reduction) equals IBM's total requested reduction of <u>$65,733.90</u>.

10.     IBM, therefore, respectfully requests that Plaintiff's supplemental motion for attorney's fees be denied or, alternatively, Plaintiff's requested reimbursement of attorney's fees should be should be reduced by a total of **$65,733.90** and that no more than **$36,621.11** be awarded.

Dated:  June 23, 2014
        New York, New York                    PROSKAUER ROSE LLP


                                    By:     /s/ *Zachary D. Fasman*
                                          _____
                                          Zachary D. Fasman (phv0899)

# Fasman Declaration,

# Exhibit A

# Carta, McAlister & Moore LLC

## INVOICE

1120 Boston Post Road
Darien, Connecticut 06820
Phone: 203-202-3100

Invoice # 1959
Date: 03/05/2014
Due On: 04/04/2014

James Castelluccio
85 Davenport Farm Lane E
Stamford, Connecticut 06903

**00033-Castelluccio**

**Employment Claims Against International Business Machines Corporation**

### Services

| Date | Description | Attorney | Quantity | Rate | Total |
|---|---|---|---|---|---|
| 02/03/2014 | Research law regarding ability to recover attorneys' fees when defending appeal of ADEA case; draft email to M. Carta and J. Castelluccio regarding same. | Margaret Ann Triolo | 1.80 | $300.00 | $540.00 |
| 02/04/2014 | Draft, revise and review Memorandum of law regarding application for fees, costs, prejudgment interest and tax liability; conference with T. Bailey regarding fee calculations and outstanding invoices for costs; contact attorneys regarding affidavits, economist regarding tax and prejudgment interest calculation and court reporter regarding outstanding invoices. | Margaret Ann Triolo | 3.80 | $300.00 | $1,140.00 |
| 02/05/2014 | Continue working on calculation of attorney's fees and expenses for Affidavit of Attorney's Fees and Bill of Costs | Troy Bailey | 1.50 | $150.00 | $225.00 |
| 02/05/2014 | Call with T. Bailey about his progress; call with M. Triolo regarding fee application and Motion to Stay; review M. Triolo's draft fee application; review M. Triolo's email on right to recover attorney's fees on Appeal; work on my Affidavit in Support of Reasonable Fees; review IBM's Motion for Stay and renewal of Rule 50 Motion | Mark Carta | 1.80 | $475.00 | $855.00 |
| 02/05/2014 | Conference with M. Carta regarding attorneys' fees application and IBM's pending motions; research law regarding calculations of prejudgment interest and costs recoverable; revise and review Memorandum of Law in support of application for fees, costs, taxes and prejudgment interest; contact court reporter regarding transcripts and invoices. | Margaret Ann Triolo | 2.20 | $300.00 | $660.00 |
| 02/06/2014 | Draft insert to M. Carta's Affidavit regarding Discovery; confer with T. Bailey about retainer letters and Bill of Costs; | Mark Carta | 3.30 | $475.00 | $1,567.50 |

Invoice # 1959 - 00033-Castelluccio - 03/05/2014

| | | | | | |
|---|---|---|---|---|---|
| | meet with T. Bailey and M. Triolo to discuss revisions to Bill of Costs and Attorney's Fee Application; review Dr. Crakes calculations; call Dr. Crakes regarding his two calculations | | | | |
| 02/06/2014 | Conference with M. Carta regarding revisions to attorneys' fees affidavit; meeting with M. Carta and T. Bailey regarding Bill of Costs and items recoverable; review draft pleadings; research law regarding policy behind allowing recovery of attorneys' fees to civil rights plaintiffs; forward draft affidavit to client; review invoices; review file regarding discovery proceedings; revise Memorandum of Law. | Margaret Ann Triolo | 7.30 | $300.00 | $2,190.00 |
| 02/07/2014 | Further revisions to M. Carta's Affidavit; confer with M. Triolo about suggested inclusions to Affidavits; call J. Castelluccio | Mark Carta | 1.40 | $475.00 | $665.00 |
| 02/07/2014 | Revise and review affidavit in support of motion for attorneys' fees; draft bios for other attorneys for whom we are seeking to recover fees; email attorney D. Shaw regarding affirmation and attorney experience; conferences with M. Carta regarding Memorandum of Law; revise Motion; conference with T. Bailey regarding preparation of Bill of Costs; research law regarding items allowable as costs to prevailing parties in ADEA actions; review invoices regarding same; revise Memorandum of Law. | Margaret Ann Triolo | 7.50 | $300.00 | $2,250.00 |
| 02/08/2014 | Final edit and check of M. Carta's Affidavit; email and calls with M. Triolo and T. Bailey | Mark Carta | 1.50 | $475.00 | $712.50 |
| 02/09/2014 | Continue working on calculation of attorney's fees and expenses for Affidavit of Attorney's Fees and Bill of Costs | Troy Bailey | 1.70 | $150.00 | $255.00 |
| 02/09/2014 | Exchange emails with M. Triolo; call T. Bailey; review Motion for Attorney's Fees, etc. | Mark Carta | 0.50 | $475.00 | $237.50 |
| 02/09/2014 | Revise and review Motion and Memorandum of Law regarding Motion for Attorneys' fees and costs; review caselaw regarding awards of attorneys' fees to civil rights plaintiffs | Margaret Ann Triolo | 2.60 | $300.00 | $780.00 |
| 02/10/2014 | Final review of Memorandum of Law and M. Carta's Affidavit; call and email J. Castelluccio | Mark Carta | 0.50 | $475.00 | $237.50 |
| 02/10/2014 | Revise and review Motion, Memorandum of Law, Affidavit and Bill of Costs; review rules regarding Attorneys' Fees application; review legal research regarding recovery of expert fees as costs in ADEA action; conference with M. Carta regarding same; finish preparation of attorney bios for affidavit; research law regarding recovering mediation fees as costs; review calculations. | Margaret Ann Triolo | 8.80 | $300.00 | $2,640.00 |
| 02/11/2014 | Review Bill of Costs and verify all amounts; add explanation of Dr. Crakes' calculations; call M. Triolo; add reference to additional factors court can consider in awarding attorneys' fees; sign all pleadings | Mark Carta | 1.60 | $475.00 | $760.00 |

Invoice # 1959 - 00033-Castelluccio - 03/05/2014

| 02/12/2014 | Meet with M. Triolo to discuss next steps; confer with T. Bailey about Bill of Costs | Mark Carta | 0.30 | $475.00 | $142.50 |
| 02/12/2014 | Research law regarding rule 59 and Rule 50 post verdict standards. | Margaret Ann Triolo | 1.80 | $300.00 | $540.00 |
| 02/18/2014 | Confer with M. Triolo; call A. Woods; call Z. Fasman; review Motion for Stay filed by IBM; work with M. Triolo on Stipulation RE: Motion for Stay; review edits of Z. Fasman; go final; email explanation to J. Castelluccio | Mark Carta | 1.40 | $475.00 | $665.00 |
| 02/18/2014 | Review law regarding motions for stay; conference with M. Carta regarding standards for granting motion for stay; telephone conference with A. Woods and Z. Fasman regarding same; prepare Stipulation for Stay; revise same; calculate upcoming deadlines; research law regarding Post-Trial motions | Margaret Ann Triolo | 3.60 | $300.00 | $1,080.00 |
| 02/24/2014 | Confer with M. Triolo (NO CHARGE) | Mark Carta | 0.20 | $0.00 | $0.00 |
| 02/24/2014 | Continue research on law regarding Post-Trial motion standards and potential waiver of arguments; review trial transcripts; conference with M. Carta regarding same | Margaret Ann Triolo | 2.50 | $300.00 | $750.00 |
| 02/26/2014 | Review IBM's post-trial motion and memorandum of law; review trial transcripts regarding arguments in opposition to motion; research law regarding statements made by counsel as a basis for a motion for new trial | Margaret Ann Triolo | 5.20 | $300.00 | $1,560.00 |
| 02/27/2014 | Review replacement exhibit binders to forward to court; research law regarding waiver of objections to verdict inconsistencies and regional bias; draft, revise and review Memorandum of law in Opposition to IBM's post- trial motions | Margaret Ann Triolo | 3.60 | $300.00 | $1,080.00 |
| 02/27/2014 | Sign letter to Judge Smith | Mark Carta | 0.10 | $475.00 | $47.50 |
| 02/28/2014 | Draft, revise and review Memorandum of law in Opposition to IBM's post- trial motions; review case law and trial transcripts re: same; review trial exhibits; conference with M. Carta re arguments and responses | Margaret Ann Triolo | 6.30 | $300.00 | $1,890.00 |
| 02/28/2014 | Review Z. Fasman's letter to Court; confer briefly with M. Triolo | Mark Carta | 0.20 | $475.00 | $95.00 |

|  |  | **Services Subtotal** | **$23,565.00** |

## Expenses

| Date | Description | Quantity | Rate | Total |
|------|-------------|----------|------|-------|
| 02/19/2014 | Court Reporter Invoice for partial Trial Transcripts | 1.00 | $1,279.71 | $1,279.71 |

Invoice # 1959 - 00033-Castelluccio - 03/05/2014

| 02/19/2014 | Federal Express Charge - Trial Transcripts | | 1.00 | $25.00 | $25.00 |
|---|---|---|---|---|---|
| | | | **Expenses Subtotal** | | **$1,304.71** |

| Time Keeper | Position | Quantity | Rate | Total |
|---|---|---|---|---|
| Mark Carta | Attorney | 12.6 | $475.00 | $5,985.00 |
| Mark Carta | Attorney | 0.2 | $0.00 | $0.00 |
| Margaret Ann Triolo | Attorney | 57.0 | $300.00 | $17,100.00 |
| Troy Bailey | Non-Attorney | 3.2 | $150.00 | $480.00 |
| | | | **Subtotal** | **$24,869.71** |
| | | | **Total** | **$24,869.71** |

Please make all amounts payable to: Carta, McAlister & Moore LLC

Please pay within 30 days.

# Carta, McAlister & Moore LLC

**INVOICE**

1120 Boston Post Road
Darien, Connecticut 06820
Phone: 203-202-3100

Invoice # 1998
Date: 04/03/2014
Due On: 05/03/2014

James Castelluccio
85 Davenport Farm Lane E
Stamford, Connecticut 06903

**00033-Castelluccio**

## Employment Claims Against International Business Machines Corporation

| Date | Description | Attorney | Quantity | Rate | Total |
|------|-------------|----------|----------|------|-------|
| 03/03/2014 | Draft, revise and review Memorandum of law in Opposition to IBM's post- trial motions; review trial transcripts; draft email to client regarding jury calculation of verdict; review jury's calculations and exhibits regarding proof of damages | Margaret Ann Triolo | 4.00 | $300.00 | $1,200.00 |
| 03/05/2014 | Conference with M. Carta regarding Memorandum of Law in opposition to Motion for New Trial; review trial transcripts; draft, revise and review memorandum; review caselaw; review pleadings regarding IBM repetition of arguments; review deadline for IBM's objection to Motion for Attorney's Fees | Margaret Ann Triolo | 5.30 | $300.00 | $1,590.00 |
| 03/05/2014 | Review IBM's Memorandum of Law RE Directed Verdict and new Trial; take notes; meet on same with M. Triolo; confer with M. Triolo about IBM's deadline for objecting to fees | Mark Carta | 3.80 | $475.00 | $1,805.00 |
| 03/06/2014 | Review trial transcripts; review IBM argument regarding reduction of emotional distress award; review trial transcripts regarding evidence of emotional distress; review caselaw regarding damage awards; draft emails to S. Mulliken; draft, revise and review memorandum of law in opposition to post trial motion | Margaret Ann Triolo | 4.50 | $300.00 | $1,350.00 |
| 03/06/2014 | Confer with M. Triolo about using S. Mulliken on limited issue of emotional distress damages; review Motion for Stay and email Z. Fasman regarding Fee Application; call with Z. Fasman | Mark Carta | 0.70 | $475.00 | $332.50 |
| 03/07/2014 | Draft, revise and review memorandum of law in opposition to post-trial motions; review previous pleadings regarding caselaw and responses to IBM's arguments; review trial transcripts | Margaret Ann Triolo | 3.20 | $300.00 | $960.00 |

Invoice # 1998 - 00033-Castelluccio - 04/03/2014

| 03/07/2014 | Continue review of IBM's Memorandum of Law, review Z. Fasman's letter to the Court; long meeting with M. Triolo to review my additional comments on the IBM's Memorandum; call with Judge's law clerk regarding Z. Fasman's letter | Mark Carta | 3.90 | $475.00 | $1,852.50 |
|---|---|---|---|---|---|
| 03/08/2014 | Review Trial testimony of K. Jones and make notes for our Memorandum | Mark Carta | 2.60 | $475.00 | $1,235.00 |
| 03/09/2014 | Review trial transcripts regarding citations for Memorandum of law; research law regarding emotional distress award and sympathy; draft legal argument; review law regarding remittitur and emotional distress damages | Margaret Ann Triolo | 2.20 | $300.00 | $660.00 |
| 03/10/2014 | Draft, revise and review Memo of law in opposition to post-trial motions; draft argument regarding inconsistencies in jury verdict; review trial transcripts and exhibits; review client emails; revise memorandum regarding mitigation and band 10 position | Margaret Ann Triolo | 4.80 | $300.00 | $1,440.00 |
| 03/10/2014 | Review and respond to various emails between J. Castelluccio and M. Triolo; compile a set of Trial Transcripts and Post-Trial Pleadings for J. Castelluccio | Troy Bailey | 0.70 | $150.00 | $105.00 |
| 03/10/2014 | Review voice message from J. Castelluccio; confer with M. Triolo; call S. Mulliken about help on Memorandum of Law; call to J. Castelluccio regarding jury calculation | Mark Carta | 0.40 | $475.00 | $190.00 |
| 03/11/2014 | Conference with S. Mulliken regarding emotional distress issue; draft revise and review memorandum of law in opposition to IBM's post-trial motions; review trial transcripts; draft arguments regarding evidence of planned retirement age and shifting reasons for termination; review trial exhibits; review caselaw regarding circumstantial evidence | Margaret Ann Triolo | 7.50 | $300.00 | $2,250.00 |
| 03/11/2014 | Quick call with J. Castelluccio about our response to IBM's Post Trial motions; review Judge Bryant's decision in Hasemann vs. UPS; review email from Z. Fasman regarding Dr. Crakes' calculation of tax penalty | Mark Carta | 0.60 | $475.00 | $285.00 |
| 03/11/2014 | Call with M. Carta regarding assisting with brief on issue related to jury award of compensatory damages, meeting with M. Triolo regarding cases on awards of compensatory damages, review of trial transcript of Castelluccio's testimony related to emotional distress; review of IBM's brief related to damages awarded for emotional distress; review of New York cases on damages for emotional distress | Suzanne Mulliken | 2.00 | $225.00 | $450.00 |
| 03/12/2014 | Discussion with M. Triolo regarding arguments related to upholding award of damages for emotional distress; review of New York cases on damages for emotional distress | Suzanne Mulliken | 0.60 | $225.00 | $135.00 |
| 03/12/2014 | Conference with M. Carta regarding willfulness argument ; revise and draft same; draft and revise Memorandum of law; research law regarding standards application to motions for | Margaret Ann Triolo | 7.50 | $300.00 | $2,250.00 |

Invoice # 1998 - 00033-Castelluccio - 04/03/2014

| | | | | | |
|---|---|---|---|---|---|
| | new trial based on evidentiary errors; review trial transcripts for citations | | | | |
| 03/12/2014 | Prepare Motion for Extension of Time; confer with M. Carta | Troy Bailey | 0.50 | $150.00 | $75.00 |
| 03/12/2014 | Confer with M. Triolo regarding progress on Brief; call Z. Fasman regarding Local Rule prohibiting jury contact, motion to extend time and agreement to enlarge Brief if needed | Mark Carta | 0.50 | $475.00 | $237.50 |
| 03/13/2014 | Discussion with M. Triolo regarding arguments related to upholding award of damages for emotional distress, review of New York cases on damages for emotional distress; researching additional cases; drafting memorandum responding to IBM's argument to vacate jury award of damages for emotional distress | Suzanne Mulliken | 3.80 | $225.00 | $855.00 |
| 03/13/2014 | Review Court Order regarding filing of Opposition to Fee Application; confer with T. Bailey and M. Triolo about deadlines and our filing a Supplemental Application for Fees; follow-up call to Dr. Crakes | Mark Carta | 0.50 | $475.00 | $237.50 |
| 03/13/2014 | Research law regarding standard for Motion for new trial based on insufficiency of evidence; revise memo of law regarding same; conference with S. Mulliken regarding emotional distress argument; draft argument regarding sufficiency of evidence of willfulness, research law regarding same | Margaret Ann Triolo | 6.80 | $300.00 | $2,040.00 |
| 03/14/2014 | Work on revising our Memorandum in Opposition to IBM's Motion for New Trial; confer with M. Triolo | Mark Carta | 2.50 | $475.00 | $1,187.50 |
| 03/14/2014 | Revise and review emotional distress argument; research law regarding various standards on motion for new trial, revise memorandum of law; conference with M. Carta regarding draft brief and revisions; review transcript regarding objections to rulings on evidence and jury instructions | Margaret Ann Triolo | 7.30 | $300.00 | $2,190.00 |
| 03/16/2014 | Begin redlining M. Carta's revisions to Memorandum in Opposition (NO CHARGE) | Troy Bailey | 1.00 | $0.00 | $0.00 |
| 03/17/2014 | Review answer from Dr. Crakes; respond to Z. Fasman's email; confer with M. Triolo about my preliminary edits to our Memorandum of Law; confer with T. Bailey; make several edits to beginning of Memorandum | Mark Carta | 1.20 | $475.00 | $570.00 |
| 03/17/2014 | Revise and review argument regarding emotional distress damages; review caselaw; conference with M. Carta regarding memo of law; review trial transcripts regarding citations; input citations into brief | Margaret Ann Triolo | 4.80 | $300.00 | $1,440.00 |
| 03/18/2014 | Finish review of K. Jones' trial testimony; review Z. Fasman's closing argument; work on revisions to Memorandum; confer with T. Bailey and M. Triolo; call with J. Castelluccio | Mark Carta | 5.80 | $475.00 | $2,755.00 |

**A-1406**

Invoice # 1998 - 00033-Castelluccio - 04/03/2014

| | | | | | |
|---|---|---|---|---|---|
| 03/18/2014 | Revise and review stray remark argument for Memo of law in opposition to IBM post trial motions; review summary judgment pleadings and IBM brief in support of summary judgment regarding stray remarks; review caselaw regarding same | Margaret Ann Triolo | 5.80 | $300.00 | $1,740.00 |
| 03/19/2014 | Work with M. Carta and M. Triolo on revisions to Memorandum in Opposition to IBM's 59 Motion | Troy Bailey | 2.00 | $150.00 | $300.00 |
| 03/19/2014 | Further revisions to Memorandum of Law; meetings with M. Triolo to discuss my proposed edits and questions; follow-up meeting with M. Triolo | Mark Carta | 2.90 | $475.00 | $1,377.50 |
| 03/19/2014 | Meeting with M. Carta regarding revisions to memo of law 2 times; revise and draft memo; review transcripts regarding citations; review exhibit lists; review jury charge and IBM proposed charge; review court ruling on stray remarks Motion in Limine; review IBM motion re: same; revise stray remarks argument | Margaret Ann Triolo | 6.00 | $300.00 | $1,800.00 |
| 03/20/2014 | Meet with M. Triolo on recent revisions; email J. Castelluccio; review voice message from Z. Fasman; letter from Dr. Crakes with invoices | Mark Carta | 0.30 | $475.00 | $142.50 |
| 03/20/2014 | Revise and review memo of law; conference with M. Carta; Review transcripts for citations; revise evidentiary argument; review court order regarding Open Door motion in limine; review caselaw regarding standard for Motion for New Trial on Evidentiary issues; review open door exhibits | Margaret Ann Triolo | 6.50 | $300.00 | $1,950.00 |
| 03/21/2014 | Revise Memorandum of Law; conference with M. Carta regarding IBM's preclusion of evidence argument; review federal rules regarding evidentiary error; review IBM internal investigation documents; review IBM argument regarding preclusion of evidence; revise arguments regarding direct and circumstantial evidence; review case citations | Margaret Ann Triolo | 6.20 | $300.00 | $1,860.00 |
| 03/21/2014 | Confer with M. Triolo about Preliminary Statement; exchange emails with J. Castelluccio and Z. Fasman | Mark Carta | 0.50 | $475.00 | $237.50 |
| 03/22/2014 | Work on editing Memorandum of Law | Mark Carta | 1.50 | $475.00 | $712.50 |
| 03/23/2014 | Revise and review memorandum of law; review J. Castelluccio email regarding revisions to memo of law; review legal research regarding willfulness; prepare table of authorities; revise argument regarding circumstantial evidence | Margaret Ann Triolo | 2.00 | $300.00 | $600.00 |
| 03/24/2014 | Review J. Castelluccio comments to draft Memo of Law; conference with M. Carta and J. Castelluccio re: same; review legal research on evidence of willfulness; revise and review legal argument; review transcripts; review motion for additional pages; review IBM Memo of Law; conferences with M. Carta regarding revisions to Memo | Margaret Ann Triolo | 5.80 | $300.00 | $1,740.00 |

| 03/24/2014 | Meet with M. Triolo to review and discuss edits proposed by J. Castelluccio; meet with J. Castelluccio regarding same; review Trial Transcript of K. Holmes' testimony and G. Walker excerpt; meet with M. Triolo regarding my recent edits and hers; make further edits and add additional transcript references from K. Jones, K. Holmes and G. Walker | Mark Carta | 7.70 | $475.00 | $3,657.50 |
| 03/24/2014 | Confer with M. Triolo; draft Motion for Permission to Exceed Page Limitation | Troy Bailey | 0.30 | $150.00 | $45.00 |
| 03/24/2014 | Confer with J. Castelluccio on whether his actual birth date was "spoken" on the record and reviewing Trial Exhibits to identify any document that contains his actual birth date; work with M. Carta and M. Triolo on revisions to the Memorandum | Troy Bailey | 1.60 | $150.00 | $240.00 |
| 03/24/2014 | Work on draft Supplemental Affidavit in Support of Motion for Attorney's Fees | Troy Bailey | 0.80 | $150.00 | $120.00 |
| 03/25/2014 | Review recent edits and work on Preliminary Statement; confer with M. Triolo and T. Bailey; make revisions to willfulness arguments in Memorandum; review transcript of Charging Conference on willfulness issue; call Z. Fasman | Mark Carta | 3.80 | $475.00 | $1,805.00 |
| 03/25/2014 | Revise and review Memorandum of law; draft and edit preliminary statement; conference with M. Carta regarding willfulness argument; review transcripts for citations; review transcripts regarding evidence of IBM's internal investigation, and circumstantial evidence argument. | Margaret Ann Triolo | 4.30 | $300.00 | $1,290.00 |
| 03/26/2014 | Review Memorandum of Law in its entirety; meeting with M. Triolo to discuss and propose revisions | Darcy McAlister | 2.10 | $400.00 | $840.00 |
| 03/26/2014 | Meet with M. Triolo regarding Preliminary Statement and my insert to willfulness argument; review Supplemental Affidavit; review email from Z. Fasman; search emails; email to Z. Fasman and J. Castelluccio; call J. Castelluccio; add insert to willfulness argument; meeting with M. Triolo on her final review; make final edits | Mark Carta | 5.40 | $475.00 | $2,565.00 |
| 03/26/2014 | Meeting with M. Carta regarding revisions to memorandum; meeting with D. McAlister re: same; revise and review Memo of Law; draft, and revise preliminary statement; review trial transcripts; revise table of authorities; review legal research regarding awards of attorneys' fees for post-judgment motions and proceedings; revise and review Motion for Supplemental Attorneys' Fees. | Margaret Ann Triolo | 9.30 | $300.00 | $2,790.00 |
| 03/27/2014 | Meet with T. Bailey and M. Triolo regarding Supplemental Motion for Attorney's Fees; review M. Triolo's email with summary of pertinent rules and time frames | Mark Carta | 0.30 | $475.00 | $142.50 |
| 03/27/2014 | Revise and review motion for supplemental fees and affidavit in support thereof; review caselaw regarding fees awarded for post-trial proceedings and fee applications; Research law | Margaret Ann Triolo | 1.50 | $300.00 | $450.00 |

Invoice # 1998 - 00033-Castelluccio - 04/03/2014

| | | | | | |
|---|---|---|---|---|---|
| | ==regarding deadline for filing Supplemental motion for fees;== ==conference with M. Carta regarding same== | | | | |
| 03/31/2014 | Call with Z. Fasman regarding settlement | Mark Carta | 0.30 | $475.00 | $142.50 |

| Time Keeper | Position | Quantity | Rate | Total |
|---|---|---|---|---|
| Mark Carta | Attorney | 45.2 | $475.00 | $21,470.00 |
| Darcy McAlister | Attorney | 2.1 | $400.00 | $840.00 |
| Margaret Ann Triolo | Attorney | 105.3 | $300.00 | $31,590.00 |
| Troy Bailey | Non-Attorney | 5.9 | $150.00 | $885.00 |
| Troy Bailey | Non-Attorney | 1.0 | $0.00 | $0.00 |
| Suzanne Mulliken | Non-Attorney | 6.4 | $225.00 | $1,440.00 |
| | | | Subtotal | $56,225.00 |
| | | | Total | $56,225.00 |

Please make all amounts payable to: Carta, McAlister & Moore LLC

Please pay within 30 days.

Page 6 of 6

# Carta, McAlister & Moore LLC

## INVOICE

1120 Boston Post Road
Darien, Connecticut 06820
Phone: 203-202-3100

Invoice # 2064
Date: 05/02/2014
Due On: 06/01/2014

James Castelluccio
85 Davenport Farm Lane E
Stamford, Connecticut 06903

**00033-Castelluccio**

**Employment Claims Against International Business Machines Corporation**

| Date | Description | Attorney | Quantity | Rate | Total |
|------|-------------|----------|----------|------|-------|
| 04/01/2014 | Exchange emails with Z. Fasman regarding request for additional pages to IBM's Reply Brief; update J. Castelluccio and M. Triolo. | Mark Carta | 0.30 | $475.00 | $142.50 |
| 04/03/2014 | Review IBM's Memorandum of Law in Opposition to Application for Attorneys' Fees. | Margaret Ann Triolo | 0.50 | $300.00 | $150.00 |
| 04/04/2014 | Review IBM's Opposition to Attorneys' Fees application, Fasman affidavit and exhibits | Margaret Ann Triolo | 1.50 | $300.00 | $450.00 |
| 04/05/2014 | Review caselaw cited by IBM in Memo in Opposition to Motion for attorneys' fees; research law regarding reductions of sought; conference with M. Carta regarding preparation of Reply memo. | Margaret Ann Triolo | 2.80 | $300.00 | $840.00 |
| 04/07/2014 | Review Z. Fasman's Declaration and Exhibits thereto; review IBM's Memorandum in Support and make extensive notes; meeting with M. Triolo to begin review of my notes; review Stuart v. Stuart opinion and draft reply | Mark Carta | 5.70 | $475.00 | $2,707.50 |
| 04/07/2014 | Meeting with M. Carta to discuss Reply to IBM Opposition to Attorneys' fees application; review Fasman Affidavit and exhibits regarding requested deductions from fee request; review legal research regarding fee applications; research law regarding block billing. | Margaret Ann Triolo | 3.60 | $300.00 | $1,080.00 |
| 04/08/2014 | Meeting with M. Triolo to review my comments on Memorandum in Opposition to Fees; confer with T. Bailey about Kosinski opinion | Mark Carta | 1.00 | $475.00 | $475.00 |
| 04/08/2014 | Conference with M. Carta regarding Reply to IBM's Opposition to Attorneys Fees' application; Review following documents to prepare Reply Brief: Fasman Declaration; IBM | Margaret Ann Triolo | 4.00 | $300.00 | $1,200.00 |

Invoice # 2064 - 00033-Castelluccio - 05/02/2014

| | | | | | |
|---|---|---|---|---|---|
| | Motion to Seal with supporting Memorandum; Court ruling regarding Motion to seal; IBM 26(a) Disclosures; IBM requests for reduction of attorneys' fees spent on various tasks; review records of time spent and fees charged | | | | |
| 04/09/2014 | Meeting with M. Carta regarding block billing argument in IBM Brief in Opposition to Motion for Attorneys' Fees; research law regarding same; draft argument regarding pretrial stipulations; review time records regarding same; review IBM Reply brief re: Rule50/59 Motions. | Margaret Ann Triolo | 2.80 | $300.00 | $840.00 |
| 04/09/2014 | Finish review with M. Triolo of my comments and counter arguments to IBM's Memorandum in Opposition to Castelluccio's fees | Mark Carta | 1.10 | $475.00 | $522.50 |
| 04/10/2014 | Draft, revise and review Reply Memorandum of Law regarding attorneys' fees application; review invoices regarding time spent on Summary Judgment Motion; negotiating confidentiality agreement and discovery requests; review confidentiality agreement; review IBM exhibit list; Review trial transcripts; review correspondence regarding discovery and IBM designation of Rule 30(b)(6) witnesses; draft declaration in support of Reply brief | Margaret Ann Triolo | 5.50 | $300.00 | $1,650.00 |
| 04/11/2014 | Draft, revise and review Reply memorandum of law regarding attorneys fees application; research law regarding awards of fees; review time billed for summary judgment opposition; review time allegedly overstaffed; review legal research regarding fees awarded for attorney conferences and multiple attorneys attending events; review Motion to Compel. | Margaret Ann Triolo | 4.80 | $300.00 | $1,440.00 |
| 04/14/2014 | Review IBM's Reply to J. Castelluccio's Memorandum in Opposition to Post Trial Motions | Mark Carta | 1.10 | $475.00 | $522.50 |
| 04/14/2014 | Draft motion to exceed page limitations; telephone conferences with A. Wood regarding same (.4); Draft, revise and review Reply Memorandum and affidavit in support; research law regarding block billing and cases which decline fee reduction requests; review caselaw regarding time entry requirements for fee applications; insert argument drafted by M. Carta regarding Stuart decision; revise affidavit regarding block billing and alleged duplicative billing. | Margaret Ann Triolo | 5.30 | $300.00 | $1,590.00 |
| 04/15/2014 | Revise and review Reply memorandum and affidavit; review caselaw regarding block billing and intra office conferences; review IBM's designations of time entries allegedly attributable to attorney conferences; calculated duplicate entries | Margaret Ann Triolo | 1.80 | $300.00 | $540.00 |
| 04/16/2014 | Review Judge Adam's Decision in Stuart and Kosinski and affirming opinion of Connecticut Appellate Court; make revisions to Reply Memorandum insert; review and revise Reply to IBM's Opposition to Motion for Attorney's Fees and Supplemental Affidavit of M. Carta | Mark Carta | 3.50 | $475.00 | $1,662.50 |

Invoice # 2064 - 00033-Castelluccio - 05/02/2014

| | | | | | |
|---|---|---|---|---|---|
| 04/16/2014 | <mark>Review IBM's designations of time entries allegedly attributable to Daubert motions; calculate improper designations; review caselaw cited in draft Reply brief, review and revise M. Carta affirmation</mark> | Margaret Ann Triolo | 2.20 | $300.00 | $660.00 |
| 04/17/2014 | <mark>Confer with M. Triolo about my edits; review and revise Supplemental Affidavit;</mark> call K. Sherman regarding history on discovery | Mark Carta | 3.80 | $475.00 | $1,805.00 |
| 04/17/2014 | Final review and revisions to Memorandum and Affidavit; sign Affidavit (NO CHARGE) | Mark Carta | 3.80 | $0.00 | $0.00 |
| 04/17/2014 | <mark>Revise and review reply brief; conferences with M. Carta re: same; draft arguments regarding errors in IBM calculations; review time records regarding time spent on Daubert motions, motion to revise pretrial memorandum and attorney collaboration; draft argument regarding IBM's tactics which increased fees</mark> | Margaret Ann Triolo | 7.80 | $300.00 | $2,340.00 |
| 04/21/2014 | <mark>Meet with M. Triolo to decide on whether to file Sur Reply Brief and to discuss opposition to anticipated Motion to Stay Execution of Judgment and timing of an appeal</mark> | Mark Carta | 0.30 | $475.00 | $142.50 |
| 04/21/2014 | Review IBM reply memo and affidavit regarding Motion for New Trial; <mark>conference with M. Carta regarding same.</mark> | Margaret Ann Triolo | 0.80 | $300.00 | $240.00 |
| 04/23/2014 | Call J. Castelluccio with an update; <mark>confer with M. Triolo;</mark> review Z. Fasman Affidavit | Mark Carta | 0.30 | $475.00 | $142.50 |
| 04/30/2014 | Draft e-memo to Z. Fasman; <mark>confer with M. Triolo;</mark> revise e-memo to Z. Fasman after confirming dates of earlier call and Court's email; exchange related emails with J. Castelluccio and review Z. Fasman's response | Mark Carta | 0.70 | $475.00 | $332.50 |

| Time Keeper | Position | Quantity | Rate | Total |
|---|---|---|---|---|
| Mark Carta | Attorney | 17.8 | $475.00 | $8,455.00 |
| Mark Carta | Attorney | 3.8 | $0.00 | $0.00 |
| Margaret Ann Triolo | Attorney | 43.4 | $300.00 | $13,020.00 |
| | | | Subtotal | $21,475.00 |
| | | | Total | $21,475.00 |

Please make all amounts payable to: Carta, McAlister & Moore LLC

Please pay within 30 days.

Page 3 of 3

# Carta, McAlister & Moore LLC

### INVOICE

1120 Boston Post Road
Darien, Connecticut 06820
Phone: 203-202-3100

Invoice # 2137
Date: 06/02/2014
Due On: 07/02/2014

James Castelluccio
85 Davenport Farm Lane E
Stamford, Connecticut 06903

**00033-Castelluccio**

**Employment Claims Against International Business Machines Corporation**

| Date | Description | Attorney | Quantity | Rate | Total |
|------|-------------|----------|----------|------|-------|
| 05/07/2014 | Review email from Z. Fasman; update J. Castelluccio and M. Triolo | Mark Carta | 0.20 | $475.00 | $95.00 |
| 05/20/2014 | Continue work on Supplemental Affidavit in Support of Motion for Attorney's Fees | Troy Bailey | 1.00 | $150.00 | $150.00 |
| 05/29/2014 | Confer with T. Bailey and M. Triolo on status of Supplemental Affidavit of Fees (NO CHARGE) | Mark Carta | 0.20 | $0.00 | $0.00 |
| 05/29/2014 | Revise and review Supplemental Motion for Attorneys' Fees and Affidavit in Support thereof; review invoices; review caselaw regarding compensability of fees incurred in fee application and defense of post-judgment motions. | Margaret Ann Triolo | 2.20 | $300.00 | $660.00 |
| 05/30/2014 | Review and revise Supplemental Motion for Attorney's Fees and Supporting Affidavit; confer with M. Triolo and T. Bailey about suggested edits; sign final Motion and Supporting Affidavit | Mark Carta | 0.40 | $475.00 | $190.00 |

| Time Keeper | Position | Quantity | Rate | Total |
|-------------|----------|----------|------|-------|
| Mark Carta | Attorney | 0.6 | $475.00 | $285.00 |
| Mark Carta | Attorney | 0.2 | $0.00 | $0.00 |
| Margaret Ann Triolo | Attorney | 2.2 | $300.00 | $660.00 |
| Troy Bailey | Non-Attorney | 1.0 | $150.00 | $150.00 |
| | | | Subtotal | $1,095.00 |
| | | | Total | $1,095.00 |

Page 1 of 2

Invoice # 2137 - 00033-Castelluccio - 06/02/2014

Please make all amounts payable to: Carta, McAlister & Moore LLC

Please pay within 30 days.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES CASTELLUCCIO,
        - Plaintiff
        v.                                    CIVIL NO. 3:09CV1145(TPS)

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
        - Defendant

                        Opinion and Order

        The plaintiff James Castelluccio sued the defendant Internal

Business Machines Corporation ("IBM"), alleging that IBM terminated

his employment on the basis of age in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621

et seq., and the New York State Human Rights Law ("NYSHRL"), NY CLS

Exec § 196(a).  After a nine-day trial, the jury returned a verdict

for Castelluccio on his claim of age discrimination under the ADEA

and NYSHRL.  The jury awarded Castelluccio $999,891.64 for back pay

and benefits, $999,891.64 for liquidated damages, and $500,000 for

emotional distress damages.  IBM now moves for judgment pursuant to

Fed.R.Civ.P 50, or, in the alternative, for a new trial or

remittitur pursuant to Fed.R.Civ.P. 59.[1]  (Doc. #202).  For the

reasons set forth below, IBM's motion is DENIED.

                    I. BACKGROUND FACTS

        The background facts and proceedings at trial are familiar to

_____

        [1]Castelluccio has filed a motion for attorneys' fees and costs
and supplemental motion for attorneys' fees.  (Doc. ## 197, 231).
The court addresses these motions in a separate Opinion and Order
also released today.

the parties and the court will not repeat them in depth.   Mr. Castelluccio spent his entire professional career at IBM.  He began work in the data center as a computer operator in March 1968 and occupied positions of increasing responsibility and station throughout his tenure.   (Doc. #108, at 1-2; Doc. #213, at 129). His career reached its pinnacle when in 2005 he was named Vice President of Public Service Delivery ("VP PSD").   (Doc. #213, at 160).   In that capacity he oversaw the work of 2,500 employees who provided information technology services to 30 commercial accounts. (Id. at  109, 168).  As an executive, Castelluccio consistently received performance appraisals rating him as a solid or above average performer.[2] (Doc #214, at 255, 260; P. Exs. ##4, 7-10, 13-14).

The events leading up to this lawsuit began in February 2007 when Joanne Collins-Smee became Castelluccio's direct supervisor. At that time, Castelluccio was one month shy of his 60th birthday and the oldest of eight vice presidents reporting directly to Collins-Smee.   (Doc #214, at 253).   Despite his solid or above

---

[2]All employees at IBM are rated annually through a procedure called the personal business commitment ("PBC").  (Doc. #213, at 110).  Employees are rated on a scale of 1 through 4.  The PBC ratings are described as follows: PBC 1, among the top contributors; PBC 2+, above average contributor; PBC 2, solid contributor; PBC 3, among the lowest contributors, needs to improve; PBC 4, unsatisfactory.  (Id. at 115-117; P. Ex. #1, at 7). Castelluccio received PBC's of 2 or 2+ while at IBM, although in February 2008 Joanne Collins-Smee rated Castelluccio a PBC 3 before changing his rating to a PBC 2. (Doc. #217, at 937-938).

2

average performance appraisals, Collins-Smee immediately took steps to reduce Castelluccio's responsibilities at IBM before terminating his employment altogether in June of 2008.

In fact, after Collins-Smee's brief sit-down meeting with Castelluccio during her first month as supervisor, she recommended that he be removed from the position of VP PSD. (Doc #214, at 258-259). By June of 2007, Collins-Smee had succeeded in removing Castelluccio from that position, and named Miguel Echavarria, a 49 year-old eleven years Castelluccio's junior, as his replacement. (Doc. #214, at 344-345). At this time, Collins-Smee demoted Castelluccio to Delivery Project Executive ("DPE") of Wellpoint, which was universally regarded as IBM's most troubled account. (Id., 345-346). In November of 2007, Collins-Smee informed Castelluccio that she was removing him from the position of Wellpoint DPE and placing him "on the bench," that is, he would remain at IBM but without a permanent work assignment. (Doc. #214, at 378). In June of 2008, Collins-Smee notified Castelluccio that he would be terminated at the end of the month unless he found another position. (Doc. #215, at 480). Castelluccio was unable to secure permanent employment and was terminated accordingly.

Prior to his last day at IBM, but after being notified by Collins-Smee of his imminent termination, Castelluccio lodged a complaint of age discrimination with IBM's Human Resources representative, Russell Mandel. Mandel conducted an internal

3

investigation, or as it is called at IBM, an "open door" investigation, into Castelluccio's complaint of age discrimination and concluded that management had treated him fairly with respect to his termination.[3]  (Doc. #18, at 6).

Thereafter, Castelluccio commenced the present action, which was tried to the jury over nine days in January of 2014.  After the close of Castelluccio's case, IBM moved for a directed verdict on his claim of age discrimination pursuant to Fed.R.Civ.P. 50(a), contending that the record contains no evidence that would allow a reasonable jury to conclude that Mr. Castelluccio's age was the "but for" cause of his termination from IBM.  The court took the motion under advisement in keeping with the practice of the Second Circuit.  (Doc. #217, at 1118).

On January 24, 2014, the jury returned its verdict, finding that IBM had unlawfully terminated Mr. Castelluccio on the basis of age and that the termination represented a willful violation of the law.  The jury awarded Castelluccio $999,891.64 for back pay and benefits, $999,891.64 for liquidated damages, and $500,000 for emotional distress damages.  (Doc. #187).

_____

[3]IBM states the following with respect to the open door investigation process: "The Open Door process reviews actions or inactions by management which directly related to and affect an employee.  All issues, except policy decisions and operational business issues, are eligible for review under this process. . . . The intent of the process is to ensure an objective and thorough review of the issues.  The process will not make legal determinations.  It will, however, determine whether the employee was treated fairly."  (D. Ex. #109, at 4).

4

On February 25, 2014, IBM timely filed a renewed motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, or, alternatively, for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure, contending, inter alia, that the record does not support the jury's findings with respect to (1) age discrimination, (2) willfulness, and (3) damages based on emotional distress and (4) back pay.  IBM also argues (5) that a new trial must be granted because the plaintiff's attorney made an improper remark in closing argument that prejudiced the jury. (Doc. #179).

## II. Analysis/Discussion

A. Motion for Judgment as a Matter of Law under Rule 50(b)

Pursuant to Federal Rule of Civil Procedure 50(b), the court may enter judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis.  The court must give deference to all credibility determinations and reasonable inferences of the jury, without weighing the evidence or assessing the credibility of the evidence.  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir.1998).

The court may not substitute its judgment for that of the jury.  LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir.1995).  Judgment as a matter of law may only be granted if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer

surmise and conjecture, or if there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it. <u>Cruz v. Local Union No.3 of the Int'l Bhd. Of Elec. Workers</u>, 34 F.3d 1148, 1154 (2d Cir.1994).

The court must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in his favor. <u>Norton v. Sam's Club</u>, 145 F.3d 114, 118 (2d Cir.1998).

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[4]  A plaintiff may obtain relief under the ADEA if the plaintiff proves by a preponderance of the evidence that age was the "but-for" cause of the challenged employment action. <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).  A violation of the ADEA can be proven by either direct or circumstantial evidence.  <u>Carlton v. Mystic</u>

---

[4]In addition to his ADEA claim, Mr. Castelluccio brings an age discrimination claim under the NYSHRL.  Because the same legal analysis applies to age discrimination claims brought under the NYSHRL and the ADEA, <u>see</u> <u>Abdu-Brisson v. Delta Air Lines, Inc.,</u> 239 F.3d 456, 466 (2d Cir.2001), the court's analysis of the ADEA claim applies with equal force to the NYSHRL claim.

Transp. Inc., 202 F.3d 129, 135 (2d Cir.2000).

1. The Jury's Finding of Age Discrimination

IBM claims that the evidence presented at trial was insufficient to show that Castelluccio's age was the "but-for" cause of his termination. IBM first contends that evidence of statements made by Collins-Smee to Castelluccio concerning his age and eligibility for retirement cannot be viewed as direct evidence of age discrimination because they were innocuous statements and so far removed from the termination decision as to constitute inadmissible stray remarks.[5]

a. Direct Evidence

Although direct evidence of discrimination is not necessary to support a finding under the ADEA, Carlton v. Mystic Tramp. Inc., 202 F.3d 129, 135 (2d Cir.2000), the jury could have reasonably found that comments made by Collins-Smee concerning Castelluccio's age and eligibility for retirement constituted direct evidence of age discrimination. (Doc. #214, at 250-251, 386, 435; Doc. #215, at 557). Collins-Smee denied making some or all of the comments at issue; however, the jury was not required to believe her and was free to credit Castelluccio's testimony. On review, the court "must disregard all evidence favorable to the moving party that the

---

[5]In the court's order denying IBM's motion for summary judgment, the court found that evidence that Collins-Smee raised the issue of Castelluccio's retirement during her initial meeting with him, and on occasions thereafter, supported Castelluccio's prima facie case of age discrimination. (Doc. #109, at 11-12).

jury is not required to believe." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. at 151, 120 S.Ct. 2097.

According to Castelluccio, the first comments occurred in February 2007, during his first meeting with Collins-Smee. (Doc. #214, at 250-251, Doc. #216, at 802). Castelluccio testified that Collins-Smee asked, "You're old enough to retire, right"? (Doc. #214, at 251). Castelluccio also testified that Collins-Smee stated "How old are-" as if to ask how old he was, before stopping herself mid-sentence. (Doc. #215, at 557). Castelluccio testified that the second reference to his eligibility for retirement occurred in November of 2007, when Collins-Smee informed him that he was being replaced as DPE of the Wellpoint account and placed on the bench. (Doc. #214, at 386; Doc. #217, at 928-929). Castelluccio testified that Collins-Smee mentioned his eligibility for retirement a third time in March of 2008, when he met with her to discuss his lack of meaningful work assignment and to request that she assist him in locating another position or temporary assignment at IBM. (Doc. #214, at 435).

Prior to trial, IBM filed a motion seeking to exclude age based remarks made by Collins-Smee. (Doc. #174). This court denied that motion on the basis that whether the remarks were probative of age discrimination was a question of fact best left to the jury. (Doc. #214, at 223). At the charging conference, IBM asked this court to include the following instruction to the jury:

"Inquiries about retirement are not evidence of age discrimination. You may not rely upon them as proof of age discrimination. It is not improper for an employer or supervisor to inquire as to its employees plans for the future." (Doc. #220, at 1571). Again, the court declined to include IBM's proposed jury instruction. However, in an effort to meet IBM half-way, the court nevertheless instructed the jury, "[a]n inquiry about retirement is not necessarily evidence of age discrimination." (Doc. #221, at 1725). At the charging conference, IBM stated that it could "live with that" instruction. (Doc. #220, at 1574).

"[T]he stray remarks of a decisionmaker, without more, cannot prove a claim of employment discrimination. . . ." Weichman v. Chubb & Son, 552 F.Supp.2d 271, 284 (D.Conn.2008) (quoting Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir.2001)). However, "the court should not categorize a remark as 'stray' or 'not stray' and then disregard that remark if it falls under the 'stray' category." Weichman, 552 F.Supp.2d at 284 (citing Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115-26 (2d Cir.2007)). "Instead, the court must consider all the evidence in its proper context. . . . [T]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative the remark will be." Id. (quoting Tomassi, 478 F.3d at 115).

Whether certain comments were made by Collins-Smee and the

extent to which they reflected an ageist animus was therefore a question of fact properly submitted to the jury. It was not a question of law by which this court was bound to render those statements inadmissible as stray remarks. See e.g., Pasha v. William M. Mercer Consulting, Inc., 2004 WL 188077 at * 6 (S.D.N.Y.2004) (factfinder to conclude whether remarks directly manifest discriminatory attitude). Moreover, although the court declined to adopt IBM's proposed jury instruction, it nevertheless instructed the jury that not all inquires about retirement are necessarily evidence of age discrimination. (Doc. #221, at 1725). Having been cautioned by the court that not all comments about age and retirement are evidence of age discrimination, the jury was left to decide for itself what weight, if any, should be given to the remarks in question. This court cannot conclude that the remarks in question were so remote in time as to have been rendered inadmissible on that basis alone.

Neither can this court agree with IBM's position that the statements concerning age and retirement were innocuous. The remarks at issue were not made by an individual at IBM without the authority to make personnel decisions; rather, they were made by Collins-Smee, who was Castelluccio's direct supervisor and who had the authority to terminate him. (Doc. #217, at 955). The comments were particularly significant when considered in the context of the personnel decisions made by Collins-Smee regarding Castelluccio.

10

For example, after their initial meeting in February 2007,
when Collins-Smee allegedly made an age-related comment and the
first inquiry about retirement, Collins-Smee sent an email to Keith
Holmes in the Human Resources Department stating "[w]e need to
replace Jim Castelluccio." (P. Ex. #29). By June of that year,
Collins-Smee removed Castelluccio from his position as VP PSD and
had replaced him with Miguel Echavarria who was eleven years his
junior. This was a rather abrupt ending to Castelluccio's tenure
as VP PSD, especially in light of the fact that he had been rated
a 2 performer by Kelton Jones only a couple weeks prior to Collins-
Smee's email to Holmes, and that Collins-Smee initiated the removal
action with less than a month's time to evaluate his performance.
(Doc. #214, at 255, 260). The next remark Collins-Smee made
concerning Castelluccio's eligibility for retirement occurred in
November 2007. This remark was particularly significant because it
occurred during a conversation in which she told Castelluccio that
he was being removed from the position of Wellpoint DPE and
relegated to the bench. (Doc. #214, at 386; Doc. #217, at 928-
929).[6]   Collins-Smee's third reference to Castelluccio's
eligibility for retirement was made in March of 2008 when

----

[6]Although IBM's decision to remove Castelluccio from the DPE
and VP SD position are not actionable in this case, the
circumstances surrounding those employment decisions is background
evidence relevant to whether he was terminated unlawfully. See
Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 157
(2d Cir.2012). (Doc. #109, at 11-12).

11

Castelluccio met with her to seek her assistance in locating a new position at the company. (Doc. #214, at 435). This comment was significant in light of the fact that Collins-Smee did not locate him work she identified he might be suited for, and ultimately terminated his employment two months later. (Id. at 436-437).

All of the comments therefore occurred in the context of an adverse employment decision and were legally sufficient to sustain an inference of age discrimination. Tomassi v. Insigni Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir.2007). The comments were direct evidence that could reasonably be viewed as supporting Catelluccio's claims, and the comments were properly presented to the jury for their review. Whether those were innocuous comments, were a reflection of Collins-Smee's discriminatory intent, or fell somewhere in between was a determination to be made by the jury.

b. Circumstantial Evidence

IBM next contends that the circumstantial evidence offered by Castelluccio does not establish age discrimination. It argues that the circumstantial evidence has no legal foundation because there is no evidence that links IBM's purportedly adverse treatment of Castelluccio to corresponding evidence that younger, similarly situated employees were treated differently. This court disagrees.

There is no rigid rule for determining whether a plaintiff has demonstrated circumstances giving rise to an inference of discrimination. Chertkova v. Conn. Gen. Life Ins., 92 F.3d 81, 91

(2d Cir.1996). "The Court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law." Chambers v. TRM Ctrs. Corp, 43 F.3d 29, 37 (2d Cir.1994). Because an employer who discriminates is unlikely to leave a "smoking gun" attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence. See, e.g., Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir.1991). In considering the circumstantial evidence before the jury, the court is mindful that proving unfair treatment is not the same as proving age discrimination. See Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) ("[t]he ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age") (emphasis in original).

The circumstantial evidence in this case reasonably supported the jury's finding of age discrimination. Perhaps the most significant evidence from which the jury could have inferred ageist animus was Collins-Smee's failure to assist Castelluccio find a new position at IBM and her failure to advise him of the availability of open positions. Collins-Smee failure in this regard was particularly apparent in her half-hearted advocacy during the formal process through which executives are placed at IBM called

13

"five minute drills."  Five minute drills refer to both a document that identifies open positions and the executives available to fill them, as well as the 30 minute meeting amongst high level executives in which the positions and executives identified in the document are discussed for placement.  The five minute drills are strictly confidential at IBM, which means that not only are the executives available for placement not invited to the closed door meetings, but the open positions are not posted outside of the process itself.  (Doc. #213, at 85-86).  Consequently, it is very difficult for one to secure a position through the five minute drill process without someone in the meeting advocating their placement.

Collin-Smee's efforts, or lack thereof, to locate Castelluccio a position were so ineffectual, that after close to two months on the bench, Castelluccio complained to Garret Walker in Human Resources that he "was not made aware or considered for available positions within and outside the organization." (Doc. #214, at 428; P. Ex. 76).  The positions that Castelluccio was not considered for included the DPE role on the Quest outsourcing contract, which was in an area in which he had particular expertise.  (Id. At 428-430).  Castelluccio's belief that he was not considered for placement was in keeping with the observation of Keith Holmes who testified that Collins-Smee "rarely" mentioned Castelluccio during the five minute drills conducted in her

14

organization. (Doc. #219 at 1361-1362).  Even after Castelluccio, on the counsel of Walker, met with Collins-Smee in March of 2008 to ask for work, Collins-Smee still refused to give him a work assignment.    Instead, she unilaterally raised the issue of retirement, and did not assign Castelluccio temporary work in the area of audits and control after leading him to believe she would to so.  (Doc. #214, at 435-437).

   The jury was ultimately instructed that there were 106 Band C and Band D executive job openings identified in five minute drills during the six month period that Castelluccio was on the bench. (Doc. #194, at 10).   Of the 106 openings, 16 were filled in Collins-Smee's organization.  (Id.).  The jury could have inferred ageist animus from Collins-Smee's failure to consider Castelluccio for the positions in her organization even though he had the expertise that should have qualified him for consideration. (Doc. #214, at 348; Doc. #217, at 1031, 1033, 1050, 1052, 1054).   The jury could also have drawn an inference of age discrimination from the fact that Collins-Smee did not advance Castelluccio for consideration on nearly all of the drills conducted by other executives at the company in which the remaining positions were being filled.

   Collins-Smee's failure to advocate for Castelluccio during the five minute drill process was particularly significant in light of the expectations placed on supervisors to identify executives

without permanent work assignments and to lobby on their behalf when vacancies were being filled in the executive ranks through the five minute drill process. Collins-Smee testified that it was her responsibility to put Castelluccio on a five minute drill, and her predecessor, Kelton Jones, testified that finding a position for an executive without a permanent assignment was a function of his managerial responsibility. (Doc. #216, at 807; Doc. #217, at 1086). Jones testified that it was commonplace to meet this responsibility not only through the five minute drill process, but also by advocating on the employee's behalf outside of the process. (Doc. #217, at 1073-1074). Because Collins-Smee did not do her job and advocate for Castelluccio during five minute drills, let alone regularly list his name on a slate of candidates available for placement during the five minute drills she conducted, managers with the authority to hire him did not know of his experience and skills for the position in question, much less know that he was available in the first place.[7] The closed nature of the five minute drills also meant that Castelluccio could not advocate on his behalf or even know what positions were available. With a manager in Collins-Smee who left him in the lurch, Castelluccio did not stand much of chance in the five minute drill process.

The jury could have reasonably concluded that Collins-Smee's

---

[7]Collins-Smee did not list Castelluccio as available for placement on her five minute drills with one exception, which was in January of 2008. (Doc. #214, at 350; P. Ex. 56).

failure to assist Castelluccio find a job or consider him for open positions left him comparably worse off than similarly situated younger individuals. For example, one month before Castelluccio was fired, Collins-Smee hired seven individuals into executive positions within her organization who were younger than Castelluccio. (P. Ex. 83). The jury heard evidence that Castelluccio was qualified for positions in Collins-Smee's organization; however, in spite of her responsibility to find a position for a displaced employee, Collins-Smee did not consider him for those positions or even advise him that they were available. (Doc. #214, at 348). Unlike Castelluccio, the younger employees hired to Collins-Smee's organization benefitted from being discussed in those five minute drills and identified as employees available for placement. The jury could have therefore reasonably inferred ageist animus from Collins-Smee's decision to exclude him from the five minute drill process and to not consider him for open positions in her organization.

B. IBM's Motion for New Trial or Remittitur under Rule 59(a)(1)

IBM also claims that a new trial, or in the alternative, remittitur, is warranted because the record does not support the jury's findings with respect to willfulness and damages based on emotional distress and back pay. IBM also claims that a new trial is warranted because Castelluccio's counsel made improper remarks in closing argument.

17

Pursuant to Federal Rule of Civil Procedure 59(a)(1), a new trial may be granted for "any reason for which a new trial has heretofore been granted in an action at law in federal court." The standard for granting a new trial differs in two ways from that governing Rule 50 motions: (1) a new trial may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir.1998) (citation omitted). Although a trial court is afforded considerable discretion under Rule 59(a), a motion for a new trial should be granted only when, in the opinion of the district court, "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." Id. at 133, quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir.1992) (alteration in original). Moreover, the mere fact that the trial judge disagrees with the jury's verdict is not a sufficient basis to grant a new trial. Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir.1983).

1. Willfulness

IBM first contends that a new trial is warranted because the jury improperly found that IBM willfully violated the law when it terminated Castelluccio's employment. IBM argues that the court contributed to this error by precluding the results of its

18

internal, "open door" investigation of Castelluccio's complaint of age discrimination.  This court disagrees.

As a general rule, the question of willfulness is properly left to the jury, and a reviewing court is "not permitted to substitute [its] judgment for that of the jury" even if it "might have resolved the issue differently had [it] been the finder of fact." Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1572 (2d Cir.1989).  Well-established precedent recognizes that the willfulness necessary to support liquidated damages under the ADEA can be established either by proof that a defendant actually knew that his conduct violated federal law or by reckless disregard of that fact.  See Hazen Paper Co. V. Biggins, 507 U.S. 604, 614, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).  Here, if Collins-Smee terminated Castelluccio's employment because of his age and knew that doing so was a violation of the ADEA, or showed reckless disregard for that fact, then the jury could have reasonably concluded that she willfully violated the law.

The court cannot conclude that the jury reached a seriously erroneous result in finding that IBM willfully terminated Castelluccio's employment.  The jury heard testimony from Collins-Smee that she received training on discrimination laws on a regular basis, including laws pertaining to age discrimination.  (Doc. #216, at 810).  Not be deterred by her knowledge of the law, Collins-Smee nevertheless made employment decisions that adversely

19

affected Castelluccio based on his age.

Collins-Smee testified that she believed that it was not appropriate to ask an employee his age. She did so anyway at her first meeting with Castelluccio in February of 2007, and removed him from the VP PSD position shortly thereafter. (Doc. #215, at 557). Collins-Smee also testified that she knew it was improper to ask an employee if he wanted to retire after the employee made it clear he had no interest in doing so. She nevertheless raised the issue of retirement with Castelluccio on at least three occasions despite his indication that he had no interest in leaving IBM. (Doc. #214, at 250-251, 386, 435; Doc. #215, at 557; Doc. #217, at 928-929, 963-964). She even brought up the issue of retirement in March of 2008 when Castelluccio came to her asking for work or her assistance in locating a new position. (Doc. #214, at 435). Collins-Smee also testified that she new it was not appropriate to base employment decisions on age. Yet the record supports a finding that Collins-Smee's employment decisions were motivated by age bias. She removed Castelluccio from two positions in spite of his PBC 2 performance appraisals, she abandoned her responsibility to find him work, she placed him on the bench in spite of an abundance of work available, she failed to advance his name for over 100 open executive positions in other organizations, and she did not even consider him for positions in her own organization but instead considered, and ultimately hired, younger employees.

Case 14-2854, Document 67, 03/13/2015, 1460801, Page175 of 216
A-1434
Case 3:09-cv-01145-TPS   Document 236   Filed 07/23/14   Page 21 of 35

The jury could have concluded that Collin-Smee's treatment of Castelluccio was driven less by indifference than by a calculated desire to remove an older employee from her organization. While she did almost nothing for him in the way of job placement, she went out of her way to exclude him from relevant emails, certain professional development opportunities, and to thwart his ability to effectively communicate with the customer. For example, in February 2008, Collins-Smee invited all of her vice presidents and directors to participate in a seminar in Lexington, Kentucky, except for Castelluccio, who was the oldest vice president in her organization. (Doc. #214, at 413-414). Not only was Castelluccio not invited, Collins-Smee denied his request for a copy of the literature discussed at the conference. (Id. at 415-415). IBM never even offered an explanation for Collins-Smee's actions in this respect.

Likewise, Castelluccio's repeated requests for a Blackberry to communicate with the CIO of Wellpoint, IBM's most troubled account, were also denied. (Id. at 313-314, 360-361). Not only was Castelluccio not given the technology to effectively communicate with the client, evidence adduced at trial revealed that Collins-Smee meant for him to hold the position of Wellpoint DPE only on a temporary basis. At the time, Collins-Smee did not so much as do Castelluccio the courtesy of informing him that the position was temporary. (Id. at 363). Instead, six months into his tenure, she

abruptly notified him that he was being replaced as Wellpoint DPE
and placed on the bench.  At no point did she notify him that the
customer had any problem whatsoever with his work performance.  In
a rather festive spirit, she chose the day before Thanksgiving to
notify Castelluccio of her decision to remove him from the
position.  (Id. at 375, 378).

Not only did Castelluccio not know at the time that his
position as Wellpoint DPE was temporary, he learned later that
Collins-Smee was proposing replacements to the client behind his
back.  (Id. at 363).  In fact, she provided a total of five
candidates to Wellpoint during Castelluccio's tenure as DPE, who
were on average twelve years younger than Castelluccio.  (Id. at
368).  At no point was Castelluccio ever presented to the client as
a permanent DPE candidate.  (Id. at 361).  Indeed, it was only
after Wellpoint had rejected the five younger candidates, that
Collins-Smee resigned to offer Gordon Crawford, who was roughly the
same age as Castelluccio, the position on a permanent basis.  (Id.
at 373-374).  One can only imagine how difficult it must have been
for Castelluccio to service the Wellpoint account with a boss in
Collins-Smee who regularly auditioned his replacement to the
client, and would not so much as provide him with a Blackberry so
that he could adequately communicate with the Wellpoint CIO.

Collins-Smee's tacit acknowledgment of her own wrongdoing was
revealed in the surreptitious way in which she announced the seven

22

individuals younger than Castelluccio whom she hired into her organization in May of 2008. As if to hide the fact that she had not even considered Castelluccio for these openings, she sent an email to her team announcing the new hires, but made sure to exclude Castelluccio from the correspondence. (P. Ex. 83).

Perhaps the most egregious example of Collins-Smee's willful conduct were notes from a five minute drill immediately preceding Castelluccio's termination, in which she asked that his name be added to a slate of candidates "for the record," even though someone else's selection for that position had been all but finalized. (Doc. #216, at 848-49). Collins-Smee was aware of her wrongful conduct, and in this instance directed others to create a paper trail in order to insulate herself from scrutiny in the future. Based on this evidence, the jury could have concluded that Collins-Smee acted in a purposeful, deliberate and calculated fashion, and that her treatment of Castellucio was downright bully-ish. See Benjamin v. United Merchs. & Mfrs., Inc., 873 F.2d 41, 44 (2d Cir.1989) (upholding liquidated damages "when the proof shows that an employer was indifferent to the requirement of the governing statute and acted in a purposeful, deliberate, or calculated fashion").

a. Open Door Evidence

IBM contends that this court's preclusion of evidence related to its "open door" investigation deprived it of the opportunity to

demonstrate that its actions were not willful.  The evidence related to the "open door" investigation included: the report of IBM's consulting human resources professional, Russell Mandel, which summarized the findings of his investigation into Castelluccio's report of discrimination (Doc. #156-3); hand-written notes prepared by Mandel during interviews with IBM employees (Doc. #156-2); and Mandel's testimony regarding the findings of the "open door" investigation (Doc. #133, at 11)(collectively, the "open door evidence").  IBM argues that it should have been allowed to not only present evidence concerning the open door investigation in full, but also to demonstrate that Mandel, not Collins-Smee, had the final authority to terminate Castelluccio's employment.

Whether IBM terminated Castelluccio because of his age was a question to be decided by the jury over the course of a nine day trial rather than a question decided by IBM's ex parte investigation before the trial began.  In considering whether to preclude the "open door" investigation, this court found that the "open door" investigation represented only the findings and conclusions of IBM, as opposed to Castelluccio's account of the circumstances that lead to his termination.  The investigation was not conducted by a neutral party, but by Mandel, who decided which parties to interview and what evidence to consider.  Castelluccio was not offered the opportunity to present his own evidence, cross examine the witnesses or respond to criticisms leveled against him.

The court also found that the investigation focused more on Castelluccio's job performance than on his complaint of age discrimination and that there was reason to suspect that the investigation was designed more to exonerate IBM than to determine if Castelluccio was treated fairly. (Doc. #163, 5-7). Accordingly, prior to trial, the court granted Castelluccio's motion to preclude the "open door" evidence on the basis that its prejudicial effect on the jury would outweigh its probative value. (Id.). Doing so was not improper.

Nevertheless, the court later determined that IBM should be allowed to present evidence that it carried out the "open door" investigation in order to demonstrate to the jury that it did not act in a willful fashion in terminating Castelluccio. Consequently, the court modified its order precluding the open door evidence and allowed Mandel to testify for the limited purpose of establishing that a thorough investigation was conducted into Castelluccio's complaint of age discrimination. (Doc. #219, at 1440-1449, 1468). The parties agreed prior to Mandel's testimony that he would not reveal the findings of his open door investigation. (Doc. #218, at 1292-1297). The court also understood the parties to agree that Mandel would not reveal that he had the authority to reinstate Castelluccio, since doing so would allow the jury to deduce the findings of the investigation. (Id. at 1464).

The court therefore allowed Mandel to testify that he conducted a four- to six-week long investigation of Castelluccio's complaint of age discrimination that included interviews of 21 of Castelluccio's coworkers. (Id. at 1452-1453). Mandel testified that this investigation was conducted because IBM understands the law with respect to discrimination, and believes that it is important, serious and should be obeyed. (Id. at 1468). IBM was therefore given opportunity to demonstrate that its actions were not willful. In spite of this evidence, the jury still found that IBM had willfully terminated Castelluccio because of his age. Its finding in this respect is an acknowledgment of Collins-Smee's willful termination of Castelluccio's employment and IBM's failure to undue her unlawful action thereafter.

IBM's more narrow argument that this court erred by improperly precluding evidence that Mandel had the power to reinstate Castelluccio also fails. Despite the understanding between the parties, IBM ultimately solicited testimony from Mandel, which revealed that he did in fact have the power to reinstate Castelluccio if he found in his favor. Mandel stated:

> If I found . . . in Jim's favor, we would
> bring him back to the business; and if not, he
> would – the package that had been offered
> would still be available to him, because the
> last date that the package would be available
> would have been June 30th. And it wouldn't be
> fair for him not to have that package
> available to him; so therefore, he would have
> 48 hours to review the package if I did not
> find in his favor. (Id. at 1458)

Immediately thereafter, Castelluccio moved to strike this testimony on the basis that it violated the agreement that IBM would not testify as to Mandel's authority to reinstate Castelluccio if he found in his favor. (Id. at 1458). Although the court excused the jury at this point, the court did not sustain counsel's objection and specifically declined plaintiff's counsel's request to strike Mandel's testimony from the record. (Id. at 1467). The record therefore contains evidence that Mandel had the power to reinstate Castelluccio if he concluded that Castelluccio was not treated fairly. Ultimately, the court did not preclude Mandel's testimony in this respect as IBM now claims.[8]

On balance, IBM introduced evidence that it conducted an internal investigation into Castelluccio's complaint of age discrimination and that it had the power to reinstate him if it determined that his complaint was meritorious. In light of the evidentiary record, this court cannot conclude that IBM was

---

[8]Even assuming *arguendo* that the court erred by not allowing IBM to admit the open door evidence in full or belabor the fact that Mandel had the authority to reinstate Castelluccio, the court concludes that any error is harmless. First W. Bank, N.A. v. Hotz. Corp., CIV. N-84-619 WWE, 1990 WL 150450 (D. Conn. Sep. 28, 1990) ("[T]he burden of showing harmful error rests with the moving party."). The purpose of an investigation conducted by a human resources department is defeated if the investigator does not have the authority to reinstate an employee after determining that the employee has been discriminated against. This fact was self-evident to the jury; the fact that Mandel could have reinstated Castelluccio if he determined that Castelluccio was terminated because of his age was not lost on them. Consequently, this court cannot conclude that IBM was prejudiced by not being allowed to further develop at trial what was already apparent to the jury.

27

prejudiced.

2. Damages based on emotional distress

IBM next argues that a new trial or remittitur is warranted because the jury's award of $500,000 in emotional distress damages is not supported by the record.

Under federal law, an award will not be disturbed unless it is "so high as to shock the judicial conscience and constitute a denial of justice." Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir.1990); accord Kirsh v. Fleet St., Ltd., 148 F.3d 149, 165 (2d Cir.1998). In calculating remittitur, the court must use the "least intrusive"– and "most faithful to the jury's verdict" method of "reduc[ing] the verdict only to the maximum that would be upheld by the trial court as not excessive." Earl v. Bouchard Transp. Co., Inc., 917 F.2d 1320, 1328-30 (2d Cir.1990).

Meritorious garden-variety emotional distress claims in federal courts in this Circuit have typically commanded awards between $30,000 and $125,000. See Patterson v. Balsamico, 440 F.3d 104, 120 (2d Cir.2006) (affirming $100,000 award where the plaintiff had no evidence of medical treatment, but offered testimony of humiliation, embarrassment, loss of self-confidence, sleeplessness, headaches, stomach pains, and other physical pain); Cross v. N.Y. Transit Auth., 417 F.3d 241, 258 (2d Cir.2005) (affirming $50,000 award where plaintiff testified to experiencing anger, humiliation, and frustration, but did not seek medical

28

treatment); <u>Meacham v. Knolls Atomic Power Lab.</u>, 381 F.3d 56, 78 (2d Cir. 2005), <u>vacated on other grounds</u>, 544 U.S. 957 (2005) (affirming $125,000 award where plaintiffs offered no proof other than testimony establishing shock, nightmares, sleeplessness, humiliation, and other subjective distress); <u>Watson v. E.S. Sutton,</u> <u>Inc.</u>, 02 CIV. 2739 (KMW), 2005 WL 2170659 at *16 (affirming $120,000 award where plaintiff experienced depression and visited a therapist but had no permanent psychological injury).

Although Castelluccio's emotional distress is garden-variety inasmuch as he presented no corroborating testimony or evidence of medical treatment, the court concludes that the specific circumstances of this case, including IBM's egregious treatment of Castelluccio, justify an upward departure from the typical emotional distress damages award. Castelluccio offered testimony of the physical effects of emotional distress including mood swings, sleepless nights, weight loss, and hair loss; however, the physical effects that Castelluccio suffered represent only a fraction of the emotional distress the jury could reasonably have concluded he suffered (Doc. #216, at 676-678). The jury's award reflects a recognition that the actions of Collins-Smee weighed especially heavy on Castelluccio. Castelluccio's countenance, gentle bearing, and heartfelt testimony suggested a man that was particularly sensitive and whose very nature invited being marginalized in the workplace by the likes of Collins-Smee.

Collins-Smee did more than simply terminate Castelluccio's
employment; she shattered the very foundation of his identity as an
IBMer.  The jury bore witness to a man who was utterly devastated
by the termination of his employment from a company at which he
spent over 40 years, who was reduced to pleading for work during
his final months on the bench, and who, at 61 years of age,
struggled in vain to secure employment after he had been finally
ousted from the company.  The jury's award reflects an
understanding of the magnitude of Castelluccio's emotional
distress.  Based on the evidence adduced at trial this court
concludes that the jury's award does not shock the conscience and
accordingly will not adjust it downward.

   3. Damages based on back pay

   IBM next claims that the jury's back pay award is inconsistent
with Castelluccio's sworn testimony.  It argues that Castelluccio's
testimony indicates, one, that he planned to retire at 65, not 66
as the jury found, and, two, that Castelluccio was receiving a
certain amount in pension benefits, not the smaller figure found by
the jury.  This court disagrees.  The jury's back pay and benefits
figure was properly calculated and is not inconsistent with the
record.

   "When confronted with a potentially inconsistent jury verdict,
the court must 'adopt a view of the case, if there is one, that
resolves any seeming inconsistency.'" Turley v. Police Dep't of the

30

City of N.Y., 167 F.3d 757, 760 (2d Cir.1999) (citation omitted).
"A Court's role is to reconcile and preserve whenever possible a
seemingly inconsistent jury verdict.   Densberger v. United
Technologies, Corp., 125 F.Supp.2d 585, 598 (D. Conn.2000) (quoting
Indu Craft, Inc. v. Bank of Baroda, 46 F.3d 490, 497 (2d Cir.1995)
(citations omitted).

The record supports the jury's finding that Castelluccio
planned to retire at age 66.   IBM points to two statements in the
record that indicate that Castelluccio planned to retire at age 65,
not age 66.   First, when asked at what age he planned to retire,
Castelluccio stated: "I would be 65, 66 would be the age." (Doc.
#213, at 108).   Based on this statement, the jury could have
reasonably concluded that Castelluccio planned to retire at 66.
The second statement IBM argues establishes that Castellucio
planned to retire at 65 is, when asked what age he turned in 2013,
the year in which he ended his job search, he answered: "Last year,
65." (Doc. #215, at 532).   The record before the jury, however,
reflects that Castelluccio actually turned 66 in 2013, not 65.  (P.
Ex. #59).   The jury could have reasonably concluded that
Castelluccio misstated the age he turned in 2013 and was not bound
to conclude otherwise.   The jury also heard testimony from
Castelluccio's damages expert, Dr. Crakes, who stated,
"[Castelluccio] intended to work to age 66." (Doc. #218, at 1161).
In addition, the evidence before the jury included Dr. Crakes's

31

notes indicating that Castelluccio planned to retire at 66 and an exhibit of Dr. Crakes's damages calculations of Castelluccio's economic loss through his 66th birthday. (P. Exs. ##201, 213). The record amply supports the jury's finding that Castelluccio planned to retire at age 66.

IBM next argues that, with respect to the pension and benefits that Castelluccio would not have received had he remained at IBM, his testimony indicates that he was receiving $78,000 in pension benefits annually, not the lower figure determined by the jury. The jury found that Castelluccio would have received $1,345,042 in back pay and benefits had he retired at 66. (Doc. #187, at 1). From this figure, the jury was instructed to deduct the amount of retirement pay that Castelluccio received, but would not have received, had he remained at IBM. The figure that the jury arrived at, $345,150.36, is the same figure calculated by Dr. Crakes. (Id.). That figure assumed that Castelluccio would have worked for an additional 4.67 years had he not been terminated and that he was receiving $73,908 in annual pension benefits. IBM argues that because Castellucio testified that his annual pension benefit was "78,000 or something like that," that the jury should have used the $78,000 figure in determining the amount to deduct from the back pay and benefits figure. (Doc. #216, at 676). Obviously, the jury was not bound to use Castelluccio's off-the-cuff estimation of his pension benefits, and properly relied on the figure arrived at by

the damages expert in this case.

IBM next claims that the jury's findings with respect to mitigation of damages were not supported by the record. IBM argues that it was entitled to a deduction from the back award based on Castelluccio's failure to mitigate damages because it had proven by a preponderance of evidence that suitable work existed for Castelluccio after his termination. It also argues that the record does not support the jury's findings that Castelluccio made reasonable efforts to seek employment. This court disagrees.

Victims of employment discrimination are required to mitigate their damages. See Dailey v. Societe Generale, 108 F.3d 451, 455 (2d Cir.1997). A discharged employee must "use reasonable diligence in finding other suitable employment," which need not be comparable to their previous positions. Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 & n. 15, 102 S.Ct. 3057, 3065-66 & n. 15, 73 L.Ed.2d 721 (1982). Typically, the employer has the burden to demonstrate (1) that suitable work existed in the marketplace and that (2) its former employee made no reasonable effort to find it. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir.1998) (citing Dailey, 108 F.3d at 456).

Here, the jury found that IBM met only one of these requirements, that is, it concluded that suitable work existed for Castelluccio, but also concluded that Castelluccio made reasonable efforts to seek employment. (Doc. #187, at 2). Consequently, the

33

jury was not required to deduct a value from the back pay award simply because IBM proved that there was suitable work for Castelluccio in the marketplace.

Moreover, the jury's finding that Castelluccio made reasonable efforts to seek employment was overwhelmingly supported by the record. For example, Castelluccio testified that he continued his efforts to find a job full time, for six days a week over a period of four and a half years. (Doc. #216, at 516-525). During this period, Castelluccio maintained records of his efforts to secure a job, which included lists chronicling 300 jobs he applied to or networking events he attended, 250 meetings or web seminars he attended to maintain and update his skills, and over 100 internet based resources he utilized to locate work. (P. Exs. ##103, 104, 105). Castelluccio testified that he relied heavily on online sources that advertised jobs for executives, including NetShare, ExecuNet and Health Care IT, that he searched for jobs in various print publications, and hired a consultant and worked with numerous executive recruiters in order to find a new position. (Doc. #216, at 519, 521, 523-525). Based on the weight of this evidence the court will not disturb the jury's finding that Castelluccio made reasonable efforts to seek employment.

4. Improper Remarks

Finally, IBM argues that a new trial is warranted because Castelluccio's counsel called IBM's attorney an exceptionally able

New York trial lawyer.[9]  The court is confident that the jury understood this comment as praise for IBM's attorney and that the statement was not designed to invoke in the jurors feelings of regional prejudice.  Consequently, this court cannot conclude that this statement so prejudiced the jury as to warrant a new trial, let alone that the statement was even improper on its face.  See Patterson v. Balsamico, 440 F.3d 104, 119 (2d. Cir.2006) ("Not every improper or poorly supported remark made in summation irreparably taints the proceedings."); Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 271 (2d Cir.1999) ("Rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal.") (internal quotations marks omitted).  A new trial is not warranted on this basis.

For the reasons stated herein, IBM's renewed motion for a judgment as a matter of law, or in the alternative, new trial or remittitur, is DENIED.

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 23rd  day of July, 2014.**

                                      /s/  Thomas  P.  Smith
                                      **Thomas P. Smith**
                                      **United States Magistrate Judge**

_____

   [9]Plaintiff's counsel actually referred to IBM's counsel as an "*extraordinarily* able New York trial lawyer"). (Doc. #220, at 1710) (emphasis added).

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**JAMES CASTELLUCCIO,**
        **- Plaintiff**

        **v.**                                        CIVIL NO. 3:09CV1145(TPS)

**INTERNATIONAL BUSINESS**
**MACHINES CORPORATION,**
        **- Defendant**

### Ruling on Plaintiff's Motion for Attorneys' Fees

Following a nine-day trial, the jury returned a verdict in favor of the plaintiff, James Castelluccio, on his claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and the New York State Human Rights Law ("NYSHRL"), NY CLS Exec § 196(a), against the defendant, International Business Machines Corporation ("IBM"). Judgment in the amount of $999,891.64 for back pay and benefits, $999,891.64 for liquidated damages, and $500,000 for emotional distress damages has been entered. (Doc. #195). Castelluccio has filed a motion for an award of attorney's fees, prejudgment interest, and compensation for increased tax liability as a prevailing party under the ADEA.[1] See 29 U.S.C. § 626(b); (Doc. #197). Castelluccio has also filed a supplementary motion for attorneys' fees for work related to certain post-trial motions in this case. (Doc. #231).

For the reasons that follow, Castelluccio's motion for

---

[1]Castelluccio also seeks an award for costs incurred in this litigation. The court does not address Castelluccio's application for costs because it is premature and must be submitted to the clerk of court, not the court itself.

attorney's fees, prejudgment interest, and compensation for increased tax liability **[Doc. #197]** is **GRANTED in PART and DENIED in PART**. Castelluccio is awarded $894,053.50 in attorneys' fees for work set forth in that motion. Absent objection, he is awarded $13,236 in prejudgment interest, and $209,488 in compensation for increased tax liability.

Castelluccio's supplementary motion for attorneys' fees **[Doc. #231]** is **GRANTED**. He is awarded $102,360.00 in attorneys' fees for work set forth in that motion.

## I. DISCUSSION

An award of attorneys' fees is mandatory to a prevailing party under the ADEA. <u>Hagelthorn v. Kennecott Corp.</u>, 710 F.2d 76, 86 (2d Cir. 1983) (<u>Detje v. James River Paper Corp.</u>, 167 F. Supp. 2d 248, 250 (D. Conn. 2001)). In determining an appropriate fee award, both the Second Circuit and the Supreme Court "have held that the lodestar-- the product of a reasonable rate and the reasonable number of hours required by the case-- creates a presumptively reasonable fee." <u>Milea v. Metro-North R. Co.</u>, 658 F.3d 154, 166 (2d Cir.2011) (<u>citing</u> <u>Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany</u>, 522 F.3d 182 (2d Cir.2008); <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992), quoting <u>Hensley v.</u>

<u>Eckerhart</u>, 461 U.S. 424, 436, 103 S. Ct. 1993, 76 L. Ed. 2d 40 (1983). The court notes at the outset that the jury found in favor of Castelluccio on every claim he advanced at trial, and that the jury verdict was left undisturbed by the court in its denial of IBM's motion for judgment as a matter of law, or new trial, or remittitur. (Doc. #202).

In response to Castelluccio's motion for attorneys' fees (Doc. #197), IBM objects to four categories of activity that it believes should be excluded from Castelluccio's attorneys' fees calculation: (1) secretarial tasks and routine work; (2) abandoned claims, unsuccessful motions, and tasks unrelated to the outcome of the case; (3) tasks billed to two or more attorneys; and (4) work that has been "block" billed. IBM objects also, on similar grounds, to: (5) Castelluccio's (Doc. #231) supplementary motion for attorneys' fees. IBM does not contest the reasonableness of the hourly rate of Castelluccio's counsel. The court addresses each category IBM identifies in turn.

### 1. Routine Legal Work and Secretarial Tasks

IBM first claims that the fees Castelluccio seeks for secretarial tasks and routine work is excessive. It asks the court to deduct 4.4 hours of secretarial work from the attorneys' fee award and to also reduce by 50 percent the billable hours for the following work: 22.3 hours spent drafting the federal complaint; 25 hours spent negotiating a confidentiality agreement; 17.2 hours

spent drafting discovery requests; 272.30 hours spent drafting the
response and sur-reply to IBM's motion for summary judgment; 4.4
hours spent preparing Castelluccio for a second deposition; and
1,054.70 hours spent preparing for trial. Castelluccio claims that
IBM's estimation of hours billed for many of these tasks is
inaccurate and that the time actually billed was justified.

In instances where the record supports competing conclusions
regarding the amount of time billed, the court affords the benefit
of the doubt to Castelluccio. This approach is supported by the
presumption that the lodestar figure represents a reasonable fee
and also by the courts' belief that Castelluccio's counsel, who has
sworn to the accuracy of the billing statements, is in a better
position than IBM to attest to the amount of time billed for
certain tasks. Accordingly, the court accepts the representation
of counsel that he billed only 12.1 hours for negotiating a
confidentiality agreement and only 240 hours to contest IBM's
motion for summary judgment. The expenditure of time to negotiate
the confidentiality agreement was reasonable, especially in light
of the fact that it required review of language proposed by IBM and
was put in place for IBM's benefit. The time billed to contest
IBM's motion for summary judgment, which included a warranted sur-
reply, was also reasonable. See e.g., Serricchio v. Wachovia Sec.,
LLC, 706 F.Supp.2d 237, 258 (D.Conn.2010) aff'd, 658 F.3d 169 (2d
Cir.2011) (294.25 hours of attorney time spent opposing motion for

summary judgment was reasonable).

The court also accepts Castelluccio's representation concerning the time he spent drafting discovery requests. The record reasonably supports Castelluccio's position that IBM has overestimated the amount of time he spent drafting discovery requests inasmuch as IBM's estimation includes time Castelluccio was billed for responding and objecting to IBM's requests for production, scheduling a settlement conference, participating in a conference call with a Magistrate Judge, and reviewing IBM's confidentiality agreement. (Doc. #223-5). The court therefore finds that the time Castelluccio was billed to respond to discovery requests was reasonable.

The court also accepts Castelluccio's representation that time for certain secretarial tasks was not billed by his attorneys. The court has reviewed the entries in question, which include time spent drafting the federal complaint, reviewing the law and the court's ruling, and finds that these tasks do not amount to work that is secretarial in nature. To the extent IBM identifies a time entry related to filing the complaint, the court accepts Castelluccio's representation that the time for that task was billed to a paralegal.

The court also disagrees with IBM's position that the time Castelluccio spent preparing for trial was excessive. The court finds that IBM's estimate of the hours billed to Castelluccio for

trial preparation is overly broad.  Its estimate collects entries dating back to 11 months before trial and does not challenge any single entry with specificity.  (Doc. #223-8).  Accordingly, the court cannot conclude that the hours billed to Castelluccio for the purpose of trial preparation were excessive.

The court, however, agrees with IBM's position that a reduction of attorneys' fees is warranted for the time spent drafting the federal complaint in this case.  (Doc. #223-4).  The court finds that 22.3 hours for this task is excessive in light of the fact that the complaint was produced on the heels of litigation at the administrative level.  Accordingly, the court reduces attorneys' fees for this excessive work by $2,811.

The court also agrees with IBM's position that a reduction of attorneys' fees is warranted for time spent preparing Castelluccio for a second day of deposition.  While the court does not believe that Castelluccio acted in bad faith, it finds that a second deposition was induced to some extent by Castelluccio's failure to produce prior to the first deposition all documents related to his efforts to mitigate damages.  Accordingly, the court reduces attorneys' fees for the second day of Castelluccio's deposition by $792.50.

### 2. Abandoned Claims, Unsuccessful Motions, and Other Tasks

IBM next claims that Castelluccio should not be awarded attorneys' fees for certain abandoned claims and theories,

unsuccessful motions, and tasks unrelated to the outcome of the case. A plaintiff who prevails on some but not all of his claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories. Hensley, 461 U.S. at 434, 103 S.Ct. 1933). However, a plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and unsuccessful claims were interrelated and required essentially the same proof. Murphy v. Lynn, 118 F.3d 938, 951 (2d Cir.1997), cert denied, 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); Lunday; Grant v. Bethlehem Steel Corp., 973 F.2d 96, 101 (2d Cir.1992), cert. denied, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); DeLeon v. Little, No. 3:94CV902RNC, 2000 WL 435494, at *4 (D.Conn. Mar.2, 2000).

### A. Abandoned Claims and Theories

IBM specifically argues that Castelluccio should not be permitted to recover attorneys' fees for the following abandoned claims: (1) his claim that IBM allegedly breached an implied contract, which was abandoned before the complaint was filed; (2) his claim for retaliation, which was abandoned after the close of discovery; (3) his claim that IBM violated its progressive discipline policy; (4) his claim that his pension should not be used to offset his damages claim; (5) his efforts to introduce evidence of a coworker's earnings as evidence supporting his claim

7

for lost stock options; and (6) his failed application to amend the case management plan in order to designate a rebuttal expert.

With respect to Castelluccio's claims of breach of implied contract and retaliation, the court finds that these claims are factually interrelated to Castelluccio's claim of wrongful termination such that no reduction of fee is warranted. Dominic v. Consol. Edison Co. Of New York, Inc., 822 F.2d 1249, 1259 (2d Cir. 1987) ("[W]hen a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, the lawsuit cannot be viewed as a series of discrete claims." (Internal quotations and brackets omitted)). In addition, the court finds that those claims were reasonably viable legal theories that counsel had a duty to investigate. To disallow attorneys' fees in this respect would serve only to discourage attorneys' from investigating all reasonable theories of recovery. See Marisol A. ex. re.. Forbes v. Guiliani, 111 F.Supp.2d 381, 393 (S.D.N.Y. 2000) ("Preventing . . . prevailing parties from recovering fees for unsuccessful efforts during the course of an otherwise successful litigation may discourage attorneys from zealously representing their clients and raising novel but reasonable arguments on their behalf."). In any event, the court finds that time spent on these claims does not appear to be unreasonable, and notes that the claims were timely abandoned when Castelluccio determined they were not meritorious. Accordingly, no reduction of attorneys' fees is

warranted for the abandoned claims of breach of implied contract and retaliation.

Likewise, the court disagrees with IBM that Castelluccio should not be allowed to recover attorneys' fees associated with efforts to introduce evidence of his successor's earnings in order to establish damages for his wrongful termination. IBM argues that attorneys' fees should not be awarded because Castelluccio did not ultimately introduce this evidence at trial, opting instead to base his theory of damages on his own earnings. Castelluccio argues that not introducing this evidence was a reasonable litigation decision designed to streamline the evidence at trial. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992). Applying this analysis, the court cannot conclude that it was unreasonable to explore a successor's earnings as a possible measure of damages and to thereafter abandon that theory in order to streamline the presentation of evidence at trial. Accordingly, the court will not reduce the attorneys' fees award in this respect.

The court also disagrees with IBM's claim that Castelluccio should not be awarded attorneys' fees associated with his argument that IBM violated its progressive discipline policy. IBM argues

that this time is not compensable because Castelluccio abandoned
this argument.  The record reveals that Castelluccio filed a motion
to admit evidence of IBM's failure to follow its progressive
discipline policy prior to trial.  (Doc. #148).  The court granted
that motion in part at the pretrial conference.  Specifically, it
held that evidence of interim reviews would be admissible, but
disallowed evidence of performance improvement plans.  At trial,
Castelluccio ultimately introduced evidence of IBM's policy
regarding interim reviews through Kelton Jones.  (Tr. 1062 and
1065).  This testimony established that interim reviews applied to
all executives at IBM, including Castelluccio, and, considered
against the fact that Castelluccio never received one, allowed the
jury to draw an inference of age discrimination.  This argument was
therefore not abandoned.  Accordingly, the court cannot conclude
that Castelluccio abandoned his claim that IBM violated its
progressive discipline policy or that a reduction of attorneys'
fees is warranted in this respect.

The court also disagrees with IBM's position that Castelluccio
abandoned his claim concerning how pension benefits should factor
into the calculation of damages.  At the pretrial conference,
Castelluccio argued that IBM had the burden to establish the amount
to be deducted from Castelluccio's damages in order to account for
pension payments he received after his termination.  Castelluccio
argues that he pursued this claim on a good faith belief that an

open question of law existed as to which party had the burden to establish this offset amount, but ultimately decided not to introduce into the record an appealable issue after finding no controlling precedent.  Because the parties discussed this point with the court at the pretrial conference, the court cannot conclude that this claim was abandoned.  Nor can the court conclude that a reasonable attorney would not have pursued what appeared to be an open question of law.  Accordingly, no reduction of attorneys' fees is warranted here.

The court, however, finds that Castelluccio should not be awarded attorney's fees for his failed application to amend the case management plan in order to extend the deadline for disclosure of an expert witness to rebut IBM's expert on employability and efforts to mitigate damage.  The court denied that motion on the basis that Castelluccio was tardy in seeking additional time and had not acted diligently or shown good cause for the extension. (Doc. #44).  The court finds that it would be unreasonable for IBM to bear the costs associated with the motion to amend the case management plan in light of the court's findings in this respect. The court will reduce the billable hours associated with Castelluccio's application to amend the case management plan by $575.

### B. Unsuccessful Motions and Other Tasks

IBM next argues that Castelluccio should not be able to

11

recover for the following unsuccessful motions and other tasks not related to the outcome of the case. IBM specifically argues that Castelluccio should not be able to recover attorneys' fees for: (1) 128.10 hours opposing its two motions to preclude expert testimony; (2) 72.20 hours deposing Barbara Brickmeier, Patricia O'Malley, Garret Walker, and Jack Overacre; (3) 40.7 hours opposing its application to seal; (4) 27 hours spent on a motion to compel discovery; and (5) 22.4 hours spent on a motion to revise the parties' pre-trial stipulations with respect to IBM's pre-trial investigation. This court disagrees.

Castelluccio's opposition to IBM's motion to preclude the expert testimony of his damages expert, Dr. Crakes, was not an unreasonable expenditure of time. IBM sought to preclude Dr. Crakes's testimony on the basis that, inter alia, his opinion was based on an unreliable methodology concerning the exercise of stock options. (Doc. #50, 51). This position was challenged by Castelluccio in his response. (Doc. #72). In granting in part and denying in part IBM's motion to preclude expert testimony, the court agreed with IBM that Dr. Crakes's methodology with respect to the exercise of stock options was unreliable, and accordingly deemed inadmissable that portion of his testimony. However, the court held that Dr. Crakes would otherwise be able to testify on the issue of Castelluccio's economic loss as indicated in other areas of the report. (Doc. #114). The court sees no reason why it

should now disallow Castelluccio's partially successful response to IBM's motion to preclude expert testimony. The court cannot conclude that a reasonable attorney would not have pursued Castelluccio's argument that economic damages should be based on stock options.

In the same vein, the court cannot conclude that attorneys' fees are unreasonable for efforts to revise Dr. Crakes's methodology and Castelluccio's opposition to IBM's second motion to preclude expert testimony. After the court's order deeming Dr. Crakes's testimony concerning the exercise of stock options unreliable, Castelluccio sought to cure the defect by basing the valuation of stock options on an arguably less speculative metric-- the stock options awarded to his successor. (Doc. #123). The court again held that this second approach did not cure the speculative nature of Dr. Crakes's opinion. (Doc. #127). Although Castelluccio was unsuccessful in this respect, the court cannot conclude that a reasonable attorney would not have similarly engaged in efforts to incorporate a generally recoverable component of damages. Grant, 973 F.2d at 99. Accordingly, the court will not reduce attorneys' fees in this respect.

Neither does the court agree with IBM's argument that a reduction of fees is warranted for the depositions of Brickmeier, O'Malley, Walker and Overacre, who IBM claims added nothing to the litigation or the outcome of the case. It was not unreasonable for

Castelluccio to depose Brickmeier, O'Malley, Walker and Overacre, because those very individuals were identified by IBM in response to Castelluccio's Rule 30(b)(6) deposition Notice.  <u>Serricchio v. Wachovia Sec., LLC</u>, 706 F. Supp. 2d 237, 258 (D. Conn. 2010), <u>aff'd</u>, 658 F.3d 169 (2d Cir.2011) (finding that time billed to depose witnesses designated pursuant to Fed. R. Civ. P. 30(b)(6) and 26 was compensable).

The court also disagrees with IBM's position that a fees reduction is warranted for time Castelluccio spent opposing IBM's motions to seal certain material submitted in supported of its motion for summary judgment and motion to exclude expert testimony. IBM argues that Castelluccio's opposition to its motion to seal was unnecessary and therefore not compensable.  The court finds no basis to conclude that this opposition was an unnecessary expenditure of time.  The opposition was induced by IBM's filing of the motions to seal in the first instance.  Moreover, the court, in granting in part and denying in part IBM's motion to seal, agreed with Castelluccio on many of the points of contention raised in his opposition.  (Doc. #117).  No reduction of attorneys' fees is warranted for Castelluccio's justified expenditure of time in this respect.

The court also disagrees with IBM's position that a fees reduction is warranted for Castelluccio's motion to compel discovery.  (Doc. #159).  Castelluccio filed this motion several

14

months before trial to compel the discovery of certain documents
related to IBM's performance review procedures as well as documents
related to its "open door investigation." IBM argues that
Castelluccio's motion to compel was unsuccessful and that it was
untimely because it was filed more than three years after discovery
closed. The motion to compel was filed well after the close of
discovery; however, the court notes that it may have been
engendered to some extent by IBM's failure to produce these
documents when Castelluccio requested them in 2009. In addition,
the court disagrees with IBM's position that the motion to compel
was unsuccessful. Rather, the motion to compel was largely
rendered moot by the court's subsequent order at the pretrial
conference precluding much of the evidence related to performance
review procedures and its order precluding evidence of IBM's open
door investigation. (Doc. ## 163, 170). Castelluccio should not
be denied attorneys' fees for a motion to compel discovery in light
of the court's evidentiary rulings thereafter, which obviated the
need for the production of most of the documents in question.

The court also disagrees with IBM that a reduction of time is
warranted for time spent on an unsuccessful motion to revise the
parties' pretrial stipulations with respect to IBM's pre-trial
investigations. Before trial, the parties stipulated in the joint
trial memorandum to certain facts regarding IBM's open door
investigation, which were to be read to the jury. When the court

later granted Castelluccio's motion to preclude the open door evidence, IBM contacted Castelluccio seeking to enter into a revised stipulation of facts with regard to the open door investigation.   The parties were unable to reach an agreement regarding the revision.   Thereafter, Castelluccio filed the motion to revise the joint trial memorandum seeking to remove references to the open door investigation altogether.   IBM now argues that the time Castelluccio spent on this motion was excessive.   Castelluccio argues that the time IBM identifies as excessive does not pertain to the motion to revise the joint trial memorandum; rather, it concerns time spent reviewing the stipulations proposed by IBM subsequent to the court's ruling granting Castelluccio's motion to preclude the open door evidence.   The court accepts Castelluccio's representation of the expenditure of time in this respect. Further, the court's review of the billing entries in question do not support IBM's position that some 22.4 hours were spent on the motion to revise the pre-trial stipulations.   IBM has included a multitude of other tasks, such as Castelluccio's review and revision of exhibit lists and IBM document production, into its estimation of time spent on the motion.   No reduction of time is warranted in this respect.

### 3. Tasks Billed to Two or More Attorneys

IBM next seeks a reduction of 314.2 hours or $87,039.50 for Castelluccio's regular use of two or more attorneys throughout this

16

case on the same task, or interoffice communication between
lawyers. It cites the following as the most egregious examples of
this practice: two lawyers attend the Rule 26(f) conference and
various routine teleconferences with the court; two lawyers appear
to defend plaintiff's deposition and attend those of IBM's
witnesses; two lawyers appear at non-binding mediation; and four
lawyers confer about whether to make a settlement counter-offer.
Castelluccio argues that the billing entries at issue reflect
reasonable collaboration between attorneys, that whenever possible
he was either not billed or billed at a reduced rate when more than
one attorney attended a deposition, and that two partners were
never present at any court preceding, including trial.

It is not uncommon for parties to recover attorneys' fees for
the collaboration of multiple attorneys on a case, when the
district court decides that such collaboration is appropriate given
the scope and complexity of the litigation. See, e.g., New York
State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d
Cir.1983) ("Prevailing parties are not barred as a matter of law
from receiving fees for sending a second attorney to depositions or
an extra lawyer into court to observe and assist. Nor are counsel
forbidden from receiving fees for background research."); Luca v.
County of Nassau, 698 F.Supp.2d 296, 305-07 (E.D.N.Y.2010)
(awarding attorneys' fees and costs to two attorneys who
collaborated on appellate brief and oral argument); Lenihan v. City

of New York, 640 F.Supp. 822, 826 (S.D.N.Y.1986) ("intra-office conferences among attorneys familiar with and working on particular litigation enhance the possibility of competent and efficient litigation, and hours spent in such conferences are not reduced under the rubric of 'billing judgment' unless the result is unproductive.").

The court notes as an initial matter that IBM's position that Castelluccio's counsel spent 314.2 hours working jointly on tasks is a gratuitous over-statement of the time billed in this respect. The 314.2 hours identified in IBM's exhibit 14 include a collection of entries that contain the word "confer" or indicate that counsel discussed an issue with each other or worked together in some respect. Because notations reflecting this collaboration are included alongside other tasks in block time entries, many, if not most of the entries, also record tasks that the attorney or another member of the office performed independently. IBM does not attempt to account for those tasks completed independently and asks for a wholesale reduction of the 314.2 hours it identifies. Therefore, the time that Castelluccio was actually billed for tasks completed by multiple attorneys is substantially less than what IBM claims. Further, the court finds that the 314.2 hours of billing entries in question reflect a collaborative work process as opposed to duplicative billing. Collaboration on all manner of tasks was not unreasonable in light of the scope and factual complexity of the

18

case.  The time sheet reflects a level of cooperation between attorneys that would be expected in a case of this nature. Accordingly, no reduction of time is warranted here.

**4. Block Billing**

IBM claims that a reduction of attorneys' fees is warranted for the remaining tasks charged in this case to account for Castelluccio's practice of "block-billing," that is, the aggregation of multiple tasks into a single billing entry.  To account for this practice, IBM argues that an additional 35 percent reduction of attorneys' fees, or $173,942.47, is warranted for the remainder of tasks identified in Castelluccio's fee application that it has not specifically challenged above.  IBM argues that Castelluccio's counsel deliberately engaged in block billing in order to conceal his time entries from subsequent judicial review.

The court finds it very hard to believe that Castelluccio's counsel deliberately engaged in block billing in order to conceal his time entries from its review.  In any event, the block billing entries at issue comply with the Second Circuit's requirements of specificity because such entries specify "the date, hours expended, and the nature of the work done."  <u>Carey</u> 711 F.2d at 1148. Although  courts have levied across the board reduction for block billing entries in some instances, "more often, courts have ordered such reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or that the

19

block-billing was mixing together tasks that were not compensable, or not at all compensable at the same rate." See Hnot v. Willis Group Holdings Ltd., 01 CV. 6558 GEL, 2008 WL 1166309 at *6 (S.D.N.Y. Apr. 7, 2008) (citing collected cases). Here, IBM does not identify which time entries it claims are improper. In the absence of evidence that Castelluccio has obscured unreasonable billing, the court will not impose an across the board penalty simply because a law firm has engaged in a generally accepted billing practice. See Hnot 2008 WL 1166309 at *6.

### 5. Supplemental Motion for Attorneys' Fees

Finally, IBM objects to Castelluccio's (Doc. #231) supplemental motion for attorneys' fees. In Castelluccio's supplemental motion, he seeks attorneys fees for work related to, inter alia, his (Doc. #197) motion for attorneys' fees, including (Doc. #198) a memorandum of law in support of that motion, and (Doc. #229) a reply to IBM's opposition to the motion. He also seeks attorneys' fees for work related to his lengthy memorandum of law in opposition to IBM's motion for judgement as a matter of law, or new trial or remittitur. (Doc. #212). In total, Castelluccio seeks in his supplemental motion fees of $102,360.00, representing 302 hours of work performed by attorneys or paraprofessionals. (Doc. 232).

IBM claims that this figure should be reduced by a total of $54,733.90. IBM specifically argues that 119.80 hours, or

20

$40,642.50, for work associated with the bill of costs and fee application is excessive for such routine work, and should be reduced by 50 percent. IBM also argues that 18.7 hours, or $15,445.83, should be excluded from the fee award to account for redundant and duplicative billing practices. Finally, IBM argues that the balance of the fee award Castelluccio seeks in his supplemental motion should be reduced by 45 percent, or $29,966.81, to account for block billing entries.

The court has reviewed the billing entries in question and cannot conclude that a reduction of fees is warranted. The court disagrees with IBM's position that the attorneys' fees associated with the bill of costs and fee application are excessive. The attorneys' fees charged for this purpose are explained in large part by the lengthy memorandum of law Castelluccio submitted in support of the motion, his reply to IBM's opposition to the motion, and time spent assembling affidavits and time sheets in support of the motion. (Doc. ## 198, 229). Moreover, much of this work was billed by an associate, as opposed to a partner, and therefore billed at an appropriate rate.

In addition, the court can not conclude that a reduction of fees is warranted for work IBM describes as duplicative. IBM asks for a reduction of fees for time Castelluccio's attorneys spent conferring with each other concerning various aspects of the bill of costs, fee application and other trial post-trial motions.

**A-1470**

These notations were included alongside other tasks in various billing entries.  Consequently, the court cannot conclude that any time spent in this respect was excessive in the first instance.  In addition, the court has reviewed the billing entries in question, and concludes that they reflect justifiable collaboration between attorneys as opposed to a duplication of fees.

Finally, the court cannot conclude that an across the board reduction of fees is warranted for block billing entries.  Like the other block billing entries IBM challenges above, IBM does not present evidence that Castelluccio obscured these billing entries either.  Accordingly the court will not reduce the attorneys' fees award for an acceptable billing practice.

## II. CONCLUSION

For the reasons stated herein, Castelluccio's supplementary motion for attorneys' fees [**Doc. #231**] is **GRANTED**.  He is awarded $102,360.00 in attorneys' fees for work set forth in that motion.

Castelluccio's motion for attorney's fees, prejudgment interest, and compensation for increased tax liability [**Doc. #197**] is **GRANTED in PART and DENIED in PART**.  Castelluccio is awarded $894,053.50 in attorneys' fees for work set forth in that motion.  Absent objection, he is awarded $13,236 in prejudgment interest, and $209,488 in compensation for increased tax liability.

The Clerk is directed to issue a Final Judgment in the amount of $3,718,920.78.

IT IS SO ORDERED.

Dated at Hartford, Connecticut this <u>23rd</u> day of July, 2014.


                                        <u>/s/  Thomas  P.  Smith</u>
                                        Thomas P. Smith
                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

JAMES CASTELLUCCIO                    :          2014 JUL 28  A  9 52

              Plaintiff,              :     CASE NO. 3:09CV1145 (TPS)  COURT
V.                                    :                 HARTFORD CT
                                      :
INTERNATIONAL BUSINESS MACHINES       :
CORPORATION                           :
                                      :
              Defendant.              :

## FINAL JUDGMENT

This action having come on for consideration of the plaintiff's Motion for

Attorneys' Fees, Costs, Prejudgment Interest, and Compensation for Increased Tax

Liability and plaintiff's Supplemental Motion for Attorneys' Fees, before the Honorable

Thomas P. Smith, United States Magistrate Judge; and the Court having considered the

full record of the case including applicable principles of law, filed a Ruling on Plaintiff's

Motions for Attorneys' Fees granting in part and denying in part Motion for Attorneys'

Fees, Costs, Prejudgment Interest, and Compensation for Increased Tax Liability, and

granting Supplemental Motion for Attorneys' Fees.  Plaintiff is awarded $996,413.50 in

attorneys' fees, $13,236.00 in prejudgment interest, and $209,488.00 in compensation

for increased tax liability;  It is therefore

**ORDERED, ADJUDGED AND DECREED** that judgment be and is hereby

entered in favor of the plaintiff in the total amount of $3,718,920.78.

Dated at Hartford, Connecticut, this 25th day of July, 2014.

ROBIN  D. TABORA, Clerk

By___/s/  AB_____
      Angela Blue
      Deputy Clerk

EOD: July 28th, 2014

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------- X
                                                         )
JAMES CASTELLUCCIO,                                      )    No. 3:09-cv-01145-TPS
                                                         )
                        Plaintiff                        )
                                                         )
                    -against-                            )
                                                         )    **NOTICE OF APPEAL**
                                                         )
INTERNATIONAL BUSINESS                                   )
MACHINES CORPORATION (IBM) ,                             )
                                                         )
                    Defendant.                           )
------------------------------------------------------- X


        Notice is hereby given that International Business Machines Corporation ("IBM"),

defendant in the above-named case, hereby appeals to the United States Court of Appeals for the

Second Circuit from the Order denying IBM's Renewed Motions For Judgment as a Matter of

Law, Or in the Alternative, For New Trial/Remittitur entered in this action on the 23rd day of

July, 2014 [Docket No. 236].



Dated: August 8, 2014


                                                    Respectfully Submitted,



                                                    By:  /s/ Zachary D. Fasman

                                                    Zachary D. Fasman (phv0899)
                                                    PROSKAUER ROSE LLP
                                                    Proskauer Rose LLP
                                                    Eleven Times Square
                                                    New York, NY 10036-8299
                                                    Phone: (212) 318-6000
                                                    Zfasman@proskauer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2014, a copy of the foregoing Notice of Appeal was filed electronically and service was made on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ Zachary D. Fasman
Zachary D. Fasman

# CERTIFICATE OF SERVICE

I, TRACI L. LOVITT, hereby certify that on March 13, 2015, I filed an electronic copy of the foregoing JOINT APPENDIX VOLUME on the Court's CM/ECF system, which caused it to be served on all counsel of record.

Dated:        March 13, 2015

<u>/ s / Traci L. Lovitt</u>
Traci L. Lovitt, Esq.
Jones Day
100 High Street
Boston, Massachusetts 02110
(617) 960-3939
*Attorney for Defendant-*
*Appellant IBM*